# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEACETECH LAB, INC.,<br>2301 Constitution Ave, NW<br>Washington, DC 20037 | )<br>)<br>)<br>) |
| Plaintiff, | )    C.A. No. 1:20-cv-922<br>) |
| v. | )<br>) |
| C5 ACCELERATE LLC, PINARD S.A.R.L.,<br>C5 HOLDINGS S.A.R.L., GROUNDTRUTH<br>INVESTOR LLC, MR. ANDRE PIENAAR<br>Suite 460, 1701 Pennsylvania Avenue NW,<br>Washington, DC 20006<br>C5 CAPITAL LTD.,<br>7 Vigo Street, London, UK, W1S 3HF | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT

1.      Plaintiff PeaceTech Lab, Inc. ("PeaceTech"), by and through its

undersigned attorneys, hereby files this Complaint against Defendants C5 Accelerate LLC ("C5

Accelerate"), Pinard S.à.r.l. ("Pinard"), C5 Capital Ltd. ("C5 Capital"), C5 Holdings S.à.r.l. ("C5

Holdings"), GroundTruth Investor LLC, and Mr. Andre Pienaar.  PeaceTech entered into a

binding agreement with Pinard, as signed by Mr. Pienaar, for a donation of $1.5 million to

PeaceTech's accelerator program, in return for which Defendants received naming rights in the

program.  Defendants breached this agreement.  PeaceTech also entered into a binding

agreement with C5 Accelerate, as signed by Mr. Pienaar, to establish a collaboration between the

parties, and Defendants also breached this agreement.  PeaceTech also expended monies in

reliance of Mr. Pienaar's pattern of repeated assurances and misrepresentations regarding an

investment in groundTruth global, Inc. ("groundTruth"), a corporation established by PeaceTech that has since ceased operations due to Mr. Pienaar's defaults.

## NATURE OF THE ACTION

2.      This Complaint involves breach of contract and reliance claims to require Defendants to pay PeaceTech over $2,598,000 in damages.  Defendants owe PeaceTech over $1,930,000 in amounts that Defendants contracted to pay in signed agreements and consequential damages stemming from their breach of these agreements.  Pursuant to one of the breached agreements, Plaintiff also seeks 33% of any equity earned by Defendants from certain related investments. Plaintiff further seeks $657,441 that PeaceTech paid or contracted for in detrimental reliance on Defendants' concurrence.  PeaceTech is a DC nonprofit corporation that furthers peacekeeping efforts throughout the globe and supports the development of innovative technology aimed at maintaining peace.  Defendants' defaults have caused great financial damage to PeaceTech, and this action seeks to hold Defendants accountable for such damages.

## PARTIES

3.      Plaintiff PeaceTech is a nonprofit corporation located and incorporated in the District of Columbia.

4.      Defendant C5 Accelerate is a Delaware limited liability company.

5.      Defendant Pinard is a société à responsabilité limitée organized and existing under the laws of Luxembourg.

6.      Defendant C5 Capital is a company organized and existing under the laws of the United Kingdom.

7.      Defendant C5 Holdings is a société à responsabilité limitée organized and existing under the laws of Luxembourg, and the parent company of C5 Capital.

8.     Defendant GroundTruth Investor LLC is a company organized and existing under the laws of Delaware.

9.     Defendant Mr. Andre Pienaar is a national and resident of the United Kingdom and the founder and Chairman of C5 Holdings and the owner of Pinard.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff is a citizen of the District of Columbia, and Defendants are citizens of Delaware, Luxembourg, and the United Kingdom.

11.     The amount in controversy is in excess of $2,598,000.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).  A substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## FACTUAL BACKGROUND

13.     PeaceTech is a nonprofit corporation and qualifies under the Internal Revenue Code Section 501(c)(3).  PeaceTech has an educational mission to foster and educate a community of entrepreneurs engaged in developing peace technology.

14.     As part of these efforts, PeaceTech runs an accelerator program, which provides space for and supports the growth of startup and early stage companies working to produce innovative technologies that promote peace.

### Gift Agreement

15.     On February 15, 2017, Pinard entered into a Gift Agreement with PeaceTech.  The Gift Agreement committed Pinard to make a $1,500,000 donation to PeaceTech, to be paid in three equal installments beginning on April 17, 2017, with subsequent payments to be made on February 15, 2018, and February 15, 2019.  The purpose of the donation was to develop and

renovate facilities for PeaceTech's use "to host innovative, growing organizations developing peacebuilding technologies."

16.     In consideration for Pinard's donation, the Gift Agreement granted exclusive naming rights for space where the "C5 accelerator program" would be operated.  The Gift Agreement also provided for a plaque to be prominently displayed with "the Donor's name or party to be honored by the Donor" and for the Donor to be publicly recognized in multiple locations.  Dr. Sheldon Himelfarb, the President and CEO, signed on behalf of PeaceTech.  Mr. Pienaar signed the agreement on behalf of Pinard.  A true and correct copy of the signed Gift Agreement is attached hereto as Exhibit 1.

17.     To date, Pinard has not paid and PeaceTech has not received any portion of the contracted $1.5 million donation.

18.     As a result of Pinard's default, PeaceTech was forced to take out a $500,000 line of credit to cover expenses that were planned for under the Gift Agreement.  The charges PeaceTech has incurred as a result of this credit line amount to at least $43,722.

19.     As a further result of this default, PeaceTech was unable to make timely payments to a construction vendor, for which  PeaceTech incurred an interest charge for late payments amounts of  at least $27,902.

**Collaboration Agreement**

20.     On April 11, 2017, C5 Accelerate entered into a Collaboration Agreement with PeaceTech.  The Collaboration Agreement required PeaceTech to "use commercially reasonable efforts to support [C5 Accelerate]" in its mission of "facilitating innovation in peace technology by identifying, assisting, accelerating, investing in and supporting best-of-breed startups and early stage companies."  The agreement also provides that PeaceTech will "provide sufficient

space for Accelerator meetings on its premises."  In exchange, the Collaboration Agreement required C5 Accelerate to make annual payments "in an amount no less than $160,000" for PeaceTech's costs in supporting the C5 Accelerate's program.  The first payment was to be made on December 31, 2017, to be followed by monthly payments.

21.     The Collaboration Agreement also provides that C5 Accelerate shall pay PeaceTech 33% of securities received from entities that enter C5 Accelerate's program or earned on investments by C5 Accelerate into such entities.  Dr. Himelfarb signed the Collaboration Agreement on behalf of PeaceTech, and Mr. Pienaar signed the agreement on behalf of C5 Accelerate.  A true and correct copy of the signed Collaboration Agreement is attached hereto as Exhibit 2.

22.     The Collaboration Agreement was set to "continue in full force . . . for a period of three years" or until April 11, 2020, unless renewed or terminated earlier by one of three methods described in the agreement.  To date, the Collaboration Agreement has not been renewed or terminated under any of the methods specified.

23.     The first payment of $160,000 required under the Collaboration Agreement was paid.  No further payments have been made and the payments for 2018, 2019 and 2020 required under the agreement remain outstanding.

24.     To date, C5 Accelerate has not paid PeaceTech any portion of the securities received from entities that entered C5 Accelerate's program.  C5 Accelerate has also never provided any information to PeaceTech regarding investments that would have yielded equity to which PeaceTech is entitled under the Collaboration Agreement. Upon information and belief, C5 Accelerate has made such investments.

## GroundTruth Investment

25.     In the Spring of 2017, PeaceTech sought to obtain investments for a new peace technology product and web-based platform called groundTruth global.  In order to seek private investment for this innovative new technology, PeaceTech created groundTruth on or about April 11, 2018.  A true and correct copy of the Certificate of Incorporation for groundTruth is attached hereto as Exhibit 3.

26.     From March to July 2017, Dr. Himelfarb and PeaceTech's Chief Data Scientist, Dr. Rohini Srihari, engaged in discussions with Mr. Pienaar about a potential investment in groundTruth.  These discussions included multiple presentations of the groundTruth global product to Mr. Pienaar and his investors.

27.     On or about April 21, 2017, Mr. Piennaar discussed with Dr. Himelfarb his support for a seed funding round for groundTruth.

28.     On February 13, 2018, C5 Capital and PeaceTech signed a Term Sheet for a first round of funding for groundTruth of $3 million for Series A Preferred Shares in groundTruth with a full valuation of $10 million.  Dr. Himelfarb signed on behalf of PeaceTech and Mr. Pienaar signed on behalf of C5 Capital.  A true and correct copy of the signed Term Sheet is attached hereto as Exhibit 4.

29.     At the same time, groundTruth and PeaceTech negotiated a development and commercialization license agreement under which PeaceTech would grant an exclusive license to groundTruth for the use and commercialization of the groundTruth global product.  This agreement included a proposed one-time fixed licensing fee of $300,000 which groundTruth would pay to PeaceTech.  A true and correct copy of the license agreement is attached hereto as Exhibit 5.

30.     In June of 2018, the PeaceTech Board of Directors received a final package of Closing

Documents and approved the closing with a unanimous vote.

31.     The Closing Documents provided for the licensing agreement described above, including

the $300,000 licensing fee to be paid to PeaceTech by groundTruth.

32.     The Closing Documents also provided for the reimbursement of PeaceTech by

groundTruth for $160,000 for expenses that PeaceTech had borne in the run up to the agreed-

upon investment by C5 Capital in groundTruth.

33.     PeaceTech purchased 1,000,000 shares of common stock of groundTruth for $100 on

June 8, 2018.

34.     On July 9, 2018, the final agreements were signed and placed in escrow in expectation of

an imminent closing of the transaction.

35.     Shortly, after this, however, Mr. Pienaar informed Dr. Himelfarb, Dr. Srihari, PeaceTech

Chairman Nick Donofrio and others that an additional round of due diligence was needed due to

potential issues with the Committee on Foreign Investment in the United States ("CFIUS").  *See*

Exhibit 6, attached hereto.

36.     To accommodate for this delay, on July 19, 2018, C5 Accelerate provided a Simple

Agreement for Future Equity (SAFE) advance to groundTruth in the amount of $150,000.

37.     Shortly thereafter, the additional round of due diligence into potential CFIUS issues was

concluded with no such issues found to exist.  Nonetheless, for no apparent reason, C5 Capital

did not proceed with the investment transaction with groundTruth.

38.     On August 8, 2018, PeaceTech Board's counsel, George Foote, informed Mr. Pienaar

that groundTruth was running out of funding and requested that the investment transaction be

completed promptly so as to avoid laying off groundTruth staff.  Mr. Pienaar responded that he was working "to complete the transaction as quickly as possible within days."  *See* Exhibit 7.

39.     On August 9, 2018, Mr. Pienaar offered interim funding through another SAFE advance, which was made on August 12 in the amount of $150,000.  The funding was accepted by groundTruth and Mr. Pienaar was notified that the same issue would arise the following month if the deal did not close.  *See* Exhibit 7.

40.     On August 14, 2018, PeaceTech entered into a sublease agreement with groundTruth for office space on the third floor of 2301 Constitution Ave NW, Washington, DC.  PeaceTech entered into this agreement to further the goal of the promised investment from Mr. Pienaar and in reliance on the forthcoming funds.  A true and correct copy of the signed sublease agreement is attached hereto as Exhibit 8.

41.     PeaceTech entered into this agreement with the understanding that groundTruth would be able to make rent payments from the incoming investment from Mr. Pienaar.  In reliance on Mr. Pienaar's promises, PeaceTech subleased the space to groundTruth, forfeiting the ability to rent the space to other tenants.

42.     The sublease is set to expire approximately five years from the lease commencement date.  However, at the end of 24 months of the lease commencement date, groundTruth and PeaceTech both have the option to terminate the sublease.  The total rent due for these 24-month period is $103,370.

43.     groundTruth made payments to PeaceTech in the aggregate amount of $13,011 for the security deposit and first two months of rent due.

44.     On September 27, 2018, Mr. Pienaar sent an email to Chairman Donofrio that he was "now in a position to move forward to complete the transaction" with new investors from the United States.  *See* Exhibit 9.

45.     On October 12, 2018, Mr. Pienaar sent an email to Dr. Himelfarb, Dr. Srihari, and Mr. Foote, indicating that while he was tracking one transfer from a co-investor, "[e]verything else is ready to go. Hope we can get it over the line today."  *See* Exhibit 10.

46.     That same day, groundTruth ran out of funding.  PeaceTech agreed to cover a week of salaries based on Mr. Pienaar's assurances.

47.     On October 16, 2018, Dr. Himelfarb informed Mr. Pienaar that "if we don't receive wire payment today, we will unfortunately need to lay off staff."  Mr. Pienaar responded, "As an existing investor with $300k committed in [groundTruth] I really don't understand your message of this morning about laying people off. I do not understand why you would not avail yourself of our financing to make sure the business remains viable while the seed round completes."  *See* Exhibit 11.

48.     PeaceTech agreed to continue to provide funding for staff salaries on the strength of Mr. Pienaar's assurances.  From October 15 to October 26, 2018, PeaceTech spent approximately $14,000 to maintain staff and operations at groundTruth.

49.     On October 26, 2018, Dr. Himelfarb received an email from Kurt Scherer at C5, requesting documentation on groundTruth's current payroll, other expenses, and ongoing business and development strategy in order to secure additional financing.  *See* Exhibit 12.

50.     GroundTruth closed its doors and ceased all operations on October 26, 2018.

51.     In total, PeaceTech expended $267,082 for staff salaries and overhead costs to maintain operations at groundTruth based entirely on Pienaar's continued assurances.

52.     After October 2018, groundTruth was unable to make further rent payments, leaving PeaceTech without over $90,359 in payments for the sublease agreement.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

53.     PeaceTech restates and re-alleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

54.     PeaceTech has fully complied with all of the terms and conditions of the Gift Agreement entered into with Pinard.

55.     Pinard has failed to comply with the terms and conditions of the Gift Agreement and failed to provide the $1.5 million donation.

56.     This default cost PeaceTech $27,902 in interest for payments to a construction vendor that would not have been incurred but for Pinard's default.

57.     This default further cost PeaceTech $43,722 in interest for a line of credit that would not have been incurred but for Pinard's default.

58.     By reason of the foregoing, Pinard is liable to PeaceTech for at least $1,571,624 in damages for Pinard's breach of the Gift Agreement.

## SECOND CLAIM FOR RELIEF
(Breach of Contract)

59.     PeaceTech restates and re-alleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

60.     PeaceTech has fully complied with all of the terms and conditions of the Collaboration Agreement entered into with C5 Accelerate.

61.     C5 Accelerate has failed to comply with the terms and conditions of the Collaboration
Agreement and failed to provide the contract payments for 2018, 2019 and  2020 under the
Collaboration Agreement.

62.     C5 Accelerate has failed to provide any information regarding investments or equity that
C5 earned from the C5 Accelerate program, and the percentage of any equity that is now owed to
PeaceTech.

63.     By reason of the foregoing, C5 Accelerate is liable to PeaceTech for at least $360,000
plus 33% of any equity earned by C5 Accelerate.

64.     PeaceTech's damages as a result of C5 Accelerate's breach of contract are continuing,
and PeaceTech reserves the right to seek the full and exact amount of its damages at the time of
trial.

<u>**THIRD CLAIM FOR RELIEF**</u>
(Reliance)

65.     PeaceTech restates and re-alleges all of the foregoing paragraphs of this Complaint as
though fully set forth herein.

66.     Mr. Pienaar made numerous representations and commitments to PeaceTech about the
investment in groundTruth.  Mr. Pienaar was aware that PeaceTech was relying on those
representations and commitments in good faith.

67.     In good faith reliance on these statements, PeaceTech spent $267,082 on groundTruth
staff salaries and overhead costs.

68.     In good faith reliance on the promised investment, PeaceTech also subleased space to
groundTruth and is owed $90,359 in unpaid rent.

69.     PeaceTech was also owed $300,000 from a licensing agreement with groundTruth that
PeaceTech would have received if the investment completed.

70.     By reason of the foregoing, Mr. Pienaar is liable to PeaceTech for the amount of

$657,441.

## PRAYER FOR RELIEF

WHEREFORE, PeaceTech respectfully requests an order as follows:

a.  On the First Claim for Relief, awarding PeaceTech compensatory damages in the amount

of $1,571,624 and prejudgment interest at the maximum legal rate.

b.  On the Second Claim for Relief:

1.     Compensatory damages in the amount of $360,000 plus additional
       damages incurred under the contract while the Collaboration Agreement
       remains in force;

2.     Compensatory damages in the amount of 33% of any equity earned by C5
       Accelerate under the Collaboration Agreement;

3.     Prejudgment interest at the maximum legal rate.

c.  On the Third Claim for Relief, awarding PeaceTech reliance damages in the amount of

$657,441.


COVINGTON & BURLING LLP


By:  */s/ Benjamin J. Razi*_____
     Benjamin J. Razi (No. 475946)
     850 Tenth Street, NW
     Washington, DC 20001
     Telephone: (202) 662-5463
     brazi@cov.com

     *Attorney for Plaintiff*
     *PeaceTech Lab, Inc.*

Dated:  April 7, 2020