# EXHIBIT 2

# COLLABORATION AGREEMENT

This COLLABORATION AGREEMENT is entered into as of April 11th, 2017 (this "Agreement"), by and between C5 Accelerate LLC, a Delaware limited liability company ("Accelerator") and PeaceTech Lab, Inc., a District of Columbia nonprofit corporation ("PeaceTech"). Accelerator and PeaceTech are referred to sometimes individually as a "Party" and collectively herein as the "Parties."

## RECITALS

WHEREAS, Accelerator is establishing a startup company accelerator with a mission focused on facilitating innovation in peace technology by identifying, assisting, accelerating, investing in and supporting best-of-breed startups and early stage companies (the "Program");

WHEREAS, PeaceTech is recognized as exempt from U.S. federal income tax as an organization identified in Internal Revenue Code Section 501(c)(3) with an educational mission that includes fostering and educating a community of peace technology entrepreneurs through networking, events, and various other initiatives;

WHEREAS, the Parties desire to collaborate in their respective endeavors; and

WHEREAS, PeaceTech will provide administrative, advisory, and other services, including but not limited to peacebuilding expertise, to Accelerator, to entities participating in the Program and to innovation partners of Accelerator.

NOW, THEREFORE, in consideration of the foregoing, the mutual promises contained herein and other good and valuable consideration, the Parties agree as follows:

1. **Support of Accelerator.** PeaceTech shall use commercially reasonable efforts to support Accelerator in all aspects of the Program, including through the recruitment of entities that meet the general criteria set forth on Annex A to participate in the Program, providing advice and support to such entities while in the Program, and helping to build relationships with innovation partners. PeaceTech shall use its marketing channels and network to support the Program in furtherance of the foregoing, in each case as may be necessary, advisable or reasonably requested by Accelerator.

2. **Use of Meeting Rooms.** Upon Accelerator's reasonable request, and in accordance with terms of the forthcoming lease agreement, PeaceTech shall provide sufficient space for Accelerator meetings on its premises, including access and support with respect to audiovisual and other equipment. Upon request by Accelerator, PeaceTech will facilitate requests by Accelerator for meeting space in other premises and for support services controlled or supplied by other persons.

3. **Fundraising.** In connection with its public engagement program, Accelerator shall use commercially reasonable efforts to solicit funding commitments for PeaceTech per year. The

failure of such amount of funds to be delivered to PeaceTech shall not constitute breach of this Agreement.

4. <u>Payments</u>.

(a) With respect to each entity that enters into an agreement to participate in a Program cohort and of which Accelerator receives a grant of [or makes an investment in] shares of stock, membership interests, or any other ownership interests or other securities exchangeable, convertible or exercisable therefor ("<u>Participant Securities</u>"), Accelerator shall promptly transfer to or arrange for the issuance to PeaceTech of thirty-three percent (33%) of such Participant Securities without prejudice to payment or other consideration for PeaceTech not described in this Agreement.

(b) Accelerator agrees, commencing after the first anniversary hereof, to make an annual contribution to PeaceTech from the gross income of Accelerator from the Program; provided, that the form and amount of such contribution shall be determined annually in the sole discretion of Accelerator.

(c) Notwithstanding the discretionary nature of specific Accelerator undertakings in Agreement paragraphs 3 and 4(b), and beginning on the date hereof, Accelerator shall make or cause to be made annual payments or contributions to PeaceTech in an amount no less than $160,000 to be applied by PeaceTech to its staff costs in support of the work of Accelerator. The 2017 payment of Said amount shall be paid to PeaceTech in full on or before December 31, 2017. The 2018 payment and payments for later years shall be made in 12 equal monthly installments paid on the 15th of each month. The amount paid shall be considered an advance against any other payment due or payable under Agreement paragraphs 3 or 4(b) for the year in which paid or identified as paid.

5. <u>Representations and Warranties</u>. Each Party hereby represents and warrants that:

(a) it has the power and authority and the legal right to execute and deliver, and to perform its obligations under this Agreement and has taken all necessary action to authorize its execution, delivery and performance of this Agreement; and

(b) this Agreement has been duly executed and delivered by such Party and constitutes a legal, valid and binding obligation of such Party, enforceable in accordance with its terms, subject to the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally.

6. <u>Notices</u>. All notices, requests and demands hereunder to or upon any Party shall be in writing (or by fax or similar electronic transfer confirmed in writing), directed to the address of such Party set forth below (or such other address as such Party notifies in writing to all other Parties), and shall be effective only upon receipt by such Party:

If to Accelerator:

C5 Accelerate LLC
Attn: Andre Pienaar
2301 Constitution Avenue, NW
Washington, DC, 20037

If to PeaceTech:

PeaceTech Lab, Inc.
Attn: Sheldon Himelfarb
2301 Constitution Avenue, NW
Washington, DC, 20037

7. Severability. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8. Entire Agreement. This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes any prior oral or written agreement purporting to relate to the subject matter hereof, and there are no promises or representations by the Parties relative to the subject matter hereof not reflected herein.

9. Amendments in Writing. None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except by a written instrument executed by each of the Parties.

10. Term and Additional Term. This Agreement shall continue in full force and effect from the date hereof for a period of three years, unless renewed as described below or earlier terminated (a) by mutual written agreement of the Parties, (b) upon written notice by one Party to the other Party if the other Party breaches any material term or condition of this Agreement and fails to correct such breach within thirty (30) days following written notice specifying such breach, or (c) upon written notice by one Party to the other Party if the other Party applies for or consents to the appointment of a receiver, trustee or liquidator for substantially all of its assets, or such a receiver, trustee or liquidator is appointed for the other Party; or the other Party has filed against it an involuntary petition for bankruptcy that has not been dismissed within sixty (60) days thereof, or the other Party files a voluntary petition for bankruptcy or a petition or answer seeking reorganization, becomes or is insolvent or bankrupt, admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors. At the end of three years, unless earlier terminated, this Agreement shall automatically renew for one additional period of three years unless either Party shall have notified the other no less than 120 days before such time that it elects not to renew the Agreement.

11. **Successors and Assigns**. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and assigns.

12. **Governing Law**. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware applicable to contracts made and to be performed in such State without giving effect to the principles of conflicts of laws.

13. **Section Headings; Interpretation**. The Section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof. The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.

14. **Counterparts**. This Agreement may be executed by the Parties hereto on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

*[Signatures appear on following page(s)]*

IN WITNESS WHEREOF, each of the undersigned has caused this Agreement to be duly executed and delivered by its duly authorized officer as of the day and year first above written.

**C5 ACCELERATE LLC**

By: _____

Date: 28/4/17

Name: Andre Pienaar

Title: Chairman

**PEACETECH LAB, INC.**

By: _____

Date: 4/11/17

Name: Sheldon Himelfarb

Title: President and CEO

## Annex A

General criteria for entities to participate in Accelerator cohorts include:

### *Entity Profile*
- Early stage or startup companies
- Focus on peace technology
- Solutions use or can benefit from cloud computing

### *Demonstrated Market Opportunity*
- Total international addressable market in excess of $500 million
- Potential for the company to attain regional or global category leadership
- Market validation from corporate customers or end-users

### *Financial Strength*
- Robust business model and product with clear development plan
- Prior investment from external or corporate investors
- Solvent balance sheet

### *Compelling Technology*
- Clear product execution roadmap
- Ownership of critical intellectual property
- Differentiated technology accepted by corporate or government clients

### *Best-in-Class Management Team*
- Balanced team including both technology experts and experienced business managers.
- Proven history of generating revenue
- Willingness to invest management time working with the accelerator program team and other participant companies