# EXHIBIT 5

*Final*
*Confidential*

**DEVELOPMENT AND COMMERCIALIZATION LICENSE AGREEMENT**

*Final*
*Confidential*

TABLE OF CONTENTS

1.     Certain Definitions ................................................................................................ 1

2.     License Grant ....................................................................................................... 4

3.     Fee ........................................................................................................................ 5

4.     GTG Covenants .................................................................................................... 5
       4.1     GTG Customers ...................................................................................... 6
       4.2     Sublicensing ............................................................................................ 6
       4.3     Access to GTG Products ......................................................................... 6
       4.4     PeaceTech Communications .................................**Error! Bookmark not defined.**

5.     PeaceTech Covenants ........................................................................................... 6
       5.1     Transfer of Technology ........................................................................... 6
       5.2     Transfer of Input Data ............................................................................ 6

6.     Mutual Covenants ................................................................................................ 6
       6.1     Third-party Claims .................................................................................. 7
       6.2     Non-disparagement ................................................................................. 7
       6.3     Further Assurances .................................................................................. 7

7.     Confidentiality ..................................................................................................... 7

8.     Intellectual Property ............................................................................................ 9
       8.1     Ownership ................................................................................................ 9
       8.2     Registration, Prosecution, and Maintenance .......................................... 9
       8.3     Enforcement of Proprietary Rights ......................................................... 9

9.     Governance Process ........................................................................................... 10

10.    Representations and Warranties ......................................................................... 10
       10.1    Mutual Representations and Warranties ............................................... 10
       10.2    Additional PeaceTech Representations and Warranties ....................... 11

11.    Term and Termination ....................................................................................... 12

12.    Indemnity ........................................................................................................... 12
       12.1    GTG Indemnity Obligation ................................................................... 12
       12.2    PeaceTech Indemnity Obligation .......................................................... 13
       12.3    Indemnification Procedure .................................................................... 13

13.    Limitation of Liability ....................................................................................... 14

14.     Publicity and Press Releases ................................................................. 14

15.     Miscellaneous ......................................................................................... 14
        15.1    Independent Contractors ................................................... 14
        15.2    Assignment ........................................................................ 14
        15.3    Amendment and Waiver ..................................................... 15
        15.4    Rules of Construction ........................................................ 15
        15.5    Notice ................................................................................. 15
        15.6    Entire Agreement ............................................................... 16
        15.7    Governing Law ................................................................... 16
        15.8    Arbitration ......................................................................... 16
        15.10   Export Control ................................................................... 17
        15.11   Severability ........................................................................ 17
        15.14   Electronic Signatures ......................................................... 17

Schedule A - Certain Input Data

Schedule B - Transferred Trademarks

Schedule C - Certain Technology

Schedule D - Restrictions in GTG Customer Agreements

*Final*
*Confidential*

## DEVELOPMENT AND COMMERCIALIZATION LICENSE AGREEMENT

This Development and Commercialization License Agreement (this "Agreement") is effective as of June ____, 2018 (the "Effective Date") between PeaceTech Lab, Inc., a District of Columbia non-profit corporation ("PeaceTech") and groundTruth global, Inc., a Delaware corporation ("GTG" and, together with PeaceTech, the "Parties").

WHEREAS, PeaceTech is a non-profit corporation that is exempt from paying U.S. federal taxes under Section 501(c)(3) of the Internal Revenue Code;

WHEREAS, PeaceTech has developed a SaaS service known as "groundTruth global", currently in beta, that provides early warning of business and security risks due to volatility in fragile states (together with all modifications, improvements, new versions, and similar products or services under development or offered by PeaceTech, the "PeaceTech Product") and intends to use the PeaceTech Product for charitable purposes;

WHEREAS, GTG would like to use and exploit the PeaceTech Product and related technology, data, and branding for commercial purposes on an exclusive basis, and allow PeaceTech to continue to use and exploit the PeaceTech Product solely in connection with PeaceTech's charitable endeavors, and PeaceTech is willing to provide GTG with licenses, materials, and support to do so; and

WHEREAS, GTG and PeaceTech are entering into that certain Intercompany Services Agreement on or about the Effective Date, by which PeaceTech will provide certain services to GTG ("Services Agreement").

THEREFORE, the Parties hereby agree as follows:

1.      Certain Definitions.

1.1      "Applicable Law" means the applicable laws, rules and regulations, including any rules, regulations, guidelines or other requirements of any applicable federal, national, regional, state, provincial or local regulatory agencies, departments, bureaus, commissions, councils or other government entities regulating or otherwise exercising authority with respect to the activities in connection with this Agreement, including gathering, processing, storing, and disseminating Input Data.

1.2      "Copyrights" means all copyrights, whether registered or unregistered, published and unpublished works of authorship, copyrightable works, designs, data, and database rights, and all registrations and applications therefor, all moral rights therein, all rights and priorities with respect thereto afforded under the Applicable Law of any jurisdiction worldwide, and all renewals, extensions, restorations and reversions thereof.

1.3      "Confidential Information" has the meaning given in Section 7.1.

1

1.4     "Customer" means any person or entity that purchases, subscribes to, or is otherwise provided access to or use of, a Licensed Product from either Party (including, with respect to GTG, through Distributors) during the Term.  For the avoidance of doubt, a Distributor shall not be deemed a Customer under this Agreement.

1.5     "Customer Agreement" means a contract governing a Customer's access to or use of a Licensed Product.

1.6     "Disclosing Party" has the meaning given in Section 7.1.

1.7     "Distributor" means any person or entity who is authorized by GTG to resell, distribute, make available, and otherwise support the Licensed Product during the Term.

1.8     "GTG Field of Use" means, other than the PeaceTech Field of Use, all activities of whatever nature or form, including any design, development, manufacture, marketing, service, distribution, sale, or use of GTG Products (a) for commercial purposes, (b) by for-profit companies, (c) by governmental agencies or enterprises, at any level of government in any jurisdiction throughout the world, or (d) by any other entity that is able and willing to pay fees in consideration of for such use, including non-profit and not-for-profit entities where applicable.

1.9     "Governance Process" means the process set forth in Section 9.

1.10    "GTG Customer" means a Customer of a GTG Product.

1.11    "GTG Customer Agreement" means a Customer Agreement between GTG and a GTG Customer governing the provision or use of a GTG Product.

1.12    "GTG Product" means any Licensed Product offered by GTG during the Term.

1.13    "Improvement" means all materials, software, tools, data, inventions, works of authorship, improvement, modification, derivative work, additional functionality, enhancement, or other innovation of any kind (including, without limitation, any improvement or modification to the PeaceTech Product on or after the Effective Date or any other proprietary computer software programs and related materials), that either Party (including for a Party by employees or contractors) may make, conceive, develop or reduce to practice, alone or jointly with others, in connection with the PeaceTech Product, the GTG Product, or the Technology during the Term, whether or not eligible for Patent, Copyright, Trademark, trade secret or other legal protection, and all Proprietary Rights included in, embodied in or otherwise necessary for the development, distribution or use of any of the foregoing.

1.14    "Input Data" means all data that PeaceTech has under its control as of the Effective Date that (a) PeaceTech has or will use as an input in the PeaceTech Product or (b) may be useful as an input for the GTG Products. Without limiting the generality of the foregoing definition, Schedule A sets forth a list of types of material Input Data in use as an input in the PeaceTech Product as of the Effective Date, including the source of such Input Data and the basis for PeaceTech's rights to use such Input Data.

2

1.15   "Know-How" means, with respect to any product or service, any and all information, formulas, patterns, compilations, programs, methods, techniques, processes, specifications, directions, instructions, test protocols, studies, analyses, conceptions, ideas, innovations, discoveries, inventions (whether or not patentable), designs, plans and other knowledge and skills relating to the development, manufacture, maintenance, improvement, production, reduction to practice, distribution, display, offer, or sale of such product or service.

1.16   "Licensed Product" means a product or service that would violate or infringe one or more Proprietary Rights in or to the Technology or the PeaceTech Product if it were made, sold, leased, imported, developed, improved, distributed, produced, marketed, or otherwise used or provided by a person or entity that did not own or license such Proprietary Rights.

1.17   "Patents" means (a) all national, regional and international patents and patent applications, including provisional patent applications, (b) all patent applications filed either from such patents, patent applications or provisional applications or from an application claiming priority from any of these, including divisionals, continuations, continuations-in-part, converted provisionals, and continued prosecution applications, (c) any and all patents that have issued or in the future issue from the foregoing patent applications ((a) and (b)), including utility models, petty patents and design patents and certificates of invention, (d) any and all extensions or restorations by existing or future extension or restoration mechanisms, including adjustments, revalidations, reissues, re-examinations and extensions (including any supplementary protection certificates and the like) of the foregoing patents or patent applications ((a), (b) and (c)), and (e) any similar rights, including so-called pipeline protection, or any importation, revalidation, confirmation or introduction patent or registration patent or patents of addition to any of such foregoing patent applications and patents.

1.18   "PeaceTech Field of Use" means PeaceTech's non-profit, non-commercial activities. The "PeaceTech Field of Use" shall not include: (a) the performance of services for, or delivery of products to, for-profit companies or to other entities that are able and willing to pay fees in consideration of such services or products, including non-profit and not-for-profit entities; or (b) any activities that are competitive with GTG's commercialization of the GTG Product in accordance with this Agreement.

1.19   "PeaceTech Materials" means the PeaceTech Product, the Technology, the Input Data, Improvements made, developed, created, or reduced to practice by or on behalf of PeaceTech, the Transferred Domain Names, and the Transferred Trademarks.

1.20   "PeaceTech Product" has the meaning given in the recitals above, including all Improvements thereto made, developed, created, or reduced to practice by or on behalf of PeaceTech. For clarity, the term "PeaceTech Product" does not refer to Input Data.

1.21   "Proprietary Rights" means Patent rights, Copyrights, rights in Know-How (including trade secrets and rights under unfair competition laws), Trademark rights, rights to recover for past, present and future violations thereof, and all other intellectual property or other proprietary rights of any sort existing now or in the future throughout the universe.

1.22    "Receiving Party" has the meaning given in Section 7.1.

1.23    "SaaS" means software as a service.

1.24    "Technology" means all software (including commented source code), documentation, charts, diagrams, works of authorship and other tangible or digital materials under PeaceTech's control as of the Effective Date that embody or were created with Know-How relating to the PeaceTech Product Schedule C sets forth a list of materials constituting Technology as of the Effective Date. If any other materials meet the foregoing definition but were omitted from Schedule C as of the Effective Date, GTG may add such other materials to Schedule C by email or other written notice to PeaceTech at any time within sixty (60) days after the Effective Date, and such other materials will be deemed Technology for all purposes of this Agreement. After such 60-day period, GTG may not (without PeaceTech's written consent) update Schedule C to include additional materials even if such materials otherwise meet the foregoing definition.

1.25    "Term" means the period beginning on the Effective Date and ending when this Agreement is terminated or expires pursuant to Section 11.

1.26    "Trademarks" means, collectively, trademarks, service marks, trade dress, logos, brand names, trade names, corporate names and Internet domain names (in each case, whether or not registered), including all variations, derivations, combinations, applications, registrations, and renewals therefor, and all rights and priorities with respect thereto afforded under the Applicable Laws of any jurisdiction worldwide.

1.27    "Transferred Domain Names" means the internet domain names listed on Schedule B.

1.28    "Transferred Trademarks" means the Trademarks listed on Schedule B.

2.    Grant of Rights.

2.1    PeaceTech hereby grants GTG an exclusive (even as to PeaceTech), worldwide, perpetual, irrevocable (notwithstanding any termination of this Agreement), sublicensable (through one or more tiers), transferable (in accordance with Section 15.2), fully paid-up license under all applicable Proprietary Rights to make, have made, offer for sale, sell, lease, import, develop, improve, distribute, produce, market, access, use, copy, store, display, reproduce, perform, create derivatives from, provide, and otherwise exploit (collectively, "Exploit") the Licensed Products, the Technology, the Improvements made, conceived, developed or reduced to practice by or on behalf of PeaceTech, and the Input Data, solely in the GTG Field of Use.

2.2    For clarity, subject to the rights granted to GTG in Section 2.1, PeaceTech retains its rights to make, have made, sell, lease, import, distribute, produce, and provide the PeaceTech Product in the PeaceTech Field of Use and retains its rights to use the Technology, PeaceTech Product, Input Data, and any Improvements made, conceived, developed or reduced to practice by or on behalf of PeaceTech for such purposes.

4

2.3    For clarity, except as otherwise expressly provided in this Agreement, GTG will have complete control and discretion over the development, marketing, distribution, and licensing of GTG Products.

2.4    PeaceTech hereby irrevocably conveys, transfers, and assigns to GTG, and GTG hereby accepts, all of PeaceTech's right, title, and interest in and to the following: (a) the Transferred Trademarks and Transferred Domain Names, together with the goodwill of the business connected with the use of, and symbolized by, the Transferred Trademarks and Transferred Domain Names; (b) all rights of any kind whatsoever, including all Proprietary Rights, of PeaceTech accruing under any of the foregoing provided by Applicable Law of any jurisdiction, by international treaties and conventions, and otherwise throughout the world; (c) any and all royalties, fees, income, payments, and other proceeds now or hereafter due or payable with respect to any and all of the foregoing; (d) any and all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, dilution, misappropriation, violation, misuse, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages; and (e) the right to apply for, make filings and maintain all registrations, applications and renewals for the Transferred Trademarks and Transferred Domain Names.

2.5    As of the Effective Date, all required registration, maintenance and renewal fees in connection with each Transferred Domain Name have been paid, and all necessary documents and certificates in connection with each Transferred Domain Name have been filed with the relevant domain name registrars for the purposes of maintaining such Transferred Domain Name. Each Transferred Domain Name was properly registered and is in good standing.  During the Term, except as specified in Section 2.5, PeaceTech shall not be responsible for any costs relating to the registration, maintenance and prosecution of the Transferred Domain Names, including payment of any associated fees therefor, for the notarization, authentication, legalization or consularization of the signatures hereof, and for the recording of such assignment documents with the appropriate domain name registrar. As soon a reasonably practicable after the Effective Date, PeaceTech shall provide GTG with the transfer codes and with any other code, password or information required to transfer the Transferred Domain Names to the domain name registrar chosen by GTG.  PeaceTech shall also unlock any Transferred Domain Names which might be in "lock" status as soon as reasonably practicable after the Effective Date. PeaceTech hereby authorizes the applicable domain name registrar of each Transferred Domain Name to record GTG as the assignee and owner of the Transferred Domain Names.

3.    Fee. In consideration of the rights granted and obligations undertaken by PeaceTech hereunder, GTG shall (a) pay to PeaceTech a one-time fixed fee of three hundred thousand dollars ($300,000), payable in U.S. dollars within forty-five (45) days after the Effective Date, and (b) issue to PeaceTech a stock certificate representing 2,033,000 shares of the Company's common stock, as of the Effective Date.

4.    GTG Covenants

4.1     *GTG Customers*. GTG (a) shall ensure that GTG Customer Agreements include restrictions substantially equivalent to those listed on Schedule D and (b) shall not knowingly provide GTG Products to any person or entity with whom either Party is restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury of the United States of America (including, those Persons named on OFAC's Specially Designated and Blocked Persons list) or under any U.S. statute, executive order (including, the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action.

4.2     *Subcontracting*. Except as set forth in Section 2.1, if GTG subcontracts any of its rights or obligations hereunder, GTG shall, at its discretion, either perform GTG's obligations under this Agreement with respect to such subcontract or ensure its subcontractor(s) perform such obligations as though each stood in the shoes of GTG hereunder with respect to such subcontract. For clarity, in any event, each such subcontract will be subject to the limitations and restrictions on the licenses granted to GTG hereunder.

4.3     *Access to GTG Products*. GTG shall provide PeaceTech with access to and the right to use the GTG Products (for clarity, not in source code) that are put into production and generally offered to the public from time to time, solely for PeaceTech's use in the PeaceTech Field of Use (notwithstanding anything to the contrary in the GTG standard terms and conditions), and subject to PeaceTech's agreement in writing to GTG's standard terms and conditions for access and use to the GTG Product, but without any obligation to pay a fee to GTG. For clarity, the Parties expect such standard terms and conditions to include restrictions on commercializing or redistributing the GTG Products or any portion or output thereof.

5.     PeaceTech Covenants.

5.1     *Transfer of Technology*. On or about the Effective Date, PeaceTech shall provide a copy of all Technology then in existence to GTG in a form such that a person skilled in the art could produce, operate, and maintain the PeaceTech Product and could produce commercially viable products and services based on the Technology (including in source code form, where applicable) ("Reasonable Form"), in each case without undue impediment, inefficiency, or delay. During the Term, PeaceTech shall provide to GTG a copy of all Improvements developed by or on behalf of PeaceTech in a Reasonable Form, in each case without undue impediment, inefficiency, or delay.

5.2     *Transfer of Input Data.* On or about the Effective Date, (a) PeaceTech shall provide to GTG a copy of all Input Data then in existence (or internet or other electronic links and access codes enabling effective use of Input Data) that PeaceTech can provide (subject to Section 2) without substantially violating or infringing any third party's Proprietary Rights and (b) PeaceTech shall notify GTG of all Input Data that it may not so provide to GTG, and shall, at GTG's request and expense, use commercially reasonable efforts to assist GTG in securing access and all desired Proprietary Rights to use such Input Data—in each of the foregoing cases (a) and (b), in Reasonable Form.

6.     Mutual Covenants.

6.1     *Third-party Claims.* Without limiting <u>Section 12</u>, if either Party is served with a claim or receives a threat or demand alleging that either Party's use of the PeaceTech Materials or exercise of any right under this Agreement violates, infringes, or misappropriates a third party's rights or otherwise potentially gives rise to liability or equitable relief, such Party shall promptly notify the other Party. GTG shall have the sole right, but not an obligation, to control the defense of any such action, and PeaceTech shall cooperate with GTG in defending or settling the matter. If GTG assumes such control, GTG may, in its own discretion, control (directly or by directing PeaceTech) such proceedings and the modalities for its termination. If GTG does not assume such control, it will promptly notify PeaceTech of such fact in order to give PeaceTech the possibility to assume (continued) defense at its own cost. Neither Party may, without the other Party's consent, settle any such claim, threat, or demand in a manner that compromises or prejudices the rights or interests of the other relating to this Agreement or its subject matter.

6.2     *Non-disparagement.* Neither Party shall make any statement, whether oral or written, to any third party concerning the other Party or its products or services that is disparaging or that is false or misleading.

6.3     *Further Assurances.* The Parties shall take such steps and actions, and provide such cooperation and assistance to the other Party and its successors, assigns, and legal representatives, including the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other documents, as may be reasonably necessary to effect, evidence, perfect, or enforce the licenses and assignments contemplated by this Agreement, including to effectuate the transfer of Technology, Improvements, and Input Data as set forth in <u>Section 5</u>.

7.     <u>Confidentiality</u>.

7.1     For purposes of this Agreement, "<u>Confidential Information</u>" means any information disclosed by one Party (as applicable, the "<u>Disclosing Party</u>") to the other Party (the "<u>Receiving Party</u>") that should reasonably be perceived by the Receiving Party as confidential or that is expressly and reasonably identified in writing by the Disclosing Party as confidential, except for information that: (a) is or becomes reasonably accessible to the general public without any breach of this Agreement by the Receiving Party; (b) is in the possession of the Receiving Party prior to the disclosure by the Disclosing Party; or (c) is subsequently disclosed to the Receiving Party by a third party without breach of confidentiality obligations between such third party and the Disclosing Party.

7.2     Notwithstanding the definitions of "Receiving Party" and "Disclosing Party" set forth above, for purposes of establishing special mutually agreed rights and obligations under this <u>Section 7</u> with respect to certain information, (a) each Party has the obligations of a Receiving Party with respect to the Technology, (b) PeaceTech is hereby deemed the exclusive Receiving Party of the Input Data and GTG is hereby deemed the exclusive Disclosing Party of the Input Data, even if PeaceTech initially discloses the Input Data to GTG, (c) <u>Section 7.1(b)-(c)</u> and <u>Section 7.7</u> do not apply to the Technology, and (d) <u>Section 7.5</u> does not apply to the Technology, Improvements, or the Input Data.

7

7.3     Where Confidential Information is disclosed in connection with this Agreement or its subject matter, whether before or after the Effective Date, the Receiving Party shall hold it in confidence (except as otherwise set forth in this <u>Section 7</u>) and take at least reasonable precautions to protect such Confidential Information, including all precautions the Receiving Party employs with respect to its own confidential information. The Receiving Party shall not divulge any such Confidential Information or any information derived therefrom to any third party, except, (a) to its employees, advisors, or contractors with a need to know of the Confidential Information or (b) to the extent reasonably necessary for the Receiving Party to exercise its rights or perform its obligations under this Agreement, including as necessary to Exploit Licensed Products in accordance with this Agreement; provided, in each of the foregoing cases (a) and (b), such disclosure is made subject to confidentiality obligations that are no less restrictive than those set forth herein.

7.4     The Receiving Party may also disclose Confidential Information of the Disclosing Party if required by Applicable Law, but shall, to the extent permitted and practicable, provide the Disclosing Party with prompt notice of any such intended disclosure and, at the Disclosing Party's expense, assist the Disclosing Party in lawfully resisting the disclosure or seeking appropriate protective orders.

7.5     Upon the Disclosing Party's written request, the Receiving Party shall either (at the Receiving Party's discretion) (a) turn over to the Disclosing Party all Confidential Information of the Disclosing Party and all documents or media containing any such Confidential Information and any and all copies or extracts thereof or (b) destroy all Confidential Information of the Disclosing Party and all documents or media containing any such Confidential Information and any and all copies or extracts thereof in the Receiving Party's possession and certify such destruction to the Disclosing Party. The foregoing shall not require the Receiving Party to return or destroy any Confidential Information stored in backup media according to the Receiving Party's standard backup processes; provided that such Confidential Information shall remain subject to the terms of this <u>Section 7</u> (excluding and notwithstanding <u>Section 7.7</u>) for so long as it remains in the Receiving Party's possession.  Notwithstanding anything to the contrary in this <u>Section 7.5</u>, GTG shall have no obligation to turn over to PeaceTech or destroy any items if such items are reasonably necessary for GTG to exercise its rights or perform its obligations under this Agreement.

7.6     The Receiving Party acknowledges there can be no adequate remedy at law for a breach of its obligations hereunder, that any such breach will result in irreparable harm to the Disclosing Party, and therefore, that upon any such breach or any threat thereof, the Disclosing Party shall be entitled to appropriate equitable relief (without the posting of any bond) in addition to whatever remedies it might have at law and to be indemnified by the Receiving Party from any Losses in connection with any breach or enforcement of the Receiving Party's obligations hereunder or the unauthorized use or release of any such Confidential Information. The Receiving Party will notify the Disclosing Party in writing immediately upon the occurrence of any such unauthorized release or other breach.

7.7     Each Party's obligations under this <u>Section 7</u> shall terminate with respect to any particular information, five (5) years after the date of disclosure of such information.

7.8     Notwithstanding anything to the contrary in this <u>Section 7</u>, nothing in <u>Section 7</u> shall limit GTG ability to Exploit the Licensed Product, Technology, Improvements, or Input Data in accordance with the rights granted to GTG in this Agreement.

8.      <u>Intellectual Property</u>.

8.1     *Ownership*. Subject to the rights expressly granted in this Agreement, and as between the Parties, PeaceTech owns all right, title and interest (including all Proprietary Rights) in and to the Technology and the PeaceTech Product as provided to GTG as of the Effective Date. Each Improvement that either Party develops (whether on its own or with the assistance of others) shall be owned solely by such Party, subject to any rights otherwise expressly granted in this Agreement. No title to or ownership of the PeaceTech Product, Technology, or Input Data in each case as provided to GTG as of the Effective Date is transferred to GTG pursuant to this Agreement. All rights not expressly granted to a Party herein are expressly reserved by the other Party.  Notwithstanding anything in this Agreement to the contrary, PeaceTech may not (in whole or in part) assign or transfer to any third party, or otherwise encumber, any of the Licensed Product, Technology, Improvements, or Input Data without GTG's prior written consent.

8.2     *Registration, Prosecution, and Maintenance*.

(a)     As between the Parties, GTG will have the sole right and discretion, but not the obligation, to file and prosecute registrations and applications for Proprietary Rights relating to the Licensed Products, Technology, or Input Data, including any Improvements, and maintain the same throughout the world. PeaceTech shall not file or prosecute any such registration or application or maintain the same except as GTG may, at its sole discretion, approve in writing. If so requested by GTG, PeaceTech shall cooperate with GTG, at GTG's expense, in filing, prosecuting, and maintaining all such registrations and applications, including by executing written documents, providing information, and making personnel available to GTG and governmental authorities as requested by GTG.

(b)     PeaceTech shall place on the PeaceTech Product in a proper manner all reasonable Patent and Patent application markings and other markings related to Proprietary Rights as requested by GTG. GTG shall use commercially reasonable efforts to place Proprietary Rights notices on GTG Products identifying PeaceTech as the owner of any applicable Technology or Input Data if and to the extent: (i) GTG elects to prosecute registrations for Proprietary Rights in the Technology or Input Data, (ii) such registrations are approved by the applicable governmental body, and (iii) such notices are expected under Applicable Law or ordinary market practice.

8.3     *Enforcement of Proprietary Rights*.

(a)     If either Party becomes aware of any product or activity of any third-party person or entity that is reasonably likely to violate, infringe, or misappropriate any Proprietary Right in the Technology, Licensed Products, or Input Data, then such Party shall promptly notify the other Party.

(b)      GTG may in its discretion institute, pursue, or control any claim, suit, action, or proceeding for violation, infringement, or misappropriation of any Proprietary Right the Licensed Products, the Technology, the Improvements (made, conceived, developed or reduced to practice by or on behalf of PeaceTech), and the Input Data in any forum, to seek and recover all past, present, and future damages with respect thereto, and to seek any other available remedies with respect to the third party that GTG deems appropriate, including demanding that the third party cease the potentially infringing activity, negotiating a license agreement with the third party, and initiating a legal action. PeaceTech shall not itself take any such action unless requested by GTG. Where requested by GTG, PeaceTech shall cooperate reasonably in taking any such action, including executing negotiated license agreements, filing pleadings, supplying essential documentary evidence, and making essential witnesses then in its employment available. GTG may join or include PeaceTech as a party in such action, and PeaceTech shall not resist such joinder or inclusion.

(c)      GTG shall bear all reasonable legal expenses (including court costs and reasonable attorneys' fees) of each Party arising from an action initiated by GTG or taken by PeaceTech pursuant to this Section 8.3 and GTG shall be entitled to all amounts awarded (including any on-going royalty payments and cash recoveries resulting from a settlement or judgment) by way of any related judgment, settlement, or compromise.

(d)      Neither PeaceTech nor GTG may enter into any settlement or other compromise that would restrict or inhibit the other Party's ability to exercise or enforce its Proprietary Rights (whether owned or licensed) relating to Licensed Products without the other Party's prior written approval.

9.      Governance Process. Each of GTG and PeaceTech shall designate an equal number of representatives, such number to be mutually agreed by the Parties from time to time, authorized to manage the Parties' relationship under this Agreement. As of the Effective Date, each Party shall have one (1) such relationship manager. Such relationship managers will meet once per month, if requested by either Party for a given month, during the first twelve (12) months of the Term, and thereafter at an interval to be agreed by the Parties. At each such meeting, each Party shall be prepared to discuss any of the following topics (if requested by the other Party or mutually agreed): (a) PeaceTech's Customers and potential Customers that may be potential Customers for GTG; (b) potential future endeavors that the Parties may pursue; (c) potential Proprietary Rights enforcement; (d) any disputes between the Parties; and (e) any other matter related to this Agreement.

10.      Representations and Warranties.

10.1    *Mutual Representations and Warranties.* Each Party represents and warrants to the other Party that:

(a)      it is duly organized, validly existing and in good standing as a corporation or other entity under the laws of the jurisdiction of its incorporation or other organization;

(b)     it has the full right, power and authority to enter into, and to perform its obligations and grant the rights and licenses it grants or is required to grant under, this Agreement;

(c)     the execution of this Agreement by its representative whose signature is set forth at the end of this Agreement has been duly authorized by all necessary corporate or organizational action of such Party;

(d)     upon the execution and delivery of this Agreement by such representative, this Agreement shall have been duly executed and delivered by such Party;

(e)     when executed and delivered by both Parties, this Agreement will constitute the legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms; and

(f)     the execution, delivery and performance of this Agreement do not and will not violate the certificate of incorporation, bylaws, or other organizational documents of such Party, or any contractual or other legal obligation of such Party to a third party.

10.2   *Additional PeaceTech Representations and Warranties*. As an inducement to GTG to enter into this Agreement, PeaceTech represents and warrants to GTG as follows:

(a)     To the best of PeaceTech's knowledge, PeaceTech owns or licenses under a valid written license, and will continue to own or license under a valid written license, all Proprietary Rights in the PeaceTech Materials necessary to grant the rights as provided herein, in each case free and clear of any lien or encumbrance and without GTG being required to make payments beyond those required by Section 3.

(b)     GTG's use of the PeaceTech Materials in accordance with this Agreement will not violate, infringe, or misappropriate any Proprietary Right of any third party.

(c)     To the best of PeaceTech's knowledge, the transfer of the Input Data to GTG and GTG's use of the Input Data in accordance this Agreement will not breach any agreement or violate Applicable Law, including laws governing privacy and data protection.

(d)     PeaceTech is not in breach of, and will not breach, any agreement pursuant to which it licenses any Proprietary Rights in the PeaceTech Materials.

(e)     To the best of PeaceTech's knowledge, prior to the Effective Date, there has been no actual infringement or threatened infringement of PeaceTech's Proprietary Rights in the PeaceTech Materials by any third party.

(f)     There are not, and have not been, any claims, litigation, regulatory proceedings, official investigations, judgments, or settlements relating to PeaceTech Materials.

(g)     PeaceTech has not granted, and shall not grant, whether pursuant to a license agreement, settlement agreement, or otherwise, any rights or covenants to any third party that would conflict with, impair, or reduce GTG's rights pursuant to this Agreement.

10.3     Except as expressly set forth in this Agreement, the Parties make no representation or warranty, express or implied, at law or in equity, with respect to this Agreement or its subject matter, and any such other representations or warranties are hereby expressly disclaimed.

11.     <u>Term and Termination</u>.

11.1     Unless otherwise terminated as provided below, this Agreement will remain in effect until all Proprietary Rights in the PeaceTech Materials expire or otherwise cease to exist; <u>provided</u>, <u>however</u>, that if the foregoing is deemed by a tribunal adjudicating either Party's rights, obligations, or liabilities hereunder to be invalid or void for any reason, then (and only then) as an alternative, the Party's intend for this Agreement to continue in effect for 30 years after the Effective Date and thereafter automatically renew for successive 5-year periods unless either Party cancels such a renewal on providing not less than one hundred twenty (120) days' prior written notice.

11.2     If a Party materially breaches a provision of this Agreement, the other Party may terminate this Agreement upon sixty (60) days' prior written notice unless, during such 60-day period, the breach is cured or the breaching Party has begun and continues good faith and reasonable efforts to cure the breach.

11.3     <u>Sections 2, 7, 8, 10.2(b), 11, 12, 13, and 15</u> will survive any termination or expiration of this Agreement.

11.4     Neither Party shall incur any liability whatsoever for any damage, loss or expenses of any kind suffered or incurred by the other arising from or incident to any termination of this Agreement (or any part thereof) by such Party which complies with the terms of the Agreement whether or not such Party is aware of any such damage, loss or expenses.

11.5     Termination is not the sole remedy under this Agreement and, whether or not termination is effected, all other remedies will remain available.

12.     <u>Indemnity</u>.

12.1     *GTG Indemnity Obligation*. GTG shall indemnify, defend, and hold harmless PeaceTech, its Affiliates, and each of its and their respective officers, directors, shareholders, employees, agents, contractors, successors and permitted assigns ("<u>PeaceTech Indemnified Party</u>") from and against any and all losses of all types, including: damages, expenses, settlements, judgments, awards, fines, costs, charges, disbursements, fees (including reasonable attorneys' fees and court costs), penalties, obligations, and liabilities (collectively, "<u>Losses</u>") arising in connection with any third-party claim, action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena, or investigation of any nature, whether civil, criminal, administrative, regulatory, or otherwise (each, an "<u>Action</u>") (a) alleging that GTG Product infringes, misappropriates, or otherwise violates any

Proprietary Right of any third party, or (b) arising out of GTG's violation of Applicable Law (in the case of (a) or (b) above, except to the extent caused by (i) any Technology or Improvements provided by PeaceTech to GTG under this Agreement, (ii) GTG's use of Input Data provided by PeaceTech to GTG under this Agreement, (iii) any services performed by or on behalf of PeaceTech pursuant to the Services Agreement, or (iv) the gross negligence or willful misconduct of any PeaceTech Indemnified Party).  For purposes of this Section 12, "Affiliate" means, with respect to a Party, any other entity directly or indirectly controlling, controlled by, or under common control with such Party, where control may be by management authority, equity interest, or otherwise, provided however that GTG and its Subsidiaries shall not be deemed to be an Affiliate of PeaceTech. "Subsidiary" means, with respect to GTG, any other entity directly or indirectly controlled by GTG, where control may be by management authority, equity interest, or otherwise. For clarity, for purposes of this Agreement, PeaceTech is not an Affiliate of the U.S. Institute of Peace or the Endowment of the U.S. Institute of Peace, and no party acting under this Agreement shall claim such affiliation or enter any agreement making such a claim.

12.2   *PeaceTech Indemnity Obligation*. PeaceTech shall indemnify, defend and hold harmless GTG, its Affiliates, and each of its and their respective officers, directors, shareholders, employees, agents, contractors, sublicensees, successors, and permitted assigns ("GTG Indemnified Party") from and against any and all Losses arising out of any Action (a) alleging that a GTG Indemnified Party's Exploitation in accordance to this Agreement of any Technology, Improvement or Input Data provided by PeaceTech to GTG under this Agreement infringes, misappropriates, or otherwise violates any Proprietary Right of any third party, (b) alleging that a GTG Indemnified Party's Exploitation in accordance with this Agreement of any Input Data provided by PeaceTech to GTG under this Agreement violates the agreement pursuant to which PeaceTech has rights to such Input Data, or (c) arising out of PeaceTech's violation of Applicable Law, except in each of the foregoing cases (a), (b), or (c) to extent arising from the gross negligence or willful misconduct of a GTG Indemnitee.  If any item subject to a PeaceTech's indemnification obligations under foregoing cases (a) or (b) becomes, or in PeaceTech's reasonable opinion is likely to become, the subject of an Action described in the foregoing cases (a) or (b), PeaceTech shall, in addition to indemnifying the GTG Indemnified Party as provided in this Section 12.2 and to the other rights the GTG Indemnified Party may have under the Agreement, promptly, at PeaceTech's expense, use its best efforts to secure the right for GTG to continue using the item in accordance with the rights granted for such item to GTG under this Agreement.

12.3   *Indemnification Procedure*. In the event of an Action giving rise to a Party's indemnification obligations under this Section 12, the indemnified Party must promptly notify the indemnifying Party in writing after learning enough about the Action that the indemnified Party should reasonably know the action is likely to be subject to indemnification hereunder. If there is no reasonable basis for dispute as to whether an Action is subject to indemnification hereunder, then the indemnifying Party shall be responsible for providing and directing the defense of the Action upon receipt of such notice. The indemnified Party will be entitled to participate in such defense at its own cost and expense. The indemnified Party will provide the indemnifying Party with such information and assistance as the indemnifying Party may reasonably request or as legally required, in each case at the expense of the indemnifying Party. The indemnifying Party shall not settle any Action without the indemnified Party's prior

13

written consent, which the indemnified Party shall not unreasonably withhold, condition, or delay. If the indemnifying Party does not provide the defense of a third-party Action that is subject to indemnification hereunder (for example, if it is not discernible that Losses in connection with the Action are subject to indemnification until sometime after the Action commences), the indemnifying Party shall reimburse the indemnified Party for the costs of providing such defense, along with all other Losses subject to indemnification. The indemnified Party's failure to perform any obligations under this <u>Section 12</u> will not relieve the indemnifying Party of its obligations under this <u>Section 12</u> except to the extent that the indemnifying Party can demonstrate that it has been materially prejudiced as a result of such failure.

12.4    Notwithstanding anything to the contrary above, neither Party shall be obligated under this <u>Section 12</u> to pay to indemnitees or incur defense costs on behalf of indemnitees in excess of four hundred sixty thousand dollars ($460,000) in the aggregate.

13.    <u>Limitation of Liability</u>.

13.1    EXCEPT FOR LIABILITY ARISING FROM A PARTY'S OBLIGATIONS UNDER <u>SECTION 12</u>, VIOLATION OF THE OTHER PARTY'S PROPRIETARY RIGHTS, BREACH OF <u>SECTIONS</u> <u>5</u>, <u>6</u>, <u>7</u>, <u>8</u>, OR <u>10</u>,  OR A PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER PARTY NOR THEIR RESPECTIVE AFFILIATES NOR ANY OF THEIR OFFICERS OR DIRECTORS SHALL HAVE LIABILITY RELATING TO THIS AGREEMENT FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL OR PUNITIVE DAMAGES ARISING OUT OF OR RELATED TO THE AGREEMENT, EVEN IF SUCH LOSSES WERE FORESEEABLE OR IF SUCH PARTY HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE FOREGOING LIMITATION APPLIES IRRESPECTIVE OF THE FORM OF ACTION UNDER WHICH LIABILITY MIGHT ARISE, WHETHER NEGLIGENCE, BREACH OF CONTRACT, OR OTHERWISE.

14.    <u>Publicity and Press Releases</u>. The Parties intend to issue a mutually agreeable press release announcing the transaction contemplated by this Agreement. Neither Party will issue any press release regarding, or otherwise publicize, the subject matter of this Agreement without the other Party's written consent.

15.    <u>Miscellaneous</u>.

15.1    *Independent Contractors*. The Parties are independent contractors and not partners, joint venturers or otherwise affiliated and neither has any right or authority to bind the other in any way.

15.2    *Assignment*. Except as expressly permitted under this Agreement, PeaceTech may not assign, delegate, or transfer (a) this Agreement, nor any of the rights, interests or obligations hereunder, nor (b) any PeaceTech Materials, in each case including through a merger, consolidation, corporate reorganization, or sale of all or substantially all of PeaceTech's assets without GTG's consent.  Except as provided in <u>Section 4.2</u>, GTG may not assign, delegate, or transfer this Agreement, and any of the rights, interests or obligations

hereunder except through a merger, consolidation, corporate reorganization, or sale of all or substantially all of GTG's assets without PeaceTech's consent. Any attempted assignment, delegation, or transfer in violation of this <u>Section 15.2</u> shall be null and void.  Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns.

15.3    *Subsequent Owners*.   Notwithstanding the prohibition on assignment, delegation, and transfer in <u>Section 15.2</u>, the Parties acknowledge and agree that the rights granted to GTG in this Agreement shall survive any transfer or assignment of any of the PeaceTech Materials to a third party.

15.4    *Amendment and Waiver*. Except as otherwise expressly provided herein, any provision of this Agreement may be amended and the observance of any provision of this Agreement may be waived (either generally or any particular instance and either retroactively or prospectively) only with the written consent of the Parties. No failure or delay by any Party in exercising any right, power or privilege hereunder will operate as a waiver thereof nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

15.5    *Rules of Construction*. References to one gender include all genders and references to the singular include the plural and vice versa. Use of the words "include", "included", "includes" or "including" as used herein shall be deemed in each case to be followed by the phrase "without limitation," or phrase "but not limited to", if not expressly followed by such phrase. The word "all" includes "any" and the word "any" includes "all". The words "herein" and "hereunder" refer to the entire Agreement. The term "data" includes "information" and the term "information" includes the word "data". Unless context expressly requires otherwise, the conjunction "or" shall be understood in its inclusive sense (and/or). The headings of the sections of this Agreement are inserted for convenience only and shall not constitute a part hereof or affect in any way the meaning or interpretation of this Agreement. References to Sections and Schedules are to Sections of and Schedules to, this Agreement.

15.6    *Notice*. All notices and other communications required or permitted hereunder shall be in writing and sent via e-mail to all of the recipient's e-mail addresses set forth below, followed by a copy sent via a nationally recognized overnight courier to the physical address listed below. Notices sent in accordance with this provision shall be deemed to have been delivered and effective when sent via e-mail.

If to PeaceTech:

PeaceTech Lab, Inc.
2310 Constitution Avenue N.W.,
Washington, D.C. 20037

Attention: Sheldon Himelfarb

Email: sheldon@peacetechlab.org

If to GTG:

groundTruth Global, Inc.
2310 Constitution Avenue N.W.,
Washington, D.C. 20037

Attention: Rohini Srihari, CEO

Email: rohini@groundtruthglobal.com

15.7    *Entire Agreement*. This Agreement supersedes all proposals, oral or written, all negotiations, conversations, or discussions between or among the Parties relating to the subject matter of this Agreement and all past dealing or industry custom.

15.8    *Governing Law*. This Agreement shall be governed by and construed under the laws of the State of New York and the United States without regard to conflicts of laws provisions thereof and without regard to the United Nations Convention on Contracts for the International Sale of Goods.

15.9    *Arbitration*. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Washington D.C. before three arbitrator(s). The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. Within 15 days after the commencement of arbitration, each Party shall select one person to act as arbitrator, and the two so selected shall select a third arbitrator within 30 days of the commencement of the arbitration. If the arbitrators selected by the Parties are unable or fail to agree upon the third arbitrator within the allotted time, the third arbitrator shall be appointed by JAMS in accordance with its rules. All arbitrators shall serve as neutral, independent and impartial arbitrators. Each Party shall communicate its choice of a Party-appointed arbitrator only to the JAMS Case Manager in charge of the filing. Neither Party is to inform any of the arbitrators as to which of the Parties may have appointed them. The Parties shall maintain the confidential nature of the arbitration proceeding and the award, including the hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision.

15.10   *Rights in Bankruptcy*.  All rights and licenses granted under or pursuant to this Agreement are, and will otherwise be deemed to be, for purposes of Section 365(n) of the U.S. Bankruptcy Code (the "Bankruptcy Code"), and any equivalent provision under any other applicable law, licenses of rights to "intellectual property" as defined under Section 101 of the Bankruptcy Code and conveyed and effective as of the Effective Date.  The Parties agree that the rights and licenses granted under this Agreement are conveyed and effective as of the Effective Date and that GTG retains and may fully exercise all of its rights and elections as a licensee of

intellectual property under the Bankruptcy Code, or equivalent provision under any other applicable law, and is entitled to the maximum protection of the rights and licenses under the Bankruptcy Code of such applicable law, including the right to preserve and enforce the licensee benefits set forth in this Agreement.  Without limiting the foregoing, GTG (a) may assert without objection from PeaceTech that this Agreement is not vulnerable to rejection under the Bankruptcy Code and that, if rejected, such rejection shall not result in termination of this Agreement or a similar result or effect, (b) shall continue to have and may fully exercise any rights (and make any election) available under Section 365(n) of the Bankruptcy Code or this Agreement, and (c) shall have the right to, and PeaceTech shall provide and cause to be provided, the intellectual property licensed hereunder and embodiments thereof, and PeaceTech shall not interfere with GTG's rights and licenses with respect to such intellectual property and embodiments thereof.

15.11   *Export Control*. The Technology and Licensed Products may be subject to export control laws, including the U.S. Export Administration Act and its associated regulations. Neither Party will directly or indirectly make the Technology or Licensed Products available to or from any location in a manner that violates Applicable Law. Each Party will comply with Applicable Law and complete all required undertakings before making Licensed Products or Technology available outside of the United States.

15.12   *Severability*. If any provision of this Agreement is held illegal, invalid or unenforceable by an arbitration panel or court of competent jurisdiction, that provision will be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.

15.13   *Electronic Signatures*. Each Party agrees that the electronic signatures of the Parties, in any form or format, included in this Agreement are intended to authenticate this writing and to have the same force and effect as manual signatures. For the purposes of this provision, "electronic signature" means any electronic symbol, or process attached to or logically associated with a record and executed and adopted by a Party with the intent to sign such record, including e-mailing scanned images of signatures and processes developed by electronic signature services (*e.g.*, DocuSign).

*[Signatures Appear on the Next Page]*

17

With the signatures of their authorized representatives below, the Parties have executed this Agreement as of the Effective Date.

PEACETECH LAB, INC.                    GROUNDTRUTH GLOBAL, INC.

By:_____                By: Rohini K. Srihari

Name:_____                Name: Rohini K. Srihari

Title:_____               Title: CEO

[Signature Page to License Agreement]

With the signatures of their authorized representatives below, the Parties have executed this Agreement as of the Effective Date.

PEACETECH LAB, INC.                    GROUNDTRUTH GLOBAL, INC.

By:_____            By:_____

Name:_____            Name:_____
     Sheldon Himelfarb

Title:_____            Title:_____
     CEO

[Signature Page to License Agreement]

*Final*
*Confidential*

<u>SCHEDULE A</u>

Material Input Data

| Input Data | Source | Basis of Rights |
|---|---|---|
| Disruption Data | Generated by PeaceTech | Owned by PeaceTech |
| Projection Data | Generated by PeaceTech | Owned by PeaceTech |
| Index Data and Commentary | Generated by PeaceTech | Owned by PeaceTech |
| Kenyan SMS Data | Collected by PeaceTech through mobile application | Owned by PeaceTech |
| Hate Speech Data | Generated by PeaceTech | Owned by PeaceTech |

*Final*
*Confidential*

<u>SCHEDULE B</u>

Transferred Trademarks and Transferred Domain Names

**TRADEMARKS**

<u>Word Marks</u>:
- groundTruth
- groundTruth global

<u>Design Mark</u>:



**DOMAIN NAMES**

- groundtruthglobal.com

*Final*
*Confidential*

## SCHEDULE C

### Technology

1. Taxonomy of indicators, disruptions.
2. Algorithms and source code for predictive analytics.
3. UI for groundTruth portal, including source code.
4. All code, graphics, text, and other content available at groundtruthglobal.com as of the Effective Date.
5. All FAQs, guides, help documentation, brochures, marketing materials and similar documentation relating to the PeaceTech Product in existence as of the Effective Date, whether in draft or final form.

*Final*
*Confidential*

<u>SCHEDULE D</u>

Restrictions in GTG Customer Agreements

Each GTG Customer shall not and shall not attempt to:

     1.     reverse engineer, decompile, disassemble, or otherwise attempt to derive source code, trade secrets or know-how in or underlying any GTG Product;

     2.     sell, rent, lease, sublicense, or redistribute any GTG Product, or any output of, content provided through, or access to any GTG Product; or

     3.     use any GTG Product for any illegal purpose.