# EXHIBIT 8

SUBLEASE

BETWEEN

**PEACETECH LAB, INC.**,
SUBLANDLORD

and

**groundTruth global, Inc.**
SUBTENANT

_____

Dated: August 14, 2018

<u>SUBLEASE</u>

This Sublease (the "Sublease" or the "Agreement") is entered into as of August 14, 2018 by and between PEACETECH LAB, INC., a Washington, D.C. not-for- profit corporation (hereinafter "Sublandlord"), and groundTruth global, Inc., a Delaware corporation (hereinafter "Subtenant").

INTRODUCTORY STATEMENTS

A.      In accordance with the Lease Agreement dated August 14, 2018, by and between The United States Institute of Peace, as Prime Landlord, and Sublandlord (the "Prime Lease"), as Tenant, a redacted copy of which is attached to this Sublease as Exhibit A, Prime Landlord leased to Sublandlord certain space containing approximately eight thousand seven hundred forty-eight (8,748) rentable square feet on the second (2nd), third (3rd) and fourth (4th) floors (the "Premises") of the building located at 2301 Constitution Avenue N.W., Washington D.C. (the "Building").

B.      Subtenant has agreed to sublet from Sublandlord a certain portion of the Premises.

C.      The parties desire to enter into this Sublease defining their respective rights, duties and liabilities relating to the "Subleased Premises" (defined below).

WITNESSETH

NOW THEREFORE, Sublandlord and Subtenant, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and each with intent to be legally bound, for themselves and their respective successors and permitted assigns, agree as follows:

1.      **<u>SUBLEASE/USE</u>**

Sublandlord, for and in consideration of the Subtenant's payment of the Sublease Rent (defined in Section 7 below) and performance of the covenants contained in this Sublease, does hereby sublease to Subtenant the premises consisting of an "as agreed" seven hundred forty (740) rentable square feet and known as Suite 311 on the third (3rd) floor of the Building, as outlined in yellow on Exhibit B, which is attached to and made a part of this Sublease (the "Subleased Premises"), together with, on a non-exclusive basis, whatever rights Sublandlord has to use common areas of the Building and the property on which the Building is located (the "Property").  Subtenant has inspected the Subleased Premises and agrees to accept said Subleased Premises in its "as-is"

condition, except as otherwise expressly provided in this Sublease.  Subtenant shall use the Subleased Premises only for general office purposes.

Subtenant shall use the Subleased Premises only (a) in accordance with the use provisions of the Prime Lease, and (b) in furtherance of, and in keeping with, the mission and values of Sublandlord, including the right to hold events and activities associated with the mission of Subtenant. The aforesaid rentable square footage shall not be subject to remeasurement, expansion or contraction during the Sublease Term except in connection with a casualty or as otherwise approved by Subtenant in its sole discretion.  Subject to applicable laws, events of casualty or condemnation and Sublandlord's repair and maintenance obligations under this Sublease, Sublandlord shall not alter the location (or configuration) of the Subleased Premises or any of Subtenant's equipment or other personal property located in the Subleased Premises during the Sublease Term, without Subtenant's prior consent in its sole discretion.

## 2.     **SUBLEASE SECURITY DEPOSIT**

 A Security Deposit of Four Thousand Two Hundred Thirty-three Dollars ($4,233.00) shall be paid to Sublandlord by Subtenant upon execution of this Sublease.  The Sublease Security Deposit shall be held by Sublandlord without liability for interest and not in trust or in a separate account, as security for the performance by Subtenant of Subtenant's covenants and obligations under this Sublease.  The Sublease Security Deposit shall not be considered an advance payment of rental or a measure of Sublandlord's damages in case of default by Subtenant.  Upon the occurrence of any Sublease Event of Default by Subtenant, Sublandlord may, from time to time in its sole discretion, without prejudice to any other remedy, use and apply the Sublease Security Deposit to the extent necessary to make good any arrearages of Sublease Rent and any other damage, injury, expense or liability suffered by Sublandlord as a result of any other Sublease Event of Default.   Following any such application of the Sublease Security Deposit, Subtenant shall pay to Sublandlord the amount of the Sublease Security Deposit so applied not later than seven (7) days following Subtenant's receipt of a reasonably detailed written demand therefor so as to restore the Sublease Security Deposit to its original amount.    Sublandlord shall return to Subtenant the Sublease Security Deposit or any balance thereof following the application of any portion thereof to cure any default that is still continuing on the expiration or earlier termination of this Sublease, not later than the later of (a) thirty (30) days after the Sublease Expiration Date or earlier termination of the Sublease Term of this Sublease, or (b) the date on which Subtenant has surrendered the entire Subleased Premises to Sublandlord.    Sublandlord and Subtenant shall inspect the Subleased Premises not later than ten (10) business days after such vacation to confirm the Subleased Premises have been surrendered in accordance with this Sublease and determine the extent of any defaults.

## 3.     **PRIME LEASE**

        a.      Where not expressly inconsistent with the terms hereof and except as otherwise stated in this Sublease to the contrary, this Sublease shall be subject and subordinate to all of the terms and conditions contained in the Prime Lease as said terms and conditions affect the Subleased Premises, and all of the terms and conditions of the Prime Lease, except as otherwise

set forth in this Sublease, are hereby incorporated into this Sublease and shall be binding upon Subtenant with respect to the Subleased Premises to the same extent as if Subtenant were named as tenant and Sublandlord as landlord under the Prime Lease.  If a term or provision of this Sublease is inconsistent or in conflict with a term or provision of the Prime Lease, the term or provision of this Sublease shall control as between Sublandlord and Subtenant.  For purposes of this Sublease, references in the Prime Lease to the term of lease shall mean the Sublease Term of this Sublease and references to the premises, demised premises, or similar references in the Prime Lease shall mean the Subleased Premises.  Each party agrees that it shall not do or omit to

do anything which would result in a default under the Prime Lease, and each party agrees to indemnify and hold the other harmless from and against all expenses (including reasonable attorney's fees) claims, demands or liabilities resulting from such party's breach, violation or nonperformance of any of its obligations under the Prime Lease, as incorporated in this Sublease. The indemnification obligations in the immediately preceding sentence shall not include or extend to any willful or negligent act by the indemnified party or any of the indemnified party's employees, agents or contractors.

     b.     With the exceptions set forth herein, Subtenant shall be entitled to all of the rights and privileges of the Sublandlord as tenant under the terms of the Prime Lease with respect to the Subleased Premises.  Notwithstanding the foregoing, the following provisions of the Prime Lease shall not be applicable to this Sublease:  The Schedule, Section 1, Section 2.A. (except 2.A. (iv) and 2.a. (v)), Section 2.B. (except 2.B.(ii)), Section 4, the last sentence of Section 5.F. shall only apply to the extent Sublandlord is entitled to an abatement of rent with respect to the Subleased Premises, Section 18, Section 22, Section 23, Exhibit B and Exhibit D.

     c.     Sublandlord hereby waives any statutory or contractual rights of distraint, liens or security interests in or upon any of Subtenant's personal property. The foregoing waiver shall not apply to any judgment lien obtained by Sublandlord.

     d.     Sublandlord hereby warrants and represents to Subtenant as follows:  (i) the Lease is in full force and effect and neither the Prime Landlord nor Sublandlord has received any notice of default thereunder from the other which remains uncured as of the date hereof; and (ii) the copy of the redacted Prime Lease attached to this Sublease is a true and complete copy of the Prime Lease except for the redactions of certain confidential information.

     e.     Subtenant's indemnification of Prime Landlord and Sublandlord (regardless where such obligation appears in the Lease or this Sublease) shall be limited to acts that arise out of or are in any way related to the willful misconduct or negligence of Subtenant or Subtenant's employees, agents or contractors.

     f.     Notwithstanding anything to the contrary in the Prime Lease or this Sublease, (i) Subtenant shall have 30 days after receipt of a reasonably detailed invoice to pay any nonrecurring charge due under the Lease except in the event that Sublandlord must pay all or a portion of the non-recurring charge to Landlord, in which case Subtenant shall only have three business days less than the number of days that Sublandlord has to pay Landlord; (ii) Subtenant shall have five business days following receipt of written notice therefor to cure monetary defaults; Sublandlord shall use commercially reasonable efforts to mitigate any termination damages that Subtenant might owe Sublandlord by trying to backfill the vacated Subleased Premises with one or more new tenants; and (iii) if in the course of reletting the space, Sublandlord incurs broker, attorneys, or fit-out costs, then (x) if the Subleased Premises is re-let for a period that is longer than the then remaining balance of the Sublease Term, then with respect to costs incurred in re-letting the Subleased Premises, the costs for which Subtenant shall be responsible shall be only a fraction thereof, the numerator of which is the number of months then remaining in the balance of the Sublease Term, and the denominator of which is the total number of months in the initial term of

4

the replacement subtenant's lease; and (y) if the Subleased Premises are re-let as part of a larger premises than the size of the original Subleased Premises, then with respect to costs incurred in re-letting the Subleased Premises, Subtenant shall be liable for an equitable portion thereof.

      f. Whenever this Sublease requires a party to reimburse the other party for costs or fees (including those for attorneys), the obligated party shall only be required to reimburse the other party for such party's commercially reasonable costs or fees.

      4.      **DEFINITIONS**

  All capitalized terms not expressly defined in this Sublease shall have the meanings given to them in the Prime Lease.

      5.      **PRIME LANDLORD**

  Subtenant acknowledges that all utilities and services to the Subleased Premises, including without limitation water, heating, and air-conditioning, shall be provided by the Prime Landlord. Sublandlord shall have no liability whatsoever to Subtenant if the Prime Landlord fails to perform or fails to properly perform any services, maintenance, repairs, or other matters, obligations or actions to be performed by the Prime Landlord under the terms of the Prime Lease; provided, however, at Subtenant's expense and request, Sublandlord will take all reasonable actions necessary to attempt to enforce the Sublandlord's rights as tenant under the Prime Lease for the benefit of Subtenant with respect to the Subleased Premises.

      6.      **SUBLEASE TERM**

a.      The term of this Sublease (the "Sublease Term") shall commence on the later of (i) August 1, 2018; (ii) the date of Subtenant's beneficial occupancy of the Subleased Premises, or (iii) the date Sublandlord tenders possession of the Subleased Premises to Subtenant, broom clean and free of occupancies, and (iv) the date Prime Landlord consents to this Sublease (the "Sublease Commencement Date"), and shall continue until 11:59 PM local time on the last day of the fifth (5th) Lease Year (the "Sublease Expiration Date").. Upon the request of either party, Sublandlord and Subtenant shall execute a side letter confirming the Sublease Commencement Date.

b.      Provided such access by Subtenant or Subtenant's employees, contractors, and agents complies with all rules and regulations as outlined in the Prime Lease and required by Landlord and does not interfere with Sublandlord's use and occupancy of the Prime Lease Premises, then Subtenant, at its sole cost, risk and expense, shall, provided the Subleased Premises is then substantially complete and such entry shall not unreasonably interfere with Sublandlord's work therein, have the right to enter the Subleased Premises two (2) weeks prior to the Sublease Commencement Date for the purpose of installing its equipment, furniture, telephone and computer cabling equipment. Such use shall be without liability for Sublease Rent during such period, but subject to all other terms, covenants, conditions and provisions of this Sublease (including with respect to insurance) and may be terminated by Sublandlord if such entry shall impair or impede Sublandlord's use and occupancy of the Prime Lease Premises.

7.    **RENT**

a.    Subtenant promises and agrees to pay Sublandlord the Sublease Basic Rental (subject to adjustment as hereinafter provided) without demand, notice, deduction, counterclaim, recoupment or set off, for each month of the entire Sublease Term (except as otherwise expressly set forth in this Sublease).  The first monthly installment shall be due and payable upon execution of this Sublease and shall be applied to the first (1st) full month of the Sublease Term.  The Sublease Basic Rental for each subsequent month of the Sublease Term shall be paid in advance on the first day of each calendar month; provided, however, that Sublease Basic Rental for the second calendar month shall be prorated based on the number of days in the first (1st) month of the Sublease Term.

b.    The Sublease Basic Rental shall be increased annually, effective on the first (1st) day of each Sublease Lease Year by an amount equal to three and one-half percent (3.5%) of the Sublease Basic Rental for the previous Sublease Lease Year, payable as follows:

| Sublease Lease Year | Monthly Sublease Basic Rental | Annualized Sublease Basic Rental |
|---|---|---|
| Sublease Year 1 | $4,233.00 | $50,796.00 |
| Sublease Year 2 | $4,381.00 | $52,574.00 |
| Sublease Year 3 | $4,534.00 | $54,414.00 |
| Sublease Year 4 | $4,693.00 | $56,318.00 |
| Sublease Year 5 | $4,857.00 | $58,290.00 |

Each twelve (12) month period within the Sublease Term shall be referred to in this Sublease as a " Sublease Lease Year"; provided, however, that (i) the first Sublease Lease Year shall commence on the Sublease Commencement Date and terminate on the last day of the twelfth (12th) full calendar month after the Sublease Commencement Date.  Each subsequent Sublease Lease Year shall commence on the date immediately following the last day of the preceding Sublease Lease Year and shall continue for a period of twelve (12) full calendar months.

Notwithstanding anything to the contrary contained in this Section 7, if the Sublease Commencement Date is not the first day of a calendar month, then Subtenant shall pay Sublandlord on the Sublease Commencement Date the Sublease Rent for the period commencing on the Sublease Commencement Date and ending on the last day of the calendar month in which the Sublease Commencement Date occurs.  Following the application of the advance payment of one month's Sublease Base Rental, Subtenant shall pay the full amount of annual Sublease Base Rent due in accordance with the provisions of this Section 7; provided, however, that if, as a result of an interruption in services or due to a casualty or condemnation Sublandlord shall actually receive an abatement of Base Rent with respect to the Subleased Premises pursuant to the Prime Lease, Subtenant shall receive a corresponding proportionate share of Sublease Base Rental under this Sublease (calculated based on the amount of Sublease Base Rental and the size of the Sublease Premises affected thereby).

c.      If Subtenant requests (which requests shall be made through Sublandlord) any services which are provided by Prime Landlord and which are in addition to the services regularly provided by the Prime Landlord and for which Prime Landlord imposes a separate charge ("Special Services"), Subtenant shall pay to Sublandlord the entire amount of the charge for such services.  If Sublandlord requests any Special Services for itself, it shall be solely responsible for the charge for such Special Services.

d.      The terms "Sublease Basic Rental" and " Sublease Additional Rent" are collectively referred to in this Sublease as " Sublease Rent" and shall include any and all sums due from Subtenant to Sublandlord under the terms of this Sublease.  All Sublease Rent shall be payable at the office of the Sublandlord at the Premises, except as otherwise provided in this Sublease, or at such other address as directed by notice from Sublandlord to Subtenant.

## 8.      **SURRENDER/HOLDOVER**

  Upon the early termination or expiration of this Sublease, Subtenant shall surrender the Subleased Premises to Sublandlord in as good condition and order as on the Sublease Commencement Date, reasonable wear and tear, damage due to casualty, and maintenance that is the obligation of Sublandlord or Prime Landlord excepted.  In the event that Subtenant shall fail to timely surrender the Subleased Premises in accordance with the terms of this Section 8, then, Subtenant shall pay to Sublandlord on account of its continued use and occupancy of the Subleased Premises, for each month or portion thereof that Subtenant remains in occupancy of the Subleased Premises, an amount equal to the greater of (i) the amount, if any, that Sublandlord shall be liable to pay to Prime Landlord under the Prime Lease by reason of such holding over (including for any other space leased to Sublandlord under the Prime Lease if the Subleased Premises shall constitute only a portion of the leased premises), and (ii) 150% of the Sublease Basic Rental  that was payable by Subtenant for the last month of the Sublease Term; provided, however, that nothing contained in this Sublease shall be deemed to extend the Sublease Term or to constitute Sublandlord's consent to Subtenant's holding over in the Subleased Premises. Subtenant's obligations under this provision shall survive the expiration or earlier termination of this Sublease for a period not to exceed the applicable statute of limitations.

## 9.      **RIGHTS RESERVED TO SUBLANDLORD**

  Any expansion, renewal, first refusal, or other similar rights or options in the Prime Lease are reserved to the Sublandlord (without any obligation to exercise any such rights or options) and may not be exercised by Subtenant.

## 10.      **ALTERATIONS**

a.      Subject to the prior approval of Prime Landlord and subject to all restrictions in the Prime Lease, Subtenant, at its cost, shall have whatever rights Sublandlord may have to install signs or signage at Subtenant's entry doors and on the building directory.

b.      Subtenant shall not make any alterations, improvements or installations including the placement of signs (collectively, "Subtenant Alterations") in or to the Subleased Premises without the prior written consent of Sublandlord, which may be withheld in Sublandlord's sole discretion. Provided, however, to the extent permitted by the Prime Lease, Sublandlord shall not unreasonably withhold, condition or delay consent to any Subtenant Alterations which: (i) are not structural, (ii) do not affect the roof, (iii) are not visible from the exterior of the Subleased Premises or the Building, and (iv) do not adversely, materially affect the building electrical, plumbing, gas, elevators, security, utility, sprinkler, or HVAC systems.  Notwithstanding anything to the contrary contained in this Sublease, all Subtenant Alterations and improvements shall be subject to the terms and conditions of the Prime Lease, and in those instances, if required, shall be subject to the Prime Landlord's approval as provided in the Prime Lease.

11.      **REPAIRS AND MAINTENANCE**

Any repair and maintenance obligations with respect to the Subleased Premises which are the responsibility of the Sublandlord, as tenant under the Prime Lease, shall be performed by Subtenant at Subtenant's sole cost and expense.  Subtenant agrees that it will notify Sublandlord promptly of the need for any repair to the Subleased Premises even if Sublandlord is not responsible for such repair.  Notwithstanding anything contained in this Sublease to the contrary, in the event that a condition exists in the Subleased Premises that Prime Landlord is obligated to repair under the terms of the Prime Lease, Subtenant shall so advise Sublandlord, and Sublandlord, in turn, shall promptly advise Prime Landlord thereof.  Sublandlord's liability for Prime Landlord's failure to make or improperly making any such repair is governed by Section 5 of this Sublease.

12.      **UTILITIES AND SERVICES**

Subtenant shall be entitled to all those services and utilities which Prime Landlord is required to provide under the terms of the Prime Lease.  Sublandlord's liability for Prime Landlord's failure to provide or improperly providing any such service or utility is governed by Section 5 of this Sublease.  In addition to those services and utilities provided by Prime Landlord, Sublandlord shall provide the following:  IT Help Desk Support; Property Management; Rental Insurance; Network connectivity (phone, internet); Access to copiers/printers/fax (billed by the page); Access to full service kitchen; and Access to conference rooms and event space (using the room booking system). To the extent that Prime Landlord charges Sublandlord for any services or utilities or installing meters therefore, or increases the cost of such services or utilities and such charge or increase is due to Subtenant's use of the Subleased Premises or such utilities or services, Subtenant agrees to pay the charges therefore promptly upon receipt of Sublandlord's bill.

13.      **ASSIGNMENT AND SUBLEASING**

Subtenant shall not have the right to assign this Sublease or sublet the Subleased Premises, in whole or in part, without the prior written consent of Sublandlord, which consent Sublandlord shall grant or deny in accordance with the provisions of the Prime Lease; provided, however, that the mission of any assignee or subtenant shall be consistent with the mission of Sublandlord.  Any assignment or subletting consented to by Sublandlord shall also be subject to the consent of the

Prime Landlord.  If consent is once given by Sublandlord to the assignment of this Sublease or the sublease of the Subleased Premises or any interest therein, Sublandlord shall not be barred from subsequently refusing to consent to any further assignment or sublease.  Any attempt to sell, assign, or sublet without the consent of Sublandlord, shall be deemed as a default by Subtenant, entitling Sublandlord to reenter pursuant to this sublease, if Sublandlord so elects.

14.    **INSURANCE**

  Subtenant agrees to comply with all of the applicable insurance requirements and obligations of Sublandlord as set forth in the Prime Lease and to name both Sublandlord and Prime Landlord as additional insureds on any required insurance policies.  Subtenant hereby waives on behalf of itself and on behalf of its insurers any and all rights of recovery against Sublandlord, Prime Landlord and the directors, officers, employees, agents and representatives of Sublandlord or Prime Landlord, by way of subrogation or otherwise, on account of loss or damage occasioned to Subtenant or its property or the properties of others under its control caused by fire or any of the extended coverage risks to the extent that such loss or damage is insured under any insurance policy in force at the time of such loss or damage or required to be carried hereunder.  Sublandlord hereby waives and confirms Sublandlord's waiver on behalf of each and on behalf of its insurers any and all rights of recovery against Subtenant and its officers, employees, agents and representatives on account of damage to Sublandlord or its property or the properties of others under its control caused by fire or any of the extended coverage risks described herein to the extent that such loss or damage is insured under any insurance policy in force at the time of such loss or damage or required to be carried hereunder.  Sublandlord and Subtenant each agree to give written notice of the terms of their waivers to each of their respective insurance companies that have issued, or in the future may issue to it, insurance policies for damage to property.

15.    **COMPLIANCE WITH LAWS**

  In addition to any obligations under the Prime Lease, Subtenant, at its sole expense, shall promptly comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal and District of Columbia governments and of any and all their Departments and Bureaus applicable to the use and occupancy of the Subleased Premises by Subtenant, for the correction, prevention and abatement of nuisances, violations or other grievances, in, upon or connected with the Subleased Premises, including without limitation all laws relating to environmental matters and the Americans with Disabilities Act, and shall also promptly comply with, and execute all rules, orders and regulations of the Board of Fire Underwriters for the prevention of fires (collectively referred to as "Legal Requirements") at its own cost and expense.  Notwithstanding anything to the contrary in the Prime Lease or this Sublease (including with respect to the repair and maintenance obligations set forth in Section 11 above), Subtenant shall not be required to make any (a) Alterations or Subtenant Alterations of any kind to bring the Subleased Premises into compliance with any Legal Requirements that were not in compliance as of the Commencement Date; or (b) structural alterations, changes, repairs or additions, all of which required structural alterations, changes, repairs or additions shall be the obligation of Sublandlord or Landlord (as provided in the Prime Lease) in order to so comply unless such alterations shall be necessitated or occasioned, in whole or in part by the acts, omissions or negligence of Subtenant or any person

claiming through or under Subtenant or any of their servants, employees, contractors, agents, visitors (when in the Subleased Premises) or licensees, or by the particular use or occupancy or manner of use or occupancy of the Subleased Premises (as opposed to the use permitted under the Prime Lease or this Sublease) by Subtenant, or any such person.  Nothing in this paragraph shall be deemed a consent to the alteration, subletting or assignment of all or any portion of the Subleased Premises or of all or any of Subtenant's interests in this Sublease.  If Subtenant's obligation to comply with Legal Requirements requires any Subtenant Alterations, then such Subtenant Alterations shall be made in accordance with the provisions of Section 10.

If Subtenant shall fail or neglect to comply with the aforesaid Legal Requirements as required under this Sublease, or if Subtenant shall fail or neglect to make any repairs or perform any maintenance required of it by the terms of this Sublease, and if such breach continues for a period of thirty (30) days after notice from Prime Landlord or Sublandlord regarding same, or, if the breach cannot be cured within thirty (30) days, if Subtenant has not begun to cure the breach within such period and does not thereafter diligently prosecute the cure to completion within ninety (90) days, then Sublandlord or its agents may (but shall not be obligated to) enter the Subleased Premises and take such actions as necessary to cure the breach and comply with any and all of the said Legal Requirements, at the cost and expense of Subtenant; and, in case of Subtenant's failure to pay therefor, the said cost and expense shall be added to the next month's Rent and be due and payable as such.

Notwithstanding the foregoing, if Subtenant fails to comply with any Legal Requirements as required under this Sublease, and the Prime Lease or the law or regulation requires compliance in a shorter period of time than is permitted by the foregoing, Subtenant shall comply within such shorter time period.

16.   <u>**LIMITATIONS ON SUBLANDLORD'S LIABILITY**</u>

a.      Subtenant acknowledges that Sublandlord has made no representations or warranties with respect to the Building or the Subleased Premises or any fixtures, equipment or other personal property of Sublandlord included with the Subleased Premises except as provided in this Sublease and Subtenant accepts the Subleased Premises and any such personal property in AS IS condition.

b.      If Sublandlord assigns its leasehold estate in the Building, Sublandlord shall have no obligation to Subtenant that arises after that assignment, provided that Sublandlord shall remain liable to Subtenant for the Sublease Security Deposit (to the extent not transferred to Sublandlord's successor) or with respect to any claims or other matters under this Sublease arising prior to such assignment and provided that Sublandlord's assignee expressly assumes for the benefit of Subtenant, the obligations of Sublandlord under this Sublease.  Subtenant shall then recognize Sublandlord's assignee as Sublandlord of this Sublease.

c.      Sublandlord shall not be required to perform any of the covenants and obligations of the Prime Landlord under the Prime Lease, and insofar as any of the obligations of the Sublandlord under this Sublease are required to be performed under the Prime Lease by the Prime Landlord under the Prime Lease, Sublandlord's liability shall be governed by Section 5 of this Sublease.

d. NOTWITHSTANDING ANY OTHER PROVISION OF THIS SUBLEASE TO THE CONTRARY, UNDER NO CIRCUMSTANCES SHALL SUBLANDLORD OR SUBTENANT BE LIABLE TO THE OTHER PARTY FOR ANY SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES. OR FOR CLAIMS FOR WHICH THE INDEMNIFIED PARTY IS INSURED OR REQUIRED UNDER THIS SUBLEASE TO BE INSURED OTHER THAN WITH RESPECT TO HOLDOVER DAMAGES CAUSED BY SUBTENANT TO THE EXTENT THE SAME ARE CONSIDERED INDIRECT OR CONSEQUENTIAL DAMAGES

17. **ESTOPPEL CERTIFICATES**

Either party hereto (the requested party) agrees that from time to time upon not less than ten (10) days' prior notice by the other party (requesting party), the requested party or its duly authorized representative having knowledge of the following facts will deliver to the requesting party, or to such person or persons as the requesting party may designate, a statement in writing certifying (a) that this Sublease is unmodified and in full force and effect (or if there have been modifications, that the Sublease as modified is in full force and effect); (b) the date upon which Subtenant began paying rent and the date(s) to which Rent has been paid; (c) that to the best of the requested party's knowledge, the requesting party is not in default under any provision of this Sublease or if in default, the nature thereof in detail.  The requirements of this section are in addition to and not in place of any similar obligations in the Prime Lease.

18. **SUBORDINATION**

Subject to the exceptions noted in Section 3, this Sublease shall be subject and subordinate to the Prime Lease, any ground lease and to any mortgage or deed of trust thereon or on the fee simple interest in the Building or the land on which the Building is located.

19. **CASUALTY AND CONDEMNATION**

In the event of casualty or condemnation, if the Prime Lease is terminated with respect to the Subleased Premises pursuant to the provisions of the Prime Lease, this Sublease shall automatically terminate at the same time and Subtenant shall have no claim against Sublandlord or Prime Landlord for the loss of its subleasehold interest or any of Subtenant's property.  If the Prime Lease is not terminated with respect to the Subleased Premises upon the occurrence of a casualty or condemnation, the provisions of the Prime Lease with respect to casualty or condemnation shall apply to this Sublease and the Subleased Premises.  Condemnation shall include a deed or conveyance in lieu of condemnation.  Any election right or option in the Prime Lease with respect to restoration of the Subleased Premises or the Building or termination of the Prime Lease is expressly reserved to Sublandlord to exercise in its sole discretion.  In the event of a condemnation, Subtenant may file a claim for any taking of nonmovable fixtures owned by Subtenant and for moving expenses incurred by Subtenant.

20. **CONSENT OR APPROVAL OF PRIME LANDLORD**

If the consent or approval of Prime Landlord is required under the Prime Lease with respect to any matter relating to the Subleased Premises, Subtenant shall be required first to obtain the consent or approval of Sublandlord with respect thereto and, if Sublandlord grants such consent or approval, Sublandlord will promptly forward a request for consent or approval to the Prime Landlord and, at Subtenant's cost and expense, will cooperate reasonably to obtain such consent. Sublandlord shall have no liability to Subtenant for the failure of Prime Landlord to give its consent. Whenever the consent of Sublandlord is required under this Sublease, unless otherwise set forth in this Sublease, Sublandlord shall grant or withhold its consent using the same approval standards and criteria as required of Prime Landlord under the Prime Lease. In no event shall it be unreasonable for Sublandlord to withhold or delay its consent when the consent of the Prime Landlord is required but has not been obtained.

21. **NOTICES**

All notices given pursuant to the provisions of this Sublease shall be in writing, addressed to the party to whom notice is given and hand delivered or sent registered or certified mail, return receipt requested, in a postpaid envelope or by nationally recognized overnight delivery service to the following addresses:

|  |  |
|---|---|
| If to Sublandlord: | 2301 Constitution Avenue N.W. Suite 200 and 300 Washington D.C.  20037 |
| If to Subtenant: | At the Subleased Premises, Attention:  groundTruth global, Inc. |
| With a copy to: | Covington & Burling LLP One CityCenter, 850 Tenth Street, NW Washington, DC 20001-4956 Attention: David Martin Email:  dmartin@cov.com |

It is understood and agreed that unless specifically modified by this Sublease, Sublandlord shall be entitled to the length of notice required to be given to the Prime Landlord under the Prime Lease plus five (5) days and shall be entitled to give Subtenant the amount of notice required to be given tenant under the Prime Lease less five (5) days. If a notice period in the Prime Lease is less than ten (10) days, then one-half of the applicable notice period shall be substituted for five (5) days in the preceding sentence. All notices shall be deemed given upon receipt or rejection.

Either party by notice to the other may change or add persons and places where notices are to be sent or delivered. In no event shall either party to this Sublease designate more than three (3)

persons to whom it shall request notices be sent in addition to any notice requirements of Prime Landlord.

22. **BROKERS**

The parties warrant that they have had no dealings with any real estate brokers.

23. **SUBLANDLORD'S AND SUBTENANT'S POWER TO EXECUTE**

a.     Sublandlord, subject to Prime Landlord's consent, and Subtenant covenant, warrant, and represent that they have full power and proper authority to execute this Sublease.

b.     The signatories on behalf of Sublandlord and Subtenant further represent and warrant that each has full right, power, and authority to act for and on behalf of Sublandlord and Subtenant in entering into this Sublease.

24. **CAPTIONS**

The captions appearing in this Sublease and its Exhibits are inserted only as a matter of convenience and do not define, limit, construe or describe the scope or intent of the sections of this Sublease or its Exhibits nor in any way affect this Sublease or its Exhibits.

25. **INTENTIONALLY OMITTED**

26. **RESTORATION**

a.     To the extent required of the Sublandlord in the Prime Lease, Subtenant shall perform any restoration obligations in the Subleased Premises at the sole cost and expense of Subtenant to the extent related to any Subtenant Alterations installed in the Subleased Premises. Notwithstanding anything in this Sublease or the Prime Lease to the contrary, (i) Subtenant shall not be obligated to remove any of the Alterations performed by Sublandlord or Prime Landlord prior to the Effective Date or to restore the Sublease Premises to its condition prior to the making of such Alterations; and (ii) Subtenant shall not be required to remove any Subtenant Alterations unless Sublandlord (and if applicable, Landlord) reasonably specifies in its approval of the plans and specifications for such Subtenant that Subtenant must remove the Subtenant Alterations upon the expiration or earlier termination of the Sublease Term

b.     Subtenant, at its sole cost and expense, shall remove any personal property, furniture, and trade fixtures which it owns or leases from third parties.  Subtenant shall pay Sublandlord for the cost to restore any damage caused by such removal.  Subtenant shall verify the ownership of such items before removing them from the Subleased Premises.  Any personal property, furniture, and trade fixtures used by Subtenant but which are owned by Sublandlord or leased by Sublandlord

from third parties shall not be removed by Subtenant.  Subtenant shall leave the Subleased Premises in broom clean condition.

27. **COUNTERPARTS**

This Sublease may be executed in one or more counterparts, each of which shall be deemed an original but all of which, when taken together, shall constitute one and the same instrument.  This Sublease may be executed by facsimile, electronic communication in portable document format (.pdf) or duplicate originals, and the parties agree that their electronically transmitted signatures shall have the same effect as manually transmitted signatures.

28. **GOVERNING LAW; VENUE; ATTORNEYS' FEES**

Any and all matters in dispute between the parties to this Sublease, whether arising from or relating to this Sublease itself, or arising from alleged extra-contractual facts prior to, during, or subsequent to this Sublease, including, without limitation, fraud, misrepresentation, negligence or any alleged tort or violation of this Sublease, shall be governed by, construed, and enforced in accordance with the laws of the District of Columbia, regardless of the legal theory upon which such matter is asserted and without regard to the principles of conflict of laws.  The parties submit to the jurisdiction and venue of the state and federal courts with jurisdiction over the District of Columbia.  If either party files suit in any court of competent jurisdiction to enforce its rights under this Sublease, then the prevailing party shall be entitled to recover from the other party all costs of such action or suit, including, but not limited to, investigative costs, court costs and reasonable attorneys' fees (including expenses incurred to collect those expenses), incurred in good faith.

29. **ENVIRONMENTAL COMPLIANCE**

In addition to any requirements in the Prime Lease with respect to environmental matters, Subtenant agrees to comply with all applicable environmental laws, rules and regulations insofar as they pertain to the specific manner in which Subtenant uses the Property.  Subtenant shall not generate, store, transport, treat, dispose of or use on the Property any hazardous or toxic substances or wastes as defined under any applicable laws, rules, or regulations ("Hazardous Substances"), except (a) if the Subleased Premises are in an office building, Subtenant's use on the Property of cleaning supplies, copying fluids, other office and maintenance supplies and other substances normally and customarily used by tenants of space similar to the Subleased Premises shall not be deemed a violation of this Sublease section if such use is in compliance with all Legal Requirements and the terms of the Prime Lease, or (b) if the Subleased Premises are other than an office building and Subtenant currently generates, stores, transports, treats, disposes of, or uses hazardous or toxic substances at the Subleased Premises, and if such generation, storage, transport, treatment, disposal, or use is permitted by the Prime Lease, Subtenant may continue such activities so long as Subtenant at all times is in compliance with all Legal Requirements and all requirements of the Prime Lease applicable thereto.  Notwithstanding anything in the Prime Lease or this Sublease to the contrary, Subtenant shall have no obligation to remove hazardous substances brought onto the Subleased Premises by Sublandlord or that existed in the Subleased Premises as of the Sublease Commencement Date and were not brought onto the Subleased Premises by

Subtenant or any of Subtenant's employees, agents or contractors, nor shall Subtenant be required to cure the violation of any environmental law that is caused by Sublandlord or any of Sublandlord's employees, agents or contractors or that existed as of the Sublease Commencement Date and were not caused by Subtenant or any of Subtenant's employees, agents or contractors.

30.   **NO RECORDING**

Sublandlord and Subtenant agree not to record this Sublease or any memorandum of this Sublease.

31.   **TERMINATION OPTIONS**

a.      Provided (i) Subtenant has not been in default during the Sublease Term,
and (ii) Subtenant delivers written notice to Sublandlord of its intention to terminate this Sublease not less than nine (9) months prior to the proposed termination date, Subtenant shall have the right to terminate this Sublease at any time after the end of the twenty-fourth (24th) month of the Sublease Term.

b.      If Sublandlord intends to recapture the Subleased Premises for its own use, Sublandlord shall have the right to terminate this Sublease, effective at any time after the expiration of the twenty-fourth (24th) month of the Sublease Term, without penalty or cost to Sublandlord, provided Sublandlord delivers written notice of such termination to Subtenant not less than one hundred twenty (120) days prior to the proposed termination date.

32.   **ADDITIONAL PROVISIONS**

a.      Each and every covenant and agreement contained in this Sublease is, and shall be construed to be, a separate and independent covenant and agreement.

b.      Neither Sublandlord nor Sublandlord's agents or brokers have made any representations or promises with respect to the Subleased Premises or the Building, except as expressly set forth in this Sublease and no rights, easements or licenses are acquired by Subtenant by implication or otherwise except as expressly set forth in the provisions of this Sublease.

c.      Time is of the essence as to all provisions of this Sublease applicable to each party's obligations under this Sublease.

d.      The submission of this Sublease to Subtenant shall not be construed as an offer, nor shall Subtenant have any rights with respect thereto unless and until Sublandlord shall, or shall cause its managing agent to, execute a copy of this Sublease and deliver the same to Subtenant.

e.     Notwithstanding anything to the contrary contained in this Sublease, if the  Sublease Term has not commenced within six (6) months after the date of this Sublease, this Sublease shall automatically terminate on the sixth (6th) month anniversary of such date.  The sole purpose of this provision is to avoid any interpretation of this Sublease as a violation of the Rule Against Perpetuities, or any other rule of law or equity concerning restraints on alienation.

f.     Notwithstanding anything to the contrary contained in the Prime Lease,
Tenant shall be entitled to up to four (4) parking contracts for parking in the parking garage at the Building, such spaces to be used in accordance with and subject to the provisions of Section 24 of the Prime Lease.  If Subtenant requests additional parking contracts, such parking contracts will be provided on an "as available" basis, with Subtenant paying all costs therefor at then commercial rates.

g.     The parties do hereby expressly waive all rights to trial by jury on any cause of action directly or indirectly involving the terms, covenants, or conditions of this Sublease or any matters whatsoever arising out of or in any way connected with this Sublease.

h.     This Sublease constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes all prior or contemporaneous representations, negotiations, conditions, communications and agreements, whether oral or written, between the parties relating to the subject matter hereof and all past courses of dealing or industry custom.  No amendment, modification or waiver of any provision of this Sublease shall be effective unless in writing and signed by duly authorized signatories of both parties.

i.     In the event that any of the provisions of this Sublease shall be held by a court or other tribunal of competent jurisdiction to be invalid or unenforceable, the remaining portions of this Sublease shall remain in full force and effect and such provision shall be enforced to the maximum extent possible so as to effect the intent of the parties and shall be reformed to the extent necessary to make such provision valid and enforceable.  If necessary, the valid and enforceable provision(s) shall be negotiated by the parties and substituted therefore to accomplish the intent of the severed provision(s) as nearly as practicable.

IN WITNESS WHEREOF, the parties hereto have caused this Sublease to be properly executed as of the day and year first above written.

SUBLANDLORD:

PEACETECH LAB, INC., a Washington, D.C. not-for- profit corporation

By:

Name: SHELDON AINELFARB

Title: CEO

SUBTENANT:

GROUNDTRUTH GLOBAL, INC., a Delaware corporation

By:

Name: Rohini K. Srihari

Title: CEO

## EXHIBIT B

## Outline of Subleased Premises

