# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PEACETECH LAB, INC.,<br>2301 Constitution Ave, NW<br>Washington, DC 20037 | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | C.A. No. 1:20-cv-922 (JDB) |
| C5 ACCELERATE LLC,<br>1209 Orange St.<br>Wilmington, DE 19891; | )<br>)<br>)<br>) | |
| GROUNDTRUTH INVESTOR LLC,<br>12505 Park Potomac Ave Fl 6<br>Potomac, MD 20854-6803<br>(Registered Agent address); | )<br>)<br>)<br>)<br>) | |
| PINARD S.A.R.L.,<br>C5 HOLDINGS S.A.R.L.,<br>58 rue Charles Martel<br>L-2134 Luxembourg; | )<br>)<br>)<br>)<br>) | |
| MR. ANDRÉ PIENAAR,<br>11, 24 Palace Court, London W2 4HU; | )<br>)<br>) | |
| C5 CAPITAL LTD.,<br>7 Vigo Street, London, UK, W1S 3HF | )<br>)<br>) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendants

C5 Accelerate LLC ("Accelerate"), Pinard s.a.r.l. ("Pinard"), C5 Holdings s.a.r.l. ("Holdings"),

GroundTruth Investor LLC ("GTI"), Mr. André Pienaar, and C5 Capital Ltd. ("Capital") submit

this memorandum in support of their motion to dismiss the complaint filed by Plaintiff

PeaceTech Lab Inc. ("the Complaint") and state as follows.

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD ......................................................................................... 2

III.    DEFENDANTS AND CLAIMS ........................................................................ 3

   a.   C5 Holdings ................................................................................................ 4

   b.   GTI ............................................................................................................. 5

   c.   C5 Capital .................................................................................................. 5

   d.   Mr. André Pienaar ..................................................................................... 6

   e.   Pinard ........................................................................................................ 9

   f.   C5 Accelerate ......................................................................................... 12

IV.    CONCLUSION ............................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3E Mobile, LLC v. Glob. Cellular, Inc.*,
  798 F. App'x 651 (D.C. Cir. 2020).................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................2

*Blumenthal v. Drudge*,
  992 F.Supp. 44 (D.D.C.1998)..........................................................................................3

*Brock v. Robbins*,
  830 F.2d 640, 647 (7th Cir.1987) ...................................................................................12

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) ......................................................................................2, 3

*Brunson v. Kalil & Co., Inc.*,
  404 F.Supp.2d 221 (D.D.C.2005) ....................................................................................3

*Cagle v. Southern Bell Tel. & Tel. Co.*,
  143 Ga. App. 603, 239 S.E.2d 182 (Ga.Ct.App.1977) ...............................................12

*Doe v. George Washington Univ.*,
  366 F. Supp. 3d 1 (D.D.C. 2018)....................................................................................10

*Elemary v. Phillipp Holzmann AG*,
  533 F.Supp.2d 116 (D.D.C.2008) ....................................................................................3

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C.Cir.2000) ..........................................................................................4

*Houlahan v. Brown*,
  979 F. Supp. 2d 86 (D.D.C. 2013) ...................................................................................9

*Kopff v. Battaglia*,
  425 F.Supp.2d 76 (D.D.C.2006) ......................................................................................4

*Mira*,
  107 F.3d at 473 .................................................................................................................12

*Montgomery v. D.C.*,
  No. CV 18-1928 (JDB), 2019 WL 3557369 (D.D.C. Aug. 5, 2019).............................3

*Mwani v. bin Laden*,
  417 F.3d 1, 7 (D.C. Cir. 2005) ......................................................................3

*Steinberg v. Int'l Criminal Police Org.*,
  672 F.2d 927 (D.C.Cir.1981) .......................................................................4

*Trudeau v. FTC*,
  456 F.3d 178 (D.C.Cir.2006) ........................................................................3

*Tsintolas Realty Co. v. Mendez*,
  984 A.2d 181 (D.C. 2009) ...........................................................................12

*United States v. Ferrara*,
  54 F.3d 825, 828 (D.C.Cir.1995) ..................................................................4

**Statutes**

DC CODE § 13-423 .........................................................................................9

DC CODE § 13-423(a)(1) ...........................................................................9, 11

DC CODE § 13-423(a)(2) ...........................................................................9, 11

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ......................................................3

I.      INTRODUCTION

This is not a well-pled Complaint.

The Complaint lists six Defendants in the action box. But the Complaint only asserts claims against three of the six Defendants. *See* Complaint, at pps. 10-12. The Plaintiff simply asserts no claims at all against three of the Defendants, namely C5 Capital, C5 Holdings, and GTI. With respect to two of the Defendants – C5 Holdings and GTI – the Plaintiff only lists these two Defendants in the action box and the "Parties" section, with the rest of the Complaint, including the factual allegations and claims, devoid of any mention of anything these companies allegedly did or wrongful acts for which they are liable.

In addition, although the Complaint contains three claims, one of these claims apparently does not exist. The Complaint lists a claim called "Reliance." Complaint, at pps. 11-12. Although reliance is an element of some other claims or remedies, a claim of reliance itself is not actionable. Thus, this claim, which is asserted against Mr. Pienaar, should be dismissed. Moreover, this "Reliance" claim is flawed even if the court considers other possible causes of action. As explained below, the "Reliance" claim appears to be based on 4 emails from Mr. Pienaar in which he is clearly writing in his role as a company representative, and not in his personal capacity. This claim also must be dismissed.

Personal jurisdiction is lacking with respect to most of the Defendants. As noted in the Complaint (¶¶ 4-9), none of the Defendants reside in Washington, DC. Three of the Defendants are from the Grand Duchy of Luxembourg, one is from the United Kingdom, and two are Delaware corporations. As allegations are not even made against two of the Defendants, the Plaintiff has not even tried to show how the Court has personal or subject matter jurisdiction over these Defendants. With respect to Mr. Pienaar, as the Complaint seeks to hold him liable for

1

emails he wrote as a corporate representative, the Plaintiff has put forward no facts to demonstrate that this Court has personal jurisdiction over Mr. Pienaar in his personal capacity. With respect to the Delaware defendants and the **Luxembourg company** Pinard, the Plaintiff has failed to show why this Court in D.C. has personal jurisdiction over the defendants. The Plaintiff has not set out facts that would demonstrate that this Court has general jurisdiction over these Defendants or how D.C. long-arm statute applies.

In the end, this is an ill-considered Complaint that apparently includes various Defendants for some supposed strategic or tactical advantage and omits required elements of the claims they purport to state. Accordingly, the Court should dismiss the Complaint as set out below.

With respect to the rest of the memorandum, the section below lays out the relevant legal standard for a motion to dismiss. The section below that examines the allegations and claims with respect to each defendant individually. The three claims against the three Defendants are examined in the respective section of each Defendant.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). "Legal conclusions cast in the form of factual allegations" are insufficient. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (citation and internal quotation marks omitted). A court must accept factual allegations as true and grant the plaintiff the benefit of all inferences that can be

drawn from the facts alleged. *Id*. (citation and internal quotation marks omitted); *see also*

*Montgomery v. D.C.*, No. CV 18-1928 (JDB), 2019 WL 3557369, at *4 (D.D.C. Aug. 5, 2019).

Under Federal Rule of Civil Procedure 12(b)(2), the Plaintiff has the burden to

demonstrate that the Court has personal jurisdiction over each of the Defendants. Prior to

jurisdictional discovery, the Plaintiff has to establish a *prima facie* showing of the pertinent

jurisdictional facts to meet that burden. *See Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005);

*Brunson v. Kalil & Co., Inc.*, 404 F.Supp.2d 221, 226 (D.D.C.2005). "Moreover, to establish a

prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility

required by the district court. Rather, they may rest their argument on their pleadings, bolstered

by such affidavits and other written materials as they can otherwise obtain." *Mwani*, 417 F.3d at

7. Importantly, however, the Plaintiff has to allege "specific facts upon which personal

jurisdiction may be based," *Blumenthal v. Drudge*, 992 F.Supp. 44, 53 (D.D.C.1998), and cannot

rely on conclusory allegations. *See Elemary v. Phillipp Holzmann AG*, 533 F.Supp.2d 116, 121

(D.D.C.2008). The Court need not, however, accept as true "a legal conclusion couched as a

factual allegation," nor inferences that are unsupported by the facts set out in the complaint.

*Trudeau v. FTC*, 456 F.3d 178, 193 (D.C.Cir.2006) (internal citations omitted).

### III.    DEFENDANTS AND CLAIMS

As the claims and allegations are so varying and disparate, we address each Defendant

below with respect to the bases for dismissal of the Complaint. Each of the Defendants below

should be dismissed from the case for lack of personal jurisdiction, subject matter jurisdiction,

and/or the Plaintiff's failure to state a claim. In addition, the three claims pled by the Plaintiff fail

to state a claim, as described below.

### a.  C5 Holdings

The Complaint does not state a claim with respect to C5 Holdings. As an initial matter, the only allegations at all with regard to C5 Holdings is that it is a Luxembourg company (Complaint, at ¶ 7) founded and chaired by Mr. Pienaar (Complaint, at ¶ 9). That is it. The Complaint alleges nothing with respect to C5 Holdings and certainly nothing that is wrongful. In addition, the Complaint sets out three claims. None of those three claims is against C5 Holdings. Thus, in this case quite literally, the Plaintiff has not stated a claim against C5 Holdings.

The Complaint also demonstrates that this Court does not have personal jurisdiction over C5 Holdings. The Court may exercise personal jurisdiction over a non-resident defendant either by (1) finding general jurisdiction over the defendant, thereby allowing the court to entertain a suit against a defendant "without regard to the claim's relationship vel non to the defendant's forum-linked activity," or (2) finding specific jurisdiction based on "acts of a defendant that touch and concern the forum." *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C.Cir.1981); *accord Kopff v. Battaglia*, 425 F.Supp.2d 76, 81 (D.D.C.2006). "A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C.Cir.2000) (*citing United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir.1995)). Given that the only fact about C5 Holdings in the Complaint is that it is a foreign company, nothing has been stated that could show that this Court has personal jurisdiction over C5 Holdings with respect to general jurisdiction or specific jurisdiction.

Similarly, because there is no claim or cause of action against C5 Holdings, this Court also does not have subject matter jurisdiction over C5 Holdings.

**b.  GTI**

As with C5 Holdings, the Complaint does not state a claim against GTI. Again, as an initial matter, the only allegation at all with regard to GTI is that it is a Delaware company (Complaint, at ¶ 8). That is it.[1] The Complaint alleges nothing with respect to GTI at all and certainly nothing that is wrongful. In addition, as discussed above, the Complaint sets out three claims. None of those three claims is against GTI. Thus, the Plaintiff has not stated a claim against GTI.

The Complaint also demonstrates that this Court does not have personal jurisdiction over GTI. Given that the only fact about GTI in the Complaint is that it is a Delaware corporation, nothing has been stated that could show that this Court has personal jurisdiction over GTI with respect to general jurisdiction or specific jurisdiction.

Similarly, because there is no claim or cause of action against GTI, this Court also does not have subject matter jurisdiction over GTI.

**c.  C5 Capital**

The Complaint does not state a claim against C5 Capital. None of the three claims in this case is against C5 Capital. The first two are alleged contract breaches. The third is a co-called "Reliance" claim against Mr. Pienaar. Thus, there is no claim against C5 Capital, stated or otherwise.

C5 Capital is mentioned several times in the Complaint, but with respect to an investment deal that Plaintiff admits never closed. The Plaintiff states that "C5 Capital did not proceed with the investment transaction with groundTruth." Complaint, at ¶ 37. Thus, although the Complaint

---

[1] The Complaint makes numerous mentions of groundTruth global, Inc. [sic]. *See* Complaint at ¶ 1, et seq. This groundTruth global entity is an entity established by the Plaintiff and is different than the Defendant entity GroundTruth Investor LLC.

states that a term sheet was signed (Complaint, at ¶ 28; see also Complaint Exhibit 4), no deal was closed and no agreement reached. *See* Complaint, at ¶ 37. The Complaint accordingly does not allege any claims against C5 Capital.

In addition, this Court does not have personal jurisdiction over C5 Capital, which is a U.K. company. The facts alleged in the Complaint are that C5 Capital was **planning** to invest in an entity with the Plaintiff. Complaint, at ¶ 28. But that this investment never happened and never closed. Complaint, at ¶ 37. There are no facts alleged in the Complaint that would give rise to personal jurisdiction with respect to this proposed transaction that did not take place.

The Term Sheet exhibited as Complaint Exhibit 4 likewise cannot be a basis for personal jurisdiction. For one, the Term Sheet is clear that it is for "negotiation purposes only," is "non-binding," and "intended solely as a summary of the terms that are currently proposed by the parties . . . ." Complaint Exh. 4, at p. 1. In addition, the Term Sheet is governed by English law, demonstrating that the parties did not intend this Term Sheet to give rise to jurisdiction over C5 Capital in Washington, D.C. And Plaintiff has not alleged anything to the contrary.

In any event, the Complaint does not allege – nor could it – any claims based on the Term Sheet and the investment transaction as the former is not binding and the latter never closed.

### d.  Mr. André Pienaar

The Complaint fails to state a legal claim against Mr. Pienaar.

Unlike the Defendants above, the Complaint does purport to bring a claim against Mr. Pienaar. In the Complaint, the Plaintiff lists the "THIRD CLAIM OF RELIEF" as "Reliance." The Complaint does not state what law governs its third claim, which is a fatal flaw in itself as it is not clear that Washington, D.C. law would even govern such a claim given that Mr. Pienaar is a UK national and resident. Nevertheless, assuming, *arguendo,* that the purported "Reliance"

claim arises under the laws of Washington, D.C., no such equitable relief (assuming that what it is) or claim appears to exist in this forum. Thus, there is no such claim as that advanced by the Plaintiff. And this purported claim should be dismissed *cadit quaestio*.

Even if one assumes that Reliance is a claim, or that Plaintiff intended to assert another claim, the facts do not support any cause of action against Mr. Pienaar. The only specific allegations against Mr. Pienaar in which he is alleged to have said or wrote something are below – and all of these communications show that Mr. Pienaar was speaking on behalf of C5 and not in any personal capacity:

- Email from Mr. Pienaar from his C5 Capital account on August 8, 2018, quoted below in full:

  > "Dear George
  >
  > "We are working with the investor families to complete the transaction as quickly as possible within days. It is August and several people are away on holiday which always slow things down somewhat.
  >
  > "We are waiting for the final KYC documents from the investors. Our compliance requires us to send you the full KYC package for sign off as the next step.
  >
  > "We are committed to help GTG with funding -as demonstrated- until completion. I don't see why staff would be laid off if funding is available. What further funding does GTG need this week?
  >
  > "Best wishes
  > Andre"[2]

- September 27, 2018 email from Mr. Pienaar in which Mr. Pienaar made clear that "C5 worked for the last 3 months . . . to put together a seed round" and that "C5 will participate in the round but not be the lead investor." Complaint Exh. 9, at p. 2.

- October 12, 2018 email from Mr. Pienaar's C5 Capital account stating that C5 Capital was waiting for funds from a co-investor. Complaint, Exh. 10, at p. 1.

---

[2] Complaint, Exh. 7.

- October 16, 2018 email from Mr. Pienaar's C5 Capital account in which he states that "**we have invested** 300k on this basis" and expressing his concern that groundTruth global ("GTG") would not avail itself of the financing from C5 Capital. Complaint Exh. 11, at p. 6 (emphasis added). As laid out in the Complaint, C5 funded $300,000 in GTG through SAFE advances made by corporate entities, not by Mr. Pienaar personally. Complaint, at ¶¶ 36 and 39.

That is it. These emails appear to be the entire basis for the Plaintiff's "Reliance" claim. As the Court reviews these emails in connection with this Motion to Dismiss, the Court should note Mr. Pienaar's use of the C5 Capital email address, rather than some personal email address. Importantly, the Court should also note Mr. Pienaar's use of the word "we" when describing potential investments or possible funding. Never does Mr. Pienaar state that he is making statements in his personal capacity, and Plaintiff does not even allege otherwise. Additionally, as shown in the emails, the potential funding for GTG was not coming from Mr. Pienaar personally but rather from business entities or other investors. Nothing in the Complaint, as supported by the emails exhibited to the Complaint, would make any allegation that Mr. Pienaar acted wrongfully with respect to some legal reliance claim or that Mr. Pienaar was acting on his own behalf. Consequently, the Court should dismiss any action against Mr. Pienaar for failure to state a claim.

Not only do the exhibited emails show that no claim against Mr. Pienaar can stand, but the emails also show that the assertions made in the Complaint are not correct. In paragraph 40 of the Complaint, the Plaintiff asserts that it subleased space (to its own affiliated entity, by the way) because of Mr. Pienaar's purported "promised investment . . . ." But the email to which the Complaint refers, found at Complaint Exh. 7, does not state this at all. Rather the email states (1) that it was August and people are away on holiday, (2) that C5 Capital was waiting "for the final KYC documents from the investors," which were needed as a next step, and (3) that C5 Capital was willing to help with funding, which it did through a SAFE advance referenced above.

Complaint Exh. 7, at p. 2. Although the Court generally accepts allegations in a Complaint as true, the Court need not do so when an exhibit to a complaint contradicts the allegation, as Exhibit 7 does here. So the documents do not support a claim that anyone, much less Mr. Pienaar personally, made actionable representations upon which the Plaintiff relied.

In addition, the Complaint lacks facts to support that this Court has personal jurisdiction over Mr. Pienaar, who is a UK national and resident. The Complaint does not demonstrate that Mr. Pienaar was working on his own behalf, rather than for C5 Capital or C5 Accelerate. Thus, there are no facts to show that this Court has personal jurisdiction over Mr. Pienaar personally. In addition, with respect to the allegations in the Complaint that involve Mr. Pienaar, the allegations are that he sent emails for a potential deal that ultimately never closed. Sending emails to an entity in Washington, D.C. from a nonresident defendant cannot be the basis for personal jurisdiction before this Court. *See, e.g., Houlahan v. Brown*, 979 F. Supp. 2d 86 (D.D.C. 2013).

Although the Plaintiff has not alleged facts with respect to jurisdiction, the facts show that the requirements of D.C.'s long-arm statute for personal jurisdiction have not been met here. *See generally* DC CODE § 13-423. None of the allegations in the Complaint show that Mr. Pienaar transacted business in Washington, D.C. (DC CODE § 13-423(a)(1)) or contracted for supply services in Washington, D.C. (DC CODE § 13-423(a)(2)). Without a showing of general jurisdiction, which has not been made, and without allegations to show that the long-arm statute has been met, which it has not, this Court does not have personal jurisdiction over Mr. Pienaar.

### e.  Pinard

The claim against the **Luxembourg entity** Pinard should be dismissed for failure to state a claim and lack of personal jurisdiction.

The first claim for relief in the Complaint is for "breach of contract" against Pinard relating to the Gift Agreement. Complaint, at ¶¶ 53-58. To state a claim for breach of contract under Washington, D.C. law,[3] a plaintiff must allege: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by that breach. *See Doe v. George Washington Univ.*, 366 F. Supp. 3d 1 (D.D.C. 2018).

The Gift Agreement in question, which is Complaint Exhibit 1, does not satisfy the elements of an enforceable contract under Washington, D.C. law.

As an initial matter, the "Gift Agreement" states explicitly that the amount "pledged" is a gift. Complaint Exh. 1, at p. 1. The Gift Agreement repeatedly refers to the gift from Pinard as just that: a gift. *See id*. Gifts are not enforceable contracts as, among things, they lack obligations or duties of the parties, consideration, and potentially other legally necessary elements.

In addition, the Gift Agreement is not an enforceable contract as it does not obligate the Plaintiff to do anything other than to agree to something in the future, subject to approval of a third party. The Gift Agreement states that Pinard "is hereby granted the sole and exclusive naming rights to the space in the lab. . . ." Complaint Exh. 1, at ¶ 4. This, at first, would seem to represent a benefit to Pinard or, perhaps, an obligation of the Plaintiff. But it is neither. The very next sentence states that Pinard and the Plaintiff "agree that the facility will be named in honor of a person to be mutually agreed," and that the United States Institute of Peace has to approve the name. *Id*. So the purported obligation of the Plaintiff is not fixed and is instead subject to a further agreement. And even then this further agreement is subject to the approval of another party. Thus, the Gift Agreement contains illusory and unenforceable promises on both sides: *i.e.*,

---

[3] The Complaint does not state which law should govern the Gift Agreement. Without prejudice to its position regarding the governing law, Pinard here examines the alleged breach of contract under the laws of Washington, D.C.

a planned gift is not an enforceable obligation and a statement that the parties will later agree is likewise not an enforceable obligation.

The Gift Agreement is likewise not enforceable because the essential terms have not been agreed. To the extent that the Gift Agreement is a contract, the naming rights by Pinard would be an essential term of the agreement. Yet that term regarding the naming rights is uncertain and unenforceable because it merely states that the parties **will agree on the name at some point in the future**. Thus, further agreement is required with respect to an essential term in the contract, rendering such a contract unenforceable. In *3E Mobile, LLC v. Glob. Cellular, Inc*., 798 F. App'x 651, 652 (D.C. Cir. 2020), the D.C. Circuit (applying Pennsylvania law) held that a term in the contract "was an essential but undefined term of the manufacturing agreement, and the contract was therefore void." *See also Restatement (Second) of Contracts* § 33 cmt. a (1981) ("If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract."). Here, the essential term is uncertain as it requires further agreement and approval by one of the signatories to the Gift Agreement.

The Complaint must also be dismissed with respect to Pinard as it fails to assert facts demonstrating this Court's personal jurisdiction over Pinard. The Complaint provides no facts to support general jurisdiction over Pinard, a **Luxembourg** company. With respect to Washington, D.C.'s long-arm statute, none of the bases for jurisdiction apply with respect to Pinard. The Complaint makes no allegation that Pinard is transacting business in Washington, D.C. See DC Code § 13–423(a)(1). The Gift Agreement is with respect to a proposed donation, not a business transaction. In any event, no actions were taken by Pinard, according to the Complaint, with respect to the planned gift. Likewise, there is nothing in the Complaint demonstrating that Pinard

was contracting to supply services in Washington, D.C. See DC Code § 13–423(a)(2). Thus, no

basis exists to invoke Washington, D.C.'s long-arm statute with respect to Pinard.

### f.   C5 Accelerate

The claim against C5 Accelerate should likewise be dismissed for failure to state a claim

as the Plaintiff has not demonstrated any harm with respect to an alleged breach and, as shown

by the Complaint, the Plaintiff has received only benefits.

"It is a longstanding principle in civil law that there can be no monetary recovery unless

the plaintiff has suffered harm." *Mira*, 107 F.3d at 473 (citing *Brock v. Robbins*, 830 F.2d 640,

647 (7th Cir.1987)). "[M]ere breach without proof of monetary loss is *injuria absque damno*,"

*Cagle v. Southern Bell Tel. & Tel. Co.*, 143 Ga. App. 603, 604, 239 S.E.2d 182, 183

(Ga.Ct.App.1977) i.e., "a wrong which results in no loss or damage, and thus cannot sustain an

action." *Mira*, 107 F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)). *See also*

*Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (citing the above).

In *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009), the D.C. Court of

Appeals held that the breach of a settlement agreement by its disclosure was not a valid claim

because the plaintiff did not suffer loss or damage. The D.C. Court of Appeals noted that damage

was required to have an actionable breach of contract claim. See id.

Here, the Complaint and Collaboration Agreement demonstrate that the Plaintiff suffered

no damage or harm. The Collaboration Agreement provides for C5 Accelerate to make an annual

contribution of $160,000 "to be applied by PeaceTech to its staff costs in support of the work of

[C5 Accelerate]." Complaint Exh. 2, at ¶ 4(c). Thus, the Collaboration Agreement makes clear

that these contributions are for work done for C5 Accelerate, rather than money paid to the

Plaintiff for its own separate work or mission. The Complaint further admits that C5 Accelerate

made a payment of $160,000 in connection with the Collaboration Agreement.  Complaint, at ¶ 23. This payment then would be for work that the Plaintiff would do in support of C5 Accelerate. Yet the Complaint provides no allegation that the Plaintiff incurred any cost at all in supporting C5 Accelerate, or that the Plaintiff did anything to support C5 Accelerate. So, the Plaintiff received $160,000 from C5 Accelerate and incurred no obligation or expense with respect to this payment. So, far from being damaged or harmed, the Plaintiff has been unjustly enriched by C5 Accelerate's payment. Because the Plaintiff did not suffer any damage, the claim should be dismissed.

## IV.    CONCLUSION

For the reasons set for herein, this Court should dismiss Plaintiff's Complaint entirely pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (6), for lack of personal jurisdiction, subject matter jurisdiction, and/or the Plaintiff's failure to state a claim upon which relief can be granted.

Respectfully Submitted,

By: */s/ Steven K. Davidson*

STEPTOE & JOHNSON
1330 Connecticut Avenue NW
Washington, DC 20036
Tel: (202) 429-3000
Fax: (202) 429-3902
sdavidson@steptoe.com

13

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 21, 2020, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


By: */s/ Steven K. Davidson*
       Steven K. Davidson