## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PEACETECH LAB, INC.,⠀⠀⠀⠀⠀⠀⠀⠀)
2301 Constitution Ave, NW⠀⠀⠀⠀)
Washington, DC 20037⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀)⠀⠀C.A. No. 1:20-cv-922-JDB
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀**JURY TRIAL DEMANDED**
C5 ACCELERATE LLC, PINARD S.A.R.L.,⠀)
C5 HOLDINGS S.A.R.L., GROUNDTRUTH⠀)
INVESTOR LLC, MR. ANDRE PIENAAR,⠀)
Suite 460⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
1701 Pennsylvania Avenue, NW,⠀⠀⠀⠀)
Washington, DC 20006⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
C5 CAPITAL LTD.,⠀⠀⠀⠀⠀⠀⠀⠀)
7 Vigo Street,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
London, UK, W1S 3HF,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀)

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1.⠀⠀⠀⠀Plaintiff PeaceTech Lab, Inc. ("PeaceTech"), by and through its undersigned attorneys, hereby files this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) against Defendants C5 Accelerate LLC ("C5 Accelerate"), Pinard S.à.r.l. ("Pinard"), C5 Capital Ltd. ("C5 Capital"), C5 Holdings S.à.r.l. ("C5 Holdings"), GroundTruth Investor LLC ("GroundTruth Investor"), and Mr. Andre Pienaar.

## NATURE OF THE ACTION

2.⠀⠀⠀⠀This is an action for breach of contract, promissory estoppel, and fraud brought by Plaintiff PeaceTech against Defendant Mr. Pienaar and five of his companies.  PeaceTech is a non-profit headquartered in Washington, DC.  Its mission is to promote peace around the world through the use of technology.

3.    Mr. Pienaar, an entrepreneur and venture capital investor, promised large donations and other financial benefits to Plaintiff PeaceTech.  He secured a seat on PeaceTech's board of directors.

4.    When PeaceTech began its relationship with Mr. Pienaar and his companies—the other Defendants—PeaceTech thought they had found a valuable ally for their important mission.  Mr. Pienaar and the other Defendants turned out to be anything but that.  He ultimately welched on his promises, and it became clear that he made them in the first place only to enhance his reputation and business prospects.

5.    First, in 2017, PeaceTech entered into a binding agreement with one of Mr. Pienaar's entities, Pinard, for a donation of $1.5 million to PeaceTech.  In return for the donation, Defendants would receive benefits including certain naming rights.  Despite their clear and repeated promises to PeaceTech, Defendants shirked their obligations and did not make their contractually required donation.  As a result of this blatant breach, PeaceTech incurred $1.2 million in construction costs and additional damages.

6.    Another of Mr. Pienaar's companies, C5 Accelerate, contracted with PeaceTech to collaborate on an accelerator for peace-related projects.  Defendants also breached this agreement.

7.    Additionally, Mr. Pienaar signed a Term Sheet and closing documents with PeaceTech on behalf of another one of his companies, Defendant C5 Capital.  The Term Sheet and closing documents, along with other facts described in more detail below, obligated Defendants to make an investment of $3 million for preferred shares in a newly formed entity called groundTruth global, Inc. ("groundTruth").  Defendants C5 Holdings and GroundTruth Investor—two more of Mr. Pienarr's companies—also had planned investments in groundTruth.  PeaceTech expended monies in reliance on Mr. Pienaar's pattern of repeated assurances and misrepresentations

regarding an investment in groundTruth global, and groundTruth has since ceased operations due to Mr. Pienaar's defaults.

8.      Defendants' misdeeds have caused great damage to PeaceTech and its charitable mission.  This action seeks to hold Defendants accountable for the over $2,598,000 damages they caused.

## PARTIES

9.      Plaintiff PeaceTech is a nonprofit corporation located and incorporated in the District of Columbia.

10.     Defendant C5 Accelerate is a limited liability company based in the District of Columbia and organized under the laws of Delaware.

11.     Defendant Pinard is a société à responsabilité limitée organized and existing under the laws of Luxembourg.[1]

12.     Defendant C5 Capital is a company, with an office in the District of Columbia, that is organized and existing under the laws of the United Kingdom.

13.     Defendant C5 Holdings is a société à responsabilité limitée organized and existing under the laws of Luxembourg, and the parent company of C5 Capital, which maintains an office in the District of Columbia.[2]

14.     Defendant GroundTruth Investor LLC is a company organized and existing under the laws of Delaware.

---

[1] As described in more detail below, the Luxembourg Business Register listed this entity at the time of the original Complaint in this action was filed.  As of the date of this First Amended Complaint, the Luxembourg Business Register no longer has information about this entity. Defendants may have de-listed this entity in response to this lawsuit.

[2] As described in more detail below, the Luxembourg Business Register listed this entity at the time of the original Complaint in this action was filed.  As of the date of this First Amended Complaint, the Luxembourg Business Register no longer has information about this entity. Defendants may have de-listed this entity in response to this lawsuit.

15.     Defendant Andre Pienaar maintains an office and residence in the District of Columbia, conducts substantial business in the District of Columbia, is the founder and Chairman of Defendant C5 Capital, is the owner of Defendant Pinard, and is a national and resident of the United Kingdom.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff is a citizen of the District of Columbia, and Defendants are citizens of Delaware, Luxembourg, and the United Kingdom.

17.     The amount in controversy is in excess of $2,598,000.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).  A substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## FACTUAL BACKGROUND

19.     In 2008, PeaceTech was established as the Center of Innovation at the U.S. Institute of Peace ("USIP") in Washington, DC.  In 2014, it became a 501(c)(3) nonprofit with expert staff and a Board of Directors.

20.     PeaceTech uses the power of technology, data, and media to save lives and promote peace around the world.  It furthers peacekeeping efforts around the globe and supports the development of innovative technology aimed at maintaining peace.

21.     For example, after the Covid-19 pandemic began, PeaceTech launched a Violence Tracker to trace, categorize, and visualize violence the world is experiencing as a result of the global pandemic in order to better understand how Covid-19 is breeding violence.

22.     PeaceTech also has an educational mission to foster and educate a community of entrepreneurs engaged in developing technology that promotes peace.  PeaceTech is committed to reducing violent conflict through technology, media, and data.

4

23.     As part of these efforts, PeaceTech ran an accelerator program, which provided space for and supported the growth of startup and early-stage companies working to produce innovative technologies that promote peace around the world.

24.     PeaceTech, like many nonprofits around the country, suffers from the effects of the current global pandemic even while working to improve the situation through efforts such as tracking violence and unrest caused by Covid-19.  The financial strain caused by the Defendants' defaults have only been exacerbated by the economic uncertainty of the current pandemic.

## Defendants' Significant Contacts with this District

25.     Led by Mr. Pienaar, each of the Defendants has had significant contacts with this jurisdiction, related to issues in this litigation and otherwise.

26.     Each of the Defendants was involved in transacting business in Washington, DC, including with respect to the Gift Agreement, Collaboration Agreement, and investment that are the subject of this Complaint.

27.     Each of the Defendants caused tortious injury to PeaceTech in Washington, DC, including through acts and omissions in this district.

28.     Defendant C5 Accelerate is located in Washington, DC, and signed an agreement with PeaceTech that listed C5 Accelerate's address at 2301 Constitution Ave, NW, Washington DC 20037.  The C5 Accelerate website, available at C5US.com, states that C5 Accelerate is currently located at 1701 Pennsylvania Ave, NW in Washington, DC.

29.     C5 Accelerate entered into negotiations with PeaceTech, which is located in Washington, DC, about an agreement that provided space for an accelerator program which was to be located at the USIP building in Washington, DC and was to be run in collaboration between C5 Accelerate and PeaceTech.  These negotiations were made through emails, phone calls, and in-person visits to PeaceTech in Washington, DC, throughout 2016 and early 2017.

30. PeaceTech and C5 Accelerate hosted a launch event for the accelerator program in the District of Columbia on April 27, 2017, where representatives from Defendants C5 Accelerate, C5 Capital, and C5 Holdings were in attendance. Individuals representing all three C5 entities that are Defendants in this case also visited the District of Columbia to receive multiple briefings on the program over a two-year period when the accelerator program was in operation.

31. On April 28, 2017, the Collaboration Agreement was finalized with an in-person signing in Washington, DC, where the agreement was signed by Sheldon Himelfarb, CEO of PeaceTech, and Defendant Andre Pienaar, on behalf of C5 Accelerate.

32. Defendant Pinard is Mr. Pienaar's family trust.

33. Pinard negotiated a separate agreement with PeaceTech in the District of Columbia, an agreement that obligated Defendants to provide funds in exchange for Pinard's exclusive right to name a space at the USIP, located in the District of Columbia. These negotiations were made through emails, phone calls, and visits to PeaceTech in the District of Columbia throughout 2016 and early 2017.

34. On February 16, 2017, after a final agreement was reached between Pinard and PeaceTech, the parties held an in-person, celebratory signing in Washington, DC. Defendant Mr. Pienaar, again, signed the agreement on behalf of Pinard.

35. Defendant C5 Capital lists an office on its website at 1701 Pennsylvania Ave, NW, Washington, DC 20006.

36. C5 Capital entered into negotiations with PeaceTech in the District of Columbia about an investment in groundTruth. From March to July 2017, leading up to the investment agreement, representatives from Defendants C5 Capital and C5 Holdings, including Mr. Pienaar, visited PeaceTech in the District of Columbia on multiple occasions to receive investor

presentations and for in-person meetings.  Representatives from C5 Capital and C5 Holdings also contacted PeaceTech in the District of Columbia through emails and phone calls to discuss the investment.

37.    GroundTruth Investor is an entity that was created to facilitate Defendants' investment in groundTruth, a transaction with contacts that centered in Washington, DC.  To that end, GroundTruth Investor signed an agreement to invest in preferred shares of groundTruth. GroundTruth Investor was represented throughout the negotiations by Defendant Mr. Pienaar, who contacted PeaceTech in this district through emails, phone calls, and in-person visits.

38.    Including the visits described above, Defendant Mr. Pienaar visited PeaceTech in the District of Columbia frequently, coming for a visit to USIP and PeaceTech generally once a quarter, and at times once a month, up until 2019.  Mr. Pienaar was also on the PeaceTech board of directors, and came to at least two board meetings in the District of Columbia.  For the meetings that he was unable to attend in-person, he called in to this district remotely.  Mr. Pienaar also frequently conducted business with PeaceTech by phone or email.

39.    The contacts Mr. Pienaar made with the District of Columbia on behalf of himself and the other Defendants described above—related to this case and otherwise—are only a snapshot of the many efforts Mr. Pienaar has made to establish an influential presence in this jurisdiction. Mr. Pienaar holds himself out as doing business in this district.  On Mr. Pienaar's personal website, available at https://www.andrepienaar.info/, Mr. Pienaar states that he has offices in Washington, DC and elsewhere.   Mr. Pienaar's website also states that Mr. Pienaar "is a member of the US Government's Institute of Peace (USIP) International Advisory Council and a Director of the PeaceTech Lab in Washington DC," and also includes his "charitable interests" as "the National council on White House History."

7

40.    On information and belief, Mr. Pienaar resides at least part time in this jurisdiction. Mr. Pienaar informed PeaceTech that he bought a condominium in the District of Columbia for use as a personal residence.

41.    Mr. Pienaar continues to pay rent to the USIP for space at their Washington, DC location for the accelerator program.

42.    Mr. Pienaar purchased a District of Columbia consulting firm to further his business activities in the city.

43.    It was foreseeable that the injuries resulting from Defendants' acts and omissions would occur in Washington, DC, which is where PeaceTech is located and where Defendants directed their conduct related to their relationship with PeaceTech.

## Close Relationship Between All Defendants

44.    All of the Defendants are related to or affiliated with each other, either directly or through Mr. Pienaar.

45.    Mr. Pienaar is like the hub of a wheel.  The other Defendants are spokes coming off of it, doing his work.

46.    On information and belief, Mr. Pienaar is a founder, executive, owner, and/or board member of each of the other Defendants.

47.    On information and belief, Mr. Pienaar used his C5 Capital email address for personal communications not directly related to C5 Capital's core business.

48.    On information and belief, all of the corporate Defendants (C5 Accelerate, C5 Capital, C5 Holdings, GroundTruth Investor, and Pinard) are closely held entities.

49.    On information and belief, the corporate Defendants acted as alter egos of Mr. Pienaar.

50.    Mr. Pienaar used the corporate Defendants to harm PeaceTech, including by perpetuating fraud against PeaceTech.

51.    Mr. Pienaar acted through a series of his entities—the other Defendants.  At bottom, this case is about a prominent investor coming to Washington, DC, and making promises—directly and through the other Defendants—in order to gain influence and clout.

52.    The shifting sands of Defendants' business registrations show that Defendants are all closely linked.  At the time Plaintiff filed the original Complaint in this action, Mr. Pienaar was listed as a Class A Manager of Defendant C5 Holdings and a Class A Manager and owner of Defendant Pinard in the Luxembourg Business Register.  The Luxembourg Business Register no longer shows entries for either C5 Holdings or Pinard.

53.    Upon information and belief, these contemporaneous de-listings might be related to this lawsuit and Defendants' attempts to avoid liability for their actions.  Each of the closely related and closely held entities Plaintiff named in this suit participated in Defendants' misconduct.  It is not clear, however, which of these entities will continue to exist.

54.    Mr. Pienaar is currently listed as a Director of C5 Capital, and signed a Term Sheet with PeaceTech as the "Founder" of C5 Capital.  Mr. Pienaar is also the Managing Director of C5 Accelerate.

55.    On information and belief, the corporate defendants acted as alter egos of Mr. Pienaar, who told PeaceTech that "[m]y family office would be interested in investing in GroundTruth," and, regarding a proposed donation, that "[t]he pledge is from me personally."  This statement referred to a pledge agreement that Mr. Pienaar signed on behalf of one of his companies, Defendant Pinard.

56.     Mr. Pienaar's personal website, available at https://www.andrepienaar.info/, states that he is "a Managing Partner and the Founder of C5, a specialist technology investment group focused on cybersecurity, cloud computing and artificial intelligence with offices in Washington, London, Luxembourg, Munich and Bahrain."

57.     The "Giving" section on Mr. Pienaar's personal website lists PeaceTech as one of the "charitable organisations" he supports.  As described in more detail below, Mr. Pienaar and his Pinard entity did not give PeaceTech any portion of the $1.5 million they promised to donate.

58.     The corporate Defendants are also all connected to each other.  According to an Orbis report, C5 Holdings is the parent company of C5 Capital, and C5 Accelerate is also part of the C5 Enterprise.  Pinard also has an ownership interest in C5 Capital, according to the SEC ADV Form for C5 Capital.  On information and belief, GroundTruth Investor is also connected with the other corporate entities, and was formed by Mr. Pienaar to further the investment opportunity the other Defendants were engaged with regarding groundTruth.

**<u>Overview of Defendants' Agreement and Promises</u>**

59.     Defendants entered into agreements with and made promises to PeaceTech.

60.     Defendants breached those agreements and promises.

61.     Defendant Pinard entered into a "Gift Agreement" with PeaceTech, signed by Mr. Pienaar, which obligated Defendants to provide $1.5 million to PeaceTech in exchange for naming rights for a space to host an accelerator program and other benefits to Pinard.  Defendants did not make any of the pledged payments under the Gift Agreement.

62.     Defendant C5 Accelerate entered into a "Collaboration Agreement" with PeaceTech, signed by Mr. Pienaar, which provided for annual payments of $160,000 and other

potential payments to PeaceTech in exchange for PeaceTech's support in running an accelerator program.

63.     Defendant C5 Capital, as represented by Mr. Pienaar, signed a Term Sheet and closing documents with PeaceTech for an investment of $3 million for preferred shares in the newly formed entity, groundTruth.  Defendants C5 Holdings and GroundTruth Investor also had planned investments in groundTruth.

64.     Mr. Pienaar repeatedly used personal language regarding the contracts at issue in this Complaint, including by calling the payments Defendants contracted to make to PeaceTech "my pledge" and "my personal funding commitment to PeaceTech"  and stating, "I want to support" PeaceTech's work.

65.     On information and belief, Mr. Pienaar intended to use his promises to PeaceTech to gain influence and clout in Washington, DC, but did not intend to follow through on his and his companies' obligations to PeaceTech.

**Gift Agreement**

66.     On February 16, 2017, Pinard entered into a Gift Agreement with PeaceTech.  In the Gift Agreement, Pinard committed to make a $1,500,000 donation to PeaceTech, to be paid in three equal installments beginning on April 17, 2017, with subsequent payments to be made on February 15, 2018, and February 15, 2019.  The purpose of the donation was to develop and renovate facilities for PeaceTech's use "to host innovative, growing organizations developing peacebuilding technologies."

67.     In consideration for Pinard's donation, PeaceTech granted to Pinard exclusive naming rights for space where the accelerator program would be operated.  PeaceTech also agreed that a plaque would be prominently displayed with "the Donor's name or party to be honored by the Donor" and that Pinard would be publicly recognized in multiple locations. Dr. Sheldon

Himelfarb, PeaceTech's President and CEO, signed on behalf of PeaceTech. Mr. Pienaar signed the agreement on behalf of Pinard. A true and correct copy of the signed Gift Agreement is attached hereto as Exhibit 1.

68.    Pinard has not paid and PeaceTech has not received any portion of the contracted $1.5 million donation.

69.    As a result of Pinard's default, PeaceTech incurred $1.2 million in construction costs.

70.    PeaceTech was also forced to take out a $500,000 line of credit to cover expenses that were planned for under the Gift Agreement. The charges PeaceTech has incurred as a result of this credit line amount to at least $43,722.

71.    As a further result of this default, PeaceTech was unable to make timely payments to a construction vendor, for which PeaceTech incurred an interest charge for late payments amounts of at least $27,902.

72.    The Gift Agreement Mr. Pienaar signed was explicitly made subject to the laws of the District of Columbia.

### Collaboration Agreement

73.    On April 28, 2017, C5 Accelerate entered into a Collaboration Agreement with PeaceTech. PeaceTech was required by the Collaboration Agreement to "use commercially reasonable efforts to support" the accelerator program in its mission of "facilitating innovation in peace technology by identifying, assisting, accelerating, investing in and supporting best-of-breed startups and early stage companies." The agreement also provides that PeaceTech will "provide sufficient space for Accelerator meetings on its premises." In exchange, C5 Accelerate agreed to make annual payments "in an amount no less than $160,000" for PeaceTech's costs in supporting

the accelerator program. The first payment was to be made on December 31, 2017, to be followed by monthly payments.

74.     Defendants did not make any of the subsequent payments required under the Collaboration Agreement.

75.     The Collaboration Agreement also provides that C5 Accelerate shall "promptly transfer to or arrange for the issuance to PeaceTech" 33% of securities that C5 Accelerate received from entities that enter the accelerator program, whether received by a grant or through an investment.

76.     Dr. Himelfarb signed the Collaboration Agreement on behalf of PeaceTech, and Mr. Pienaar signed the agreement on behalf of C5 Accelerate. A true and correct copy of the signed Collaboration Agreement is attached hereto as Exhibit 2.

77.     The Collaboration Agreement was set to "continue in full force . . . for a period of three years" or until April 11, 2020, unless renewed or terminated earlier by one of three methods described in the agreement. To date, the Collaboration Agreement has not been renewed or terminated under any of the methods specified.

78.     PeaceTech expended extensive efforts and resources to support the accelerator program. PeaceTech used staff and contractors to recruit start-ups for the accelerator, recruit mentors and coaches to support the program participants, and provide support for daily operations. PeaceTech also used its own networks and marketing channels to raise the accelerator's profile through public events and speaking opportunities.

79.     The first payment of $160,000 required under the Collaboration Agreement was paid. No further payments have been made. The payments for 2018, 2019, and 2020 required under the agreement remain outstanding.

80.    To date, C5 Accelerate has not paid PeaceTech any portion of the securities received from entities that entered accelerator program.  C5 Accelerate has also never provided any information to PeaceTech regarding investments that would have yielded equity to which PeaceTech is entitled under the Collaboration Agreement. Upon information and belief, C5 Accelerate has made such investments.

### GroundTruth Investment

81.    In the spring of 2017, PeaceTech sought to obtain investments for a new peace-technology product and web-based platform called groundTruth global.  In order to seek private investment for this innovative new technology, PeaceTech created groundTruth on or about April 11, 2018.

82.    From March to July 2017, Dr. Himelfarb and PeaceTech's Chief Data Scientist, Dr. Rohini Srihari, engaged in discussions with Mr. Pienaar about a potential investment in groundTruth.  These discussions included multiple presentations of the groundTruth global product to Mr. Pienaar and others.

83.    On or about April 21, 2017, Mr. Pienaar discussed with Dr. Himelfarb his support for a seed funding round for groundTruth.

84.    On February 13, 2018, C5 Capital and PeaceTech signed a Term Sheet for a first round of funding for groundTruth of $3 million for Series A Preferred Shares in groundTruth with a full valuation of $10 million.  Dr. Himelfarb signed on behalf of PeaceTech.  Mr. Pienaar signed on behalf of C5 Capital.  A true and correct copy of the signed Term Sheet is attached hereto as Exhibit 3.

85.    GroundTruth Investor signed a separate agreement to invest $3.3 million in groundTruth.  Mr. Pienaar signed this agreement on behalf of GroundTruth Investor.

86.    At the same time, groundTruth and PeaceTech negotiated a development and commercialization license agreement under which PeaceTech would grant an exclusive license to groundTruth for the use and commercialization of the groundTruth global product.  This agreement included a proposed one-time fixed licensing fee of $300,000 that groundTruth would pay to PeaceTech.

87.    In June 2018, the PeaceTech Board of Directors received a final package of closing documents and approved the closing with a unanimous vote.

88.    The closing documents provided for the licensing agreement described above, including the $300,000 licensing fee to be paid to PeaceTech by groundTruth.

89.    The closing documents also provided that PeaceTech would be reimbursed for $160,000 in expenses that PeaceTech had borne in the run up to the agreed- upon investment by C5 Capital in groundTruth.

90.    PeaceTech purchased 1,000,000 shares of common stock of groundTruth for $100 on June 8, 2018.

91.    On or about July 9, 2018, PeaceTech and Defendants signed the final agreements.

92.    The final, signed closing documents were placed in escrow in expectation of an imminent closing of the transaction.

93.    Shortly after this, however, Mr. Pienaar informed PeaceTech that an additional round of due diligence was needed.  Mr. Pienaar claimed the time was needed for additional due diligence due to potential issues with the Committee on Foreign Investment in the United States ("CFIUS").

94.    To accommodate for this delay, on July 19, 2018, C5 Accelerate provided a Simple Agreement for Future Equity ("SAFE") advance to groundTruth in the amount of $150,000.

95.    Shortly thereafter, the additional round of due diligence into potential CFIUS issues was concluded with no such issues found to exist.  Nonetheless, C5 Capital requested even more additional time to send the money and complete the transaction.

96.    On August 8, 2018, PeaceTech Board's counsel, George Foote, informed Mr. Pienaar that groundTruth was running out of funding and requested that the investment transaction be completed promptly so as to avoid laying off groundTruth staff.  Mr. Pienaar responded that he was working "to complete the transaction as quickly as possible within days."

97.    On August 9, 2018, Mr. Pienaar offered interim funding through another SAFE advance through C5 Holdings, which was made on August 12 in the amount of $150,000. The funding was accepted by groundTruth and Mr. Pienaar was notified that the same issue would arise the following month if the deal did not close.

98.    On August 14, 2018, PeaceTech entered into a sublease agreement with groundTruth for office space on the third floor of 2301 Constitution Ave, NW, Washington, DC. PeaceTech entered into this agreement to further the goal of the promised investment from Mr. Pienaar and in reliance on the forthcoming funds.

99.    PeaceTech entered into this agreement with the understanding that groundTruth would be able to make rent payments from the incoming investment from Mr. Pienaar.  In reliance on Mr. Pienaar's promises, PeaceTech subleased the space to groundTruth, forfeiting the ability to rent the space to other tenants.

100.    The sublease is set to expire approximately five years from the lease commencement date. However, at the end of 24 months of the lease commencement date, groundTruth and PeaceTech both have the option to terminate the sublease. The total rent due for these 24-month period is $103,370.

101.    GroundTruth made payments to PeaceTech in the aggregate amount of $13,011 for the security deposit and first two months of rent due.

102.    On August 16, 2018, Mr. Pienaar asked to meet with PeaceTech's Dr. Himelfarb in Washington DC, where Mr. Pienaar reiterated his commitment to completing the groundTruth transaction, as well as the Gift Agreement pledge for $1.5 million.

103.    On September 10, 2018, Mr. Pienaar sent an email to Dr. Srihari and Dr. Himelfarb, stating "[w]e are working overtime to finalize the commitments to the US investors we are bringing to complete the [groundTruth] investment."

104.    On September 27, 2018, Mr. Pienaar sent an email to PeaceTech's Board Chairman Mr. Donofrio that he was "now in a position to move forward to complete the transaction."

105.    On October 12, 2018, Mr. Pienaar sent an email to Dr. Himelfarb, Dr. Srihari, and Mr. Foote, indicating that while he was tracking one transfer from a co-investor, "[e]verything else is ready to go. Hope we can get it over the line today." *See* Exhibit 4.

106.    That same day, groundTruth ran out of funding. PeaceTech agreed to cover a week of salaries based on Mr. Pienaar's assurances.

107.    On October 16, 2018, PeaceTech informed Mr. Pienaar that "if we don't receive wire payment today, we will unfortunately need to lay off staff."  Mr. Pienaar responded, "As an existing investor with $300k committed in [groundTruth] I really don't understand your message of this morning about laying people off. I do not understand why you would not avail yourself of our financing to make sure the business remains viable while the seed round completes." *See* Exhibit 5.

108.    PeaceTech agreed to continue to provide funding for staff salaries on the strength of Mr. Pienaar's assurances.    From October 15 to October 26, 2018, PeaceTech spent approximately $14,000 to maintain staff and operations at groundTruth.

109.    On October 26, 2018, Dr. Himelfarb received an email from Kurt Scherer of one of Mr. Pienaar's C5 companies, requesting documentation on groundTruth's current payroll, other expenses, and ongoing business and development strategy in order to secure additional financing.

110.    GroundTruth closed its doors and ceased all operations on October 26, 2018.

111.    In total, PeaceTech expended $267,082 for staff salaries and overhead costs to maintain operations at groundTruth based entirely on Mr. Pienaar's continued assurances.

112.    After October 2018, groundTruth was unable to make further rent payments, leaving PeaceTech without over $90,359 in payments for the sublease agreement.

**Defendants Deceived PeaceTech with a String of False Promises and Assurances**

113.    Defendants repeatedly made statements to PeaceTech that funding was forthcoming, that Defendants would make good on their obligations, and that PeaceTech could rely on Defendants' promises.

114.    Defendants strung PeaceTech along with their false promises.

115.    On multiple occasions, Mr. Pienaar asserted to PeaceTech that Defendants' would fulfill their $1.5 million pledge to PeaceTech.

116.    On multiple occasions, Mr. Pienaar assured PeaceTech that Defendants would pay the $3 million investment in groundTruth.    Mr. Pienaar continued to make these assurances even as PeaceTech contemplated laying off staff and taking other measures to save costs.

117.    On July 25, 2018, Mr. Pienaar asserted to PeaceTech that "[w]e have an investment transaction that is ready for completion. Both parties are eager to complete expeditiously."

118.     On August 8, 2018, PeaceTech Board's counsel, Mr. Foote, informed Mr. Pienaar that PeaceTech had plans to lay off groundTruth staff "[t]o avoid incurring obligations."   Mr. Pienaar asserted to PeaceTech that "[w]e are committed to help [groundTruth global] with funding -as demonstrated- until completion. I don't see why staff would be laid off if funding is available."

119.     On September 27, 2018, Mr. Pienaar told PeaceTech that "[w]e are now in a position to move forward to complete the transaction with a group of US investors[.]"

120.     On October 11, 2018, Mr. Pienaar wrote to PeaceTech, "[w]e will keep you posted. We expect to receive the funds imminently." *See* Ex. 4.

121.     On October 12, 2018, Mr. Pienaar told PeaceTech that "we are still tracking a transfer from one of our co-investors that remains outstanding. Everything else is ready to go. Hope we can get it over the line today." *See* Ex. 4.

122.     On October 16, 2018, at 9:21 AM, Mr. Pienaar told PeaceTech, "I cannot guarantee the timing of the arrival of the wires, I can only tell you when our Fund Operations team confirmed they are done. The transfer is from our Luxembourg Fund."   At 9:25 AM, he told PeaceTech that he would "send . . . confirmation once the wire has been sent."   At 9:43 AM, Mr. Pienaar wrote to PeaceTech, "I do not understand why you would not avail yourself of our financing to make sure the business remains viable while the seed round completes.   I will ask our Fund Operations team to send the confirmation of the wire directly to you." *See* Ex. 5

123.     Each of Defendants' relevant statements described in this section and elsewhere in this Amended Complaint related to important, material facts about Defendants' obligations to PeaceTech.

124. PeaceTech relied on Defendants' representations in good faith and incurred costs based on Defendants' assurances. Those costs included construction costs, interest payments, and salaries.

125. PeaceTech's reliance resulted in damages when, it turned out, Defendants' statements and assurances were false.

126. On information and belief, when making the statements described in this section and elsewhere in this Amended Complaint, Defendants knew their representations were false. The Defendants—and/or people acting on their behalf or as their alter egos—nonetheless purposefully made these representations and made them with an intent to deceive PeaceTech.

### Defendants Have a Repeated Pattern of Breached Promises in this District

127. Upon information and belief, since approximately 2011, Mr. Pienaar has made promises of gifts to other charitable organizations in Washington, DC but failed to make the contributions he promised.

128. Two such examples include donations that Mr. Pienaar promised to USIP. Upon information and belief, Mr. Pienaar promised a contribution to a USIP Capital Campaign in or about 2011 and made a pledge agreement with USIP in or about 2020, but he did not make the full contributions he promised in either case.

129. Upon information and belief, at one point in 2019, Mr. Pienaar wrote to USIP that "Our bank confirms that the USD 1M have left our account," but USIP never received the funds. Mr. Pienaar even provided wire-transfer information from a purported C5 Holdings bank account. On information and belief, the wire-transfer information Mr. Pienaar sent was fictitious.

130. Mr. Pienaar and his companies also breached promises made to companies that applied to be a part of the accelerator program. Upon information and belief, C5 Accelerate had

signed agreements with approximately eight companies, and all of the agreements were unilaterally nullified by C5 Accelerate before the companies could participate in the program.

## FIRST CLAIM FOR RELIEF
*Breach of Contract*
*Against Mr. Pienaar and Pinard*

131.    PeaceTech restates and re-alleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

132.    PeaceTech had a valid and binding contract with Pinard, signed by Mr. Pienaar.

133.    On information and belief, for all relevant intents and purposes Pinard is Mr. Pienaar's company.

134.    Defendants had binding obligations arising from their contract.

135.    PeaceTech has fully complied with all of the terms and conditions of the Gift Agreement.

136.    Pinard and Mr. Pienaar have failed to comply with the terms and conditions of the Gift Agreement and failed to provide the $1.5 million donation.

137.    This default cost PeaceTech $27,902 in interest for payments to a construction vendor that would not have been incurred but for Defendants' default.

138.    This default further cost PeaceTech $43,722 in interest for a line of credit that would not have been incurred but for Defendants' default.

139.    By reason of the foregoing, Defendants are liable to PeaceTech for at least $1,571,624 in damages for their breach of the Gift Agreement, plus punitive damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

*Breach of Contract*
*Against Mr. Pienaar, C5 Accelerate, C5 Holdings, and C5 Capital*

140.    PeaceTech restates and re-alleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

141.    PeaceTech had a valid and binding contract with C5 Accelerate, signed by Mr. Pienaar.

142.    On information and belief, for all relevant intents and purposes C5 Accelerate is Mr. Pienaar's company, and acts closely with C5 Holdings and C5 Capital.  On information and belief, C5 Accelerate acted as an agent of C5 Holdings and C5 Capital for relevant purposes.

143.    Defendants had binding obligations arising from their contract.

144.    PeaceTech has fully complied with all of the terms and conditions of the Collaboration Agreement.

145.    C5 Accelerate, Mr. Pienaar, and the affiliated Defendants have failed to comply with the terms and conditions of the Collaboration Agreement and failed to provide the contract payments for 2018, 2019 and 2020 under the Collaboration Agreement.

146.    Defendants have failed to provide any information regarding investments or equity that C5 earned from the accelerator program, and the percentage of any equity that is now owed to PeaceTech.

147.    By reason of the foregoing, Defendants are liable to PeaceTech for at least $360,000 plus 33% of any equity earned by C5 Accelerate, plus punitive damages in an amount to be determined at trial.

148.    PeaceTech's damages as a result of Defendants' breach of contract are continuing, and PeaceTech reserves the right to seek the full and exact amount of its damages at the time of trial.

### THIRD CLAIM FOR RELIEF

*Reliance/Promissory Estoppel*
*Against Mr. Pienaar, C5 Holdings, C5 Capital, and GroundTruth Investor*

149.    PeaceTech restates and re-alleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

150.    Mr. Pienaar, as a representative and owner of C5 Capital, C5 Holdings, and GroundTruth Investor, made numerous representations and commitments to PeaceTech about the investment in groundTruth. Mr. Pienaar was aware that PeaceTech was relying on those representations and commitments in good faith.

151.    Those representations included promises made to PeaceTech.

152.    In good faith reliance on these statements and promises, PeaceTech spent $267,082 on groundTruth staff salaries and overhead costs.  PeaceTech was reasonable in its reliance.

153.    In good faith reliance on the promised investment, PeaceTech also subleased space to groundTruth and is owed $90,359 in unpaid rent.

154.    PeaceTech was also owed $300,000 from a licensing agreement with groundTruth that PeaceTech would have received if the investment completed.

155.    By reason of the foregoing, Defendants are liable to PeaceTech for the amount of $657,441, plus punitive damages in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF

*Breach of the Implied Covenant of Good Faith and Fair Dealing*
*Against All Defendants*

156.    PeaceTech restates and re-alleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

157.    All Defendants owed PeaceTech an implied covenant of good faith and fair dealing based on the agreements described in this Complaint and otherwise.

158.    The implied covenant of good faith and fair dealing required the Defendants to honor the reasonable expectations of the Parties, to protect PeaceTech's right to receive the benefits due to it from Defendants, and to act in a fair and responsible manner.

159.    PeaceTech complied in good faith with all of its relevant obligations to Defendants.

160.    Defendants materially breached their obligations to PeaceTech as described in this Complaint.

161.    By reason of the foregoing, Defendants are liable to PeaceTech for the amount of at least $2,589,065, plus punitive damages in an amount to be determined at trial.

162.    PeaceTech's damages as a result of Defendants' breach of the implied covenant of good faith and fair dealing are continuing, and PeaceTech reserves the right to seek the full and exact amount of its damages at the time of trial.

### FIFTH CLAIM FOR RELIEF
*Fraud*
*Against All Defendants*

163.    PeaceTech restates and re-alleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

164.    Defendants made numerous false representations to PeaceTech related to the Gift Agreement, the Collaboration Agreement, and the GroundTruth Investment, including the statements described in this Amended Complaint in paragraphs 113–127.

165.    These false representations were made in reference to material facts.

166.    On information and belief, Defendants knew these representations were false when they made them, and Defendants nonetheless made them with intent to deceive.

167.    PeaceTech reasonably relied on Defendants' representations, which resulted in damages in the amount of at least $2,589,065.

168.    Defendants' conduct was willful and reckless.

169.    By reason of the foregoing, Defendants are liable to PeaceTech for the amount of at least $2,589,065, plus punitive damages in an amount to be determined at trial.

170.    PeaceTech's damages as a result of Defendants' fraud are continuing, and PeaceTech reserves the right to seek the full and exact amount of its damages at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, PeaceTech respectfully requests an order as follows:

a.    On the First Claim for Relief, awarding PeaceTech compensatory damages in the amount of $1,571,624 and prejudgment interest at the maximum legal rate, plus punitive damages for Defendants' willful conduct.

b.    On the Second Claim for Relief:

    1.    Compensatory damages in the amount of $360,000 plus additional damages incurred under the contract while the Collaboration Agreement remains in force;

    2.    Compensatory damages in the amount of 33% of any equity earned by C5 Accelerate under the Collaboration Agreement;

    3.    Prejudgment interest at the maximum legal rate; and

    4.    Punitive damages for Defendants' willful conduct.

c.    On the Third Claim for Relief, awarding PeaceTech reliance damages in the amount of $657,441, plus punitive damages for Defendants' willful conduct.

d.    On the Fourth Claim for Relief, compensatory damages at least $2,589,065 plus punitive damages for Defendants' willful conduct.

e.    On the Fifth Claim for Relief, damages in an amount to be determined at trial, including punitive damages for Defendants' willful conduct.

f.    Costs of suit and attorneys' fees.

g.      Such other relief as is just and proper, as this Court may allow and so rule.

## **<u>JURY TRIAL DEMAND</u>**

PeaceTech demands a trial by jury of all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.

Dated:  August 11, 2020                COVINGTON & BURLING LLP


By:  *<u>/s/ Benjamin J. Razi</u>*
Benjamin J. Razi (No. 475946)
Maura Sokol (*pro hac vice*)
850 Tenth Street, NW Washington,
DC 20001
Telephone: (202) 662-5463
brazi@cov.com

*Attorneys for Plaintiff*
*PeaceTech Lab, Inc.*

26

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on August 11, 2020, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: *<u>/s/ Benjamin J. Razi</u>*