**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PEACETECH LAB, INC., | ) | |
| 2301 Constitution Ave, NW | ) | |
| Washington, DC 20037 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:20-cv-922 (JDB) |
| v. | ) | |
| | ) | |
| C5 ACCELERATE LLC, PINARD | ) | |
| S.A.R.L., C5 HOLDINGS S.A.R.L., | ) | |
| GROUNDTRUTH INVESTOR LLC, | ) | |
| MR. ANDRÉ PIENAAR | ) | |
| Suite 460, 1701 Penn Avenue NW, | ) | |
| Washington, DC 20006 | ) | |
| | ) | |
| C5 CAPITAL LTD., | ) | |
| 7 Vigo Street, London, UK, W1S 3HF | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD.......................................................................................... 4

III.    THE CLAIMS...................................................................................................... 5

     a.      Fraud Cause of Action ............................................................................. 5

           i.      Failure to state a claim ................................................................ 7

     b.      Breach of the Implied Covenant of Good Faith and Fair Dealing Cause of Action................................................................................................... 12

           i.      Breach of the Implied Covenant Against Non-Parties............................ 12

           ii.     Vicarious Liability for Contractual Breaches ........................... 13

           iii.    Breach of the Implied Covenant Against Parties to the Agreement ......... 15

     c.      Reliance / Promissory Estoppel Claim ................................................... 15

     d.      Breach of Contract Claim (Gift Agreement) ......................................... 19

     e.      Breach of Contract Claim (Collaboration Agreement)............................ 21

IV.     PERSONAL JURISDICTION............................................................................ 23

     a.      No Personal Jurisdiction Over C5 Holdings........................................... 24

     b.      No Personal Jurisdiction Over GTI......................................................... 25

     c.      No Personal Jurisdiction Over C5 Capital ............................................. 25

     d.      No Personal Jurisdiction Over Mr. Pienaar ........................................... 26

     e.      No Personal Jurisdiction Over Pinard..................................................... 27

V.      CONCLUSION................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Livnat v. Palestinian Auth.*,
851 F.3d 45 (D.C. Cir. 2017)................................................................................24

*3E Mobile, LLC v. Glob. Cellular, Inc.*,
798 F. App'x 651 (D.C. Cir. 2020)........................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................5

*Blumenthal v. Drudge*,
992 F.Supp. 44 (D.D.C. 1998)................................................................................5

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002)................................................................................5

*Brunson v. Kalil & Co., Inc.*,
404 F.Supp.2d 221 (D.D.C. 2005)..........................................................................5

*Cagle v. Southern Bell Tel. & Tel. Co.*,
143 Ga. App. 603, 239 S.E.2d 182 (Ga. Ct. App. 1977).......................................23

*Doe v. George Washington Univ.*,
366 F. Supp. 3d 1 (D.D.C. 2018)..........................................................................20

*Elemary v. Phillipp Holzmann AG*,
533 F.Supp.2d 116 (D.D.C. 2008)..........................................................................5

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
529 F.3d 1087 (D.C. Cir. 2008)............................................................................24

*Granfield v. Catholic Univ. of America*,
530 F.2d 1035 (D.C. Cir. 1976)............................................................................19

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
199 F.3d 1343 (D.C. Cir. 2000)............................................................................25

*Houlahan v. Brown*,
979 F. Supp. 2d 86 (D.D.C. 2013)........................................................................27

*Jefferson v. Collins*,
905 F. Supp. 2d 269 (D.D.C. 2012).............................................................6, 8, 13, 16

*United States ex rel. Joseph v. Cannon*,
    642 F.2d 1373 (D.C. Cir. 1981) .................................................................6, 8

*Kelleher v. Dream Catcher, L.L.C.*,
    221 F. Supp. 3d 157 (D.D.C. 2016) ...........................................................14, 15

*Kopff v. Battaglia*,
    425 F.Supp.2d 76 (D.D.C. 2006) .....................................................................25

*Krispy Kreme Doughnut Corp. v. Advantage Grp. Enter., Inc.*,
    No. 1:08CV0092, 2008 WL 5216227 (M.D.N.C. Dec. 11, 2008)...................10, 11

*MAPizza, LLC v. At Pizza Ltd.*,
    334 F. Supp. 3d 95 (D.D.C. 2018) ...................................................................28

*Mero v. City Segway Tours of Washington DC, LLC*,
    826 F. Supp. 2d 100 (D.D.C. 2011) ...........................................................16, 17

*Metz v. BAE Sys. Tech. Sols. & Servs., Inc.*,
    979 F. Supp. 2d 26 (D.D.C. 2013), aff'd, 774 F.3d 18 (D.C. Cir. 2014).................14

*Montgomery v. D.C.*,
    No. CV 18-1928 (JDB), 2019 WL 3557369 (D.D.C. Aug. 5, 2019).........................5

*Murray v. Wells Fargo Home Mortg.*,
    953 A.2d 308 (D.C.2008) .................................................................................13

*Nat'l Sec. Counselors v. CIA*,
    811 F.3d 22 (D.C. Cir. 2016) ...........................................................................15

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000)...........................................................................15, 20, 22

*Osseiran v. Int'l Fin. Corp.*,
    498 F.Supp.2d 139 (D.D.C. 2007) ....................................................................19

*Matter of Reitz*,
    134 B.R. 131 (Bankr. D. Del. 1991) ................................................................12

*Second Amendment Found. v. U.S. Conf. of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001)..........................................................................24

*Steinberg v. Int'l Criminal Police Org.*,
    672 F.2d 927 (D.C. Cir. 1981)..........................................................................25

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ...........................................................................5

*Tsintolas Realty Co. v. Mendez,*
   984 A.2d 181 (D.C. 2009) ....................................................................................23

**Statutes**

DC Code § 13–423(a)(1) .......................................................................................28

DC Code § 13–423(a)(2) .......................................................................................28

DC CODE § 13-423 ...............................................................................................27

DC CODE § 13-423(a)(1) ................................................................................27, 28

DC CODE § 13-423(a)(2) .......................................................................................28

**Other Authorities**

F.R.C.P. Rule 8(a) ...................................................................................................2

Federal Rule of Civil Procedure 12(b)(1), (2), and (6) .........................................28

Federal Rule of Civil Procedure 12(b)(2) ..............................................................5

Federal Rules of Civil Procedure Rule 8(e)(1) ......................................................4

Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) ......................1

*Restatement (Second) of Contracts* § 33 cmt. a (1981) .......................................22

Rule 9(b) ..........................................................................................................2, 6, 8

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendants C5 Accelerate LLC ("Accelerate"), Pinard s.a.r.l. ("Pinard"), C5 Holdings s.a.r.l. ("Holdings"), GroundTruth Investor LLC ("GTI"), Mr. André Pienaar, and C5 Capital Ltd. ("Capital") submit this memorandum in support of their motion to dismiss the Amended Complaint filed by Plaintiff PeaceTech Lab Inc. ("the Complaint") and state as follows.

## I.    INTRODUCTION

As with the original Complaint, the Amended Complaint is not a straight-forward pleading designed to outline legal claims. Rather than assert serious legal claims against a party to a contract, the Amended Complaint seeks to bring claims for breach of contract against nonparties who have no liability for an alleged breach. As the Court will see below, the bases for vicarious liability for the breach of contract claims against the various defendants is at best suspect. The Plaintiff makes mere conclusory assertions that the entities are alter egos, without putting forth allegations to support such an assertion. The Plaintiff seeks to hold Mr. Pienaar liable for alleged breaches of an agreement to which he was not a party on the basis that he signed the agreement – even though his signature was as a representative of the party to the agreement and not in his personal capacity. Such abusive pleading tactics have no place in this Court.

The Plaintiff included a claim for breach of the implied covenant of good faith and fair dealing against **all Defendants** even though most of those Defendants have signed no agreements or contracts with the Plaintiff at all. As the Court is aware, a claim for a breach of the implied covenant of good faith and fair dealing cannot lie in the absence of a contractual obligation. But that quite obvious detail did not stop Plaintiff from making such claims against nonparties to those agreements.

1

In addition, the Plaintiff added in a fraud claim in the Amended Complaint. This fraud claim would not survive a challenge under the more liberal Rule 8(a) of the F.R.C.P., much less the Rule 9(b) requirement of pleading fraud with particularity. The Plaintiff does not even try to plead with particularity and instead makes conclusory assertions, in most cases merely parroting the language of the elements of fraud. The Plaintiff does cite some emails regarding this claim, but a review of those emails – which were included as exhibits to the first Complaint – show that the fraud claim is itself a fraud. Those emails show that the Defendant in question (C5 Capital) kept informing the Plaintiff of the requirements and conditions that would need to be satisfied before the deal could be closed.

As set out in the Defendants' motion to dismiss the first Complaint, the first Complaint alleged a claim that did not exist and failed to allege any facts with regard to several Defendants. Rather than correct the deficiencies of the first Complaint, the Plaintiff decided to double down by proffering confusing and opaque allegations designed to obscure the relevant issues. One example of this abusive pleading throughout the Amended Complaint is the grouping of "Defendants" when the allegation only relates to one of the Defendants. Paragraph 7 (emphasis added) of the Amended Complaint is just one instance of this repeated tactic in the Amended Complaint whereby the Plaintiff acknowledges that only one Defendant was a party to an agreement but nevertheless said that all Defendants have obligations under the agreement in question:

> 7.     Additionally, Mr. Pienaar signed a Term Sheet and closing documents with PeaceTech on behalf of another one of his companies, Defendant C5 Capital.  The Term Sheet and closing documents, along with other facts described in more detail below, obligated Defendants to make an investment of $3 million for preferred shares in a newly formed entity called groundTruth

This is not an isolated incident. The Amended Complaint routinely refers to "Defendants" when their own allegations show that the assertion has to only do with a particular Defendant. *See, e.g.*, Am. Compl., at ¶ 5 (referring to the Gift Agreement signed by Pinard, Plaintiff falsely asserted that "Defendants would receive certain benefits . . . .); Am. Compl., at ¶ 6 ("[a]nother of Mr. Pienaar's companies, C5 Accelerate, contracted with PeaceTech to collaborate on an accelerator for peace-related projects. Defendants also breached this agreement."); Am. Compl., at ¶ 7 (referring to the Term Sheet signed by C5 Capital, the Plaintiff falsely alleges that this "obligated Defendants to make an investment of $3 million . . . .").

Another dubious tactic in the Amended Complaint is Plaintiff's repeated use of conclusory assertions regarding factual allegations and legal claims. For example, the Plaintiff asserts that the corporate Defendants all acted as alter egos of Mr. Pienaar by stating this is in a conclusory manner rather than setting out any allegations that would support such a claim. Am. Compl., at ¶¶ 44, 55. Based on this conclusory sentence, the Plaintiff brings claims against non-parties to those agreements. Again, such tactics have no place in this Court.

Rule 8(e)(1) of the Federal Rules of Civil Procedure requires that "[e]ach averment of a pleading shall be simple, concise, and direct." Here, the Plaintiff violates both the letter and spirit of this Rule by grouping Defendants together, relying repeatedly on mere conclusory statements regarding the elements, and otherwise being obtuse.

The Court should reject this kind of game-playing by Plaintiff and dismiss the Amended Complaint for the reasons set out below.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). "Legal conclusions cast in the form of factual allegations" are insufficient. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (citation and internal quotation marks omitted). A court must accept factual allegations as true and grant the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *Id*. (citation and internal quotation marks omitted); *see also Montgomery v. D.C.*, No. CV 18-1928 (JDB), 2019 WL 3557369, at *4 (D.D.C. Aug. 5, 2019).

Under Federal Rule of Civil Procedure 12(b)(2), the Plaintiff has the burden to demonstrate that the Court has personal jurisdiction over each of the Defendants. Prior to jurisdictional discovery, the Plaintiff has to establish a prima facie showing of the pertinent jurisdictional facts to meet that burden. *See Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005); *Brunson v. Kalil & Co., Inc*., 404 F.Supp.2d 221, 226 (D.D.C. 2005). "Moreover, to establish a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility required by the district court. Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Mwani*, 417 F.3d at 7. Importantly, however, the Plaintiff has to allege "specific facts upon which personal jurisdiction may be based," *Blumenthal v. Drudge*, 992 F.Supp. 44, 53 (D.D.C. 1998), and cannot rely on conclusory allegations. *See Elemary v. Phillipp Holzmann AG*, 533 F.Supp.2d 116, 121 (D.D.C. 2008). The Court need not, however, accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citations omitted).

4

### III.     THE CLAIMS

Each of the claims below should be dismissed for Plaintiff's failure to state a claim. In addition, the purported fraud claim must be dismissed for failure to plead with particularity, as required by Rule 9(b), as well as for failure to state a claim. Moreover, this Court does not have personal jurisdiction with respect to several Defendants.

### a.     Fraud Cause of Action

The frivolous nature of much of the Amended Complaint can be best seen through the purported fraud claim that the Plaintiff brings against all defendants. Putting aside for the moment Plaintiff's failure to plead the fraud claim with particularity, the claim would fail likewise for failing to state a claim.

### i.     *Failure to plead fraud with particularity*

Rule 9(b) requires that "the circumstances constituting fraud or mistake ... be stated with particularity." Rule 9(b)'s particularity requirement serves several functions. It "discourage[s] the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude.... And because 'fraud' encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response." *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (footnotes omitted).

To satisfy Rule 9(b), "'the pleader [must] ... state the time, place and content of the false misrepresentations, the fact misrepresented ... [,] what was retained or given up as a consequence of the fraud,'" and "identify individuals allegedly involved in the fraud." *United States ex rel. Williams v. Martin–Baker Aircraft* *283 Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citations omitted). That is, as confirmed by the Court in *See also Jefferson v. Collins*, 905 F. Supp. 2d 269 (D.D.C. 2012), the Plaintiff has to plead with particularity:

(1) the **<u>time</u>** of the false misrepresentations;

(2) the **<u>place</u>** where the false misrepresentations were made;

(3) the **<u>content</u>** of the false misrepresentations;

(4) the **<u>fact</u>** misrepresented;

(5) what was **<u>retained or given up</u>** as a consequence of the fraud; and

(6) **<u>identify individuals</u>** allegedly involved in the fraud.

The Plaintiff satisfied none of these pleading standards for fraud in its Amended Complaint. Rather, in the fraud "Claim for Relief," the Plaintiff merely parrots in a conclusory fashion the elements of fraud in D.C., using on "information and belief" with two of the elements.

Nowhere in the Complaint does the Plaintiff satisfy this heightened pleading requirement. The only place in the Amended Complaint where the Plaintiff even attempts to satisfy one of the elements – the making of a false representation – are in paragraphs 115-122 in the Amended Complaint.

Paragraphs 115 and 116 refer to vague allegations that allegedly occurred "[o]n multiple occasions." These statements do not come close to satisfying Rule 9(b)'s heightened standard as set out above.

Paragraphs 117 to 122 refer to emails written by Mr. Pienaar. For example, the first email noted by Plaintiff states that "[w]e have an investment transaction that is ready for completion. Both parties are eager to complete expeditiously." Am. Compl., at ¶ 117. Although this statement at least has a date and time, there is nothing to explain the fact misrepresented or what was retained or given up, among other things. The other emails referred to in paragraphs 117-122 suffer from the same failure.

Even with respect to Mr. Pienaar, who is the only person or entity mentioned in paragraphs 117-122 as making statements, The Plaintiff recounting a few emails without explaining how any of those emails constitute fraud is precisely the type of abusive and frivolous behavior that Rule 9(b) is designed to prevent. *See, e.g., United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981). With respect to the other Defendants, no specific allegations of fraud appear to be in the Amended Complaint, other than purely conclusory assertions that lump all of the Defendants together. The Amended Complaint is bereft of any allegations, for example, as to allegedly fraudulent statements of C5 Holdings, Pinard, or any of the other Defendants.

Because the Plaintiff has failed to plead fraud with particularity, the fraud claim must be dismissed against all Defendants.

### i.    *Failure to state a claim*

Under D.C. law, the essential elements of common law fraud are: (1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. *Jefferson v. Collins*, 905 F. Supp. 2d 269 (D.D.C. 2012).

Here, as explained above, the Plaintiff failed to plead with particularity, requiring this Court to dismiss the fraud claim. But even under the most lenient pleading standard, the Plaintiff failed to plead sufficient facts to state a claim for fraud. We examine each element below:

### *(1) a false representation*

Although Plaintiff refers to some emails discussing a planned transaction, the Plaintiff never states why these statements about the planned transaction are false representations. In fact, the Plaintiff's limited excerpts from the emails in the Amended Complaint omit important context from these emails.

For example, the Amended Complaint refers to an excerpt from an email in which Mr. Pienaar, writing on behalf of C5 Capital, talks about both parties (i.e., the Plaintiff and C5 Capital) being eager to complete the transaction expeditiously. Am. Compl., at ¶ 117. But the Plaintiff does not include the rest of the email in which Mr. Pienaar discusses the necessary due diligence and problematic compliance issues that need to be evaluated before closing a deal. Compl. Exh. 6, at p. 1. That email cannot be read as some fraudulent statement – as hoped for by Plaintiff – and is instead an example of C5 Capital explaining issues with the planned closing.

In another example, the Amended Complaint excerpts a small part of an email in which Mr. Pienaar, again writing on behalf of C5 Capital, states that they are committed to help with funding. But, similarly, this email also discusses hurdles that will need to be overcome before the deal can be finalized, including obtaining "know your client" reports. Compl. Exh. 6, at p. 1.

The Amended Complaint fails to show or allege properly that any of the few statements mentioned in the Amended Complaint are false representations, and the context from the actual emails reveal the Plaintiff's efforts to take a line or two out of context. But, importantly, these statements were made by Mr. Pienaar on behalf of C5 Capital. No other statements are mentioned with respect to Mr. Pienaar in his personal capacity or any of the other Defendants. Consequently, even if those statements were false representations, which they are not, these statements would only address the fraud claim against C5 Capital and not the other Defendants.

### (2) in reference to a material fact

The Amended Complaint makes no specific allegations with regard to the materiality of the allegedly false statements, except to state in a conclusory sentence that they were material – as if to recite the element of the fraud claim.

The statements referenced cannot have been to a material fact in any event. The statements referred to a planned transaction that Plaintiff admits never in fact closed.[1] The statements therefore were about a transaction that did not have legal effect unless and until it closed and became a binding agreement.

### (3) made with knowledge of its falsity

Here, the Plaintiff once again recites this fraud element in a conclusory fashion without stating any facts or information to support this assertion. *See* Am. Compl., at ¶¶ 126, 166. The Plaintiff instead merely asserts, on "information and belief," that the Defendants knew these statements were false.

The Plaintiff cannot, in any event, succeed on this element. The emails demonstrate that the statements cannot be said to be false as the emails in which the statements are made discuss the requirements needed before the transaction would close. Aspirational statements, or contingent statements based on future actions such as due diligence, cannot be false if the event never materializes, much less made with knowledge of their falsity. In *Krispy Kreme Doughnut Corp. v. Advantage Grp. Enter., Inc*., No. 1:08CV0092, 2008 WL 5216227, at *5 (M.D.N.C. Dec. 11, 2008), the court granted a motion to dismiss a fraud claim because the statements outlined in the counterclaim were aspirational or contingent. The *Krispy Kreme Doughnut* court noted that:

---

[1] Am. Compl., at ¶ 95.

Defendant faces an additional problem because of the very aspirational nature of Plaintiff's representations. Here, Plaintiff never "promised" to contract. Rather, the intention was always expressed as being part of a work in progress with the hope and expectation of a contract, but nothing more. It has long been recognized that "a promise to perform must be definite to be enforced." *Landes*, 235 A.D.2d at 660, 651 N.Y.S.2d at 734. Plaintiff stated that it was its goal to enter into a contract with Defendant if, and only if, certain conditions were met. These included Defendant's "satisfactory completion of the refurbished line," "submission of the program for legal review," and approval of the franchisees. In its counterclaim, Defendant alleges that it met the first of these conditions, but it makes no claims that the others were fulfilled . . . Second, and more importantly, whether a condition precedent has been met is a contractual question. It does not implicate fraud unless the party asserting the claim also pleads, according to the requirements of Rule 9(b), that the opposing party never intended to meet the condition. As described above, Defendant has failed to meet this requirement with sufficient particularity.

*Id*. (emphasis added). Here, contrary to the excerpts from the Amended Complaint, the emails show that additional work was needed before the transaction could close. And nothing in the Amended Complaint demonstrates that C5 Capital never intended to close the transaction. To the contrary, as noted in the Amended Complaint, C5 Capital had caused interim funding to be provided while the parties tried to close the deal. *See, e.g*., Am. Compl, at ¶¶ 94, 97.

### *(4) with the intent to deceive*

Similar to the knowledge of the falsity, the Plaintiff has not pled with particularity how any of the Defendants intended to deceive, instead parroting the element in the Amended Complaint. *See* Am. Compl., at ¶¶ 126, 166.

The facts in the Amended Complaint, and the exhibits from the Complaint and Amended Complaint, show that actions needed to occur before the transaction would close, such as additional due diligence and a review of compliance and other issues. *See* Compl. Exhs. 6-7.

10

In addition, the Amended Complaint lacks facts that would demonstrate scienter by C5 Capital. "The plaintiff must come forward with some affirmative evidence to demonstrate scienter, *i.e.*, an intent to deceive and cannot rely solely on the circumstances surrounding the transaction." *Matter of Reitz*, 134 B.R. 131, 133 (Bankr. D. Del. 1991). The Amended Complaint shows that C5 wanted to close the transaction. *See* Compl. Exhs. 6-7.

### (5) action is taken in reliance upon the representation

The Amended Complaint fails to connect the allegedly fraudulent statements by C5 Capital to actions taken by Plaintiffs in reliance on those statements. To be sure, Plaintiff states in a conclusory manner that it relied on statements. But the Amended Complaint fails to state with particularity what actions Plaintiff took in reliance on the allegedly false representations.

The Plaintiff asserts that it subleased part of its space to groundTruth global, Inc ("GTG") in expectation that the transaction would close. Am. Compl., at ¶¶ 98-99. But the Amended Complaint makes clear that GTG is an entity created and owned by the Plaintiff and that the Plaintiff was seeking investments for GTG.[2] Am. Compl., at ¶¶ 81-82. The Plaintiff is essentially asserting that it leased space in its own office to itself in reliance on statements by C5 Capital that it wanted to close the transaction. This is illogical and cannot be the basis for such reliance. Even so, Plaintiff is alleging damages of $2.6 million based on reliance on false representations, which is unexplained by the purported reliance on the sublease.

Plaintiff's failure to satisfy any the elements for fraud should result in dismissal of the claim for failure to state a claim. Here, the Plaintiff has not satisfied any of the elements. And, moreover, the Plaintiff only makes assertions regarding false representations with respect to

---

[2] groundTruth Global is a different entity than GroundTruth Investor, LLC, which is a Defendant in this proceeding.

statements made by Mr. Pienaar in his capacity for C5 Capital. Accordingly, the fraud claim should be dismissed.

### b. Breach of the Implied Covenant of Good Faith and Fair Dealing Cause of Action

The Plaintiff has failed to state a claim with respect to a breach of the implied covenant of good faith and fair dealing.

In D.C.,[3] "'all contracts contain an implied duty of good faith and fair dealing.'" *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 321 (D.C.2008) (citation and alteration omitted). "[A] party to a contract may be liable for a breach of the duty of good faith and fair dealing if the party 'evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party.'" *Id.* (citation and alteration omitted). *See also Jefferson v. Collins*, 905 F. Supp. 2d 269, 278 (D.D.C. 2012).

#### i. Breach of the Implied Covenant Against Non-Parties

The *sine qua non* of a breach of implied duty of good faith and fair dealing is that the parties have a contract that gives rise to obligations to both parties. Put simply, a "claim for breach of the implied covenant of good faith and fair dealing cannot exist in the absence of a contractual relationship." *Busby v. Capital One*, N.A., 772 F.Supp.2d 268, 284 (D.D.C. 2011).

The Plaintiff brought the good faith and fair dealing claim **against all Defendants**. But the only two agreements at issue in this case are the Gift Agreement and the Collaboration Agreement in which Pinard and C5 Accelerate are the respective parties. Accordingly, any claim of a breach of implied duty of good faith must fail against all the other defendants. *See, e.g.,*

---

[3] The Plaintiff has not provided analysis as to which law would apply. Without prejudice to what law is relevant, the Defendants analyze the claims in the Amended Complaint under D.C. law.

*Metz v. BAE Sys. Tech. Sols. & Servs., Inc.*, 979 F. Supp. 2d 26, 32 (D.D.C. 2013), aff'd, 774 F.3d 18 (D.C. Cir. 2014) (dismissing breach of implied covenant claim against non-parties).

### ii.  *Vicarious Liability for Contractual Breaches*

Knowing that claims cannot be brought against non-parties, the Plaintiff makes conclusory assertions in the Amended Complaint that appear to be designed to support liability for breaches of the Gift Agreement and the Collaboration Agreement, as well as other claims.[4]

As an initial matter, the assertions by Plaintiff regarding vicarious liability are almost exclusively bare and conclusory allegations. In addition, the Plaintiff makes little effort to allege facts for individual defendants and instead impermissibly groups Defendants together.

An example of this conclusory pleading is with respect to alter ego. The Plaintiff appears to make a one sentence alter ego claim when it asserts that on "information and belief, the corporate Defendants acted as alter egos of Mr. Pienaar." Am. Compl., at ¶ 49. Alter ego claims are fact intensive and cannot be pled in a conclusory fashion. *Kelleher v. Dream Catcher, L.L.C.,* 221 F. Supp. 3d 157, 158 (D.D.C. 2016). In *Kelleher*, Judge Mehta dismissed an alter ego claim for failure to state claim because the Plaintiff had not alleged sufficient facts to withstand the motion to dismiss. *Id*., at 159. Judge Mehta noted that the *Kelleher* plaintiff alleged that the defendants shared the same address, and that:

> [u]pon information and belief"—that "there is a unity of ownership and interest"; that the defendant "is and at all relevant times has been undercapitalized"; that "there has been extensive comingling and intermingling of assets between [the corporate and] the individual defendants"; that the defendant "has failed to observe corporate formalities"; and that "the individual defendants have utilized the company form . . . to perpetrate wrongful and fraudulent conduct . . . .

---

[4] The purported vicarious liability theories, such as alter ego and agency, are analyzed here. But this same analysis applies to all other claims as the same conclusory allegations of vicarious liability appear to be the basis for other claims as well.

*Kelleher v. Dream Catcher, L.L.C.*, 221 F. Supp. 3d 157, 159 (D.D.C. 2016). In dismissing the alter ego claim, Judge Mehta noted that:

> these allegations are no more than "[t]hreadbare recitals," of the factors courts must consider in deciding whether the corporation is the alter ego of its shareholders . . . "supported by mere conclusory statements" . . . . Such allegations are not entitled to a presumption of truth and therefore do not suffice to establish a plausible claim of alter ego liability.

*Id.* In this case, the Plaintiff did not even assert threadbare recitals regarding alter ego, unlike *Kelleher*. The Court should not countenance such conclusory allegations here.

The Plaintiff also seems to assert that all or some of the Defendants should be liable because they are allegedly all owned by Mr. Pienaar and are somehow connected to each other, referring at one point to the corporate Defendants as "closely held entities." *See* Am. Compl., at ¶¶ 44-58. Such allegations, even if true, are not sufficient to justify an alter ego claim or some other liability theory for a non-party. The D.C. Court of Appeals has held that "[a] corporation is 'viewed as a distinct entity, even when it is wholly owned by a single individual,'" and that "the law takes seriously the formal line between a corporation and a natural person, even when the corporation is, in effect, a one-person firm." *Nat'l Sec. Counselors v. CIA*, 811 F.3d 22, 31 (D.C. Cir. 2016) (*quoting Quinn v. Butz*, 510 F.2d 743, 757 (D.C. Cir. 1975) (footnote omitted)). Moreover, the Supreme Court has noted that "[o]ne-person corporations are authorized by law and should not lightly be labeled a sham." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 471 (2000). None of the assertions made by the Plaintiff with regard to connections between companies provide the basis for the vicarious liability of any of the Defendants, including Mr. Pienaar.

Consequently, the Court should dismiss the claim for breach of the implied covenant of good faith and fair dealing against the non-signatory Defendants.

### iii.        Breach of the Implied Covenant Against Parties to the Agreement

As stated above, a party can breach the implied covenant or good faith by evading the spirit of the contract, willfully rendering imperfect performance, or interfering with performance by the other party. *Jefferson v. Collins*, 905 F. Supp. 2d 269, 278 (D.D.C. 2012).

Courts will dismiss claims for breach of the implied covenant where a plaintiff makes conclusory allegations that the covenant has been breached. In dismissing such a claim, Judge Jackson held that:

> The amended complaint merely states that the implied covenant of good faith is inherent in every contract and that defendants breached it. Am. Compl. ¶¶ 30, 33, 41. This conclusory allegation, which does not specify how defendants evaded the spirit of the contract, willfully rendered imperfect performance, or interfered with performance by plaintiff, does not suffice to state a claim under the standard set forth in Twombly and Iqbal.

*Mero v. City Segway Tours of Washington DC, LLC*, 826 F. Supp. 2d 100, 107 (D.D.C. 2011).

With respect to Pinard and C5 Accelerate, the Amended Complaint does not allege facts to support the actual elements of the claim. Although the Plaintiff asserts that Pinard and C5 Accelerate breached the obligations in the respective Agreement, which these Defendants deny, none of these allegations have to do with the elements for a breach of the implied covenant. As such, this claim should be dismissed.

### c.        Reliance / Promissory Estoppel Claim

The Amended Complaint includes a cause of action listed as "Reliance/Promissory Estoppel" against Mr. Pienaar, C5 Holdings, C5 Capital, and GTI. The Amended Complaint does not state what law governs its third claim, which is a fatal flaw in itself as it is not clear that Washington, D.C. law would even govern such a claim given that neither Mr. Pienaar nor the corporate entities reside in D.C. Nevertheless, assuming, *arguendo,* that the purported "Reliance"

claim arises under the laws of Washington, D.C., no such equitable relief or claim appears to exist in this forum. Thus, there is no such claim as that advanced by the Plaintiff with respect to "Reliance." And this purported claim should be dismissed *cadit quaestio*.

With respect to a claim of promissory estoppel, this claim should likewise be dismissed. As an initial matter, this claim is against C5 Holdings, C5 Capital, and GTI based on the mere assertion that Mr. Pienaar is a representative and owner of those entities. This is a not a sufficient basis to survive a motion to dismiss with respect to this entity. Of course, the Plaintiff also brought this claim against Mr. Pienaar. So, the Plaintiff is apparently asserting that the alleged promises were purportedly made by Mr. Pienaar on behalf of himself personally, as well as on behalf of three separate entities, all at the same time. This is farcical, and false, as explained below. But such a pleading style seeks to make a mockery of this proceeding.

The emails from Mr. Pienaar that purportedly form the basis of the promissory estoppel claim are examined below. Putting aside the substance of the emails for a moment, the emails were sent by Mr. Pienaar from his C5 Capital account. In one email, for example, Mr. Pienaar writes at the beginning of the email that he is summarizing "C5's position." Compl. Exh. 6, at p. 1. These facts alone put the lie to Plaintiff's conclusory assertion that Mr. Pienaar was somehow acting for himself and three entities at the same time. *Cf. Mero v. City Segway Tours of Washington DC, LLC*, 826 F. Supp. 2d 100, 107 (D.D.C. 2011).

The substance of the emails upon which this claim appears to be based confirm that Mr. Pienaar was speaking on behalf of C5 Capital and not in any personal capacity:

- Email from Mr. Pienaar from his C5 Capital account on August 8, 2018, quoted below in full:

> "Dear George
>
> "We are working with the investor families to complete the transaction as quickly as possible within days. It is August and several people are away on holiday which always slow things down somewhat.
>
> "We are waiting for the final KYC documents from the investors. Our compliance requires us to send you the full KYC package for sign off as the next step.
>
> "We are committed to help GTG with funding -as demonstrated- until completion. I don't see why staff would be laid off if funding is available. What further funding does GTG need this week?
>
> "Best wishes
> Andre"[5]

- September 27, 2018 email from Mr. Pienaar in which Mr. Pienaar made clear that "C5 worked for the last 3 months . . . to put together a seed round" and that "C5 will participate in the round but not be the lead investor." Complaint Exh. 9, at p. 2.

- October 12, 2018 email from Mr. Pienaar's C5 Capital account stating that C5 Capital was waiting for funds from a co-investor. Complaint, Exh. 10, at p. 1.

- October 16, 2018 email from Mr. Pienaar's C5 Capital account in which he states that "**we have invested** 300k on this basis" and expressing his concern that groundTruth global ("GTG") would not avail itself of the financing from C5 Capital. Complaint Exh. 11, at p. 6 (emphasis added). As laid out in the first Complaint, C5 funded $300,000 in groundTruth Global through SAFE advances made by corporate entities, not by Mr. Pienaar personally. First Complaint, at ¶¶ 36 and 39.

That is it. These emails appear to be the entire basis for the Plaintiff's Promissory

Estoppel claim, other than a few conclusory assertions. As the Court reviews these emails in

connection with this Motion to Dismiss, the Court should note Mr. Pienaar's use of the C5

Capital email address, rather than some personal email address. Importantly, the Court should

also note Mr. Pienaar's use of the word "we" when describing potential investments or possible

---

[5] Complaint, Exh. 7.

funding. Additionally, as shown in the emails, the potential funding for GTG was not coming

from Mr. Pienaar personally but rather from business entities or other investors.

Putting aside the flawed conclusory allegations, the actual statements at issue do not

satisfy the elements of promissory estoppel, as is evidenced by the emails from C5 Capital. To

survive a motion to dismiss a promissory estoppel claim, the plaintiff must establish "(1) the

existence of a promise, (2) that the promise reasonably induced reliance on it, and (3) that the

promisee relied on the promise to his [or her] detriment." *Osseiran v. Int'l Fin. Corp.*, 498

F.Supp.2d 139, 147 (D.D.C. 2007) (citing *Daisley v. Riggs Bank*, 372 F.Supp.2d 61, 71 (D.D.C.

2005)); *see also Granfield v. Catholic Univ. of America*, 530 F.2d 1035, 1042 (D.C. Cir. 1976)

Not only do the exhibited emails show that the Plaintiff's promissory estoppel claim must

be dismissed, but the emails also show that the assertions made in the Complaint and Amended

Complaint are not correct. In paragraph 153 of the Amended Complaint, the Plaintiff asserts that

it subleased space (to its own affiliated entity) because of a "promised investment." But the

email that purportedly supports this (see Compl., ¶ 40), found at Compl. Exh. 7, does not make

such a promise. Rather the email states (1) that it was August and people are away on holiday,

(2) that C5 Capital was waiting "for the final KYC documents from the investors," which were

needed as a next step, and (3) that C5 Capital was willing to help with interim funding, which the

Amended Complaint said occurred. Complaint Exh. 7, at p. 2; see also Am. Compl., at ¶ 97.

Although the Court generally accepts allegations in a Complaint as true, the Court need not do so

when an exhibit to a complaint contradicts the allegation, as Complaint Exh 7 does here. So, the

documents do not support a claim that anyone, much less that C5 Capital, made actionable

promises upon which the Plaintiff relied.

### d.      Breach of Contract Claim (Gift Agreement)

The Amended Complaint makes a claim for relief for "breach of contract" against Pinard and Mr. Pienaar relating to the Gift Agreement. Am. Compl., at ¶¶ 131-139. To state a claim for breach of contract under Washington, D.C. law,[6] a plaintiff must allege: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by that breach. *See Doe v. George Washington Univ.*, 366 F. Supp. 3d 1 (D.D.C. 2018).

As an initial matter, the Plaintiff has stated no basis to bring this claim against Mr. Pienaar personally. Mr. Pienaar is not a party to the Gift Agreement. Am. Compl. Exh. 1, at p. 1. The Gift Agreement contains no obligations for Mr. Pienaar. *See id generally*. Although Mr. Pienaar signed the Gift Agreement, he signed it for Pinard and not in his personal capacity. *See id*. None of this even comes close to being a basis to hold Mr. Pienaar liable for breach of contract.

The Plaintiff asserts on information and belief that Pinard is Mr. Pienaar's company. This appears to also be the basis for the Plaintiff to bring the breach of contract claim against Mr. Pienaar personally. Obviously, the ownership of a company is not a sufficient basis to hold a non-party liable for a breach of contract. See, e.g., *Nelson v. Adams USA, Inc*., 529 U.S. 460, 471 (2000) (stating that one owner corporations are authorized by law and should not lightly be labeled a sham).

---

[6] The Complaint does not state which law should govern the Gift Agreement. Without prejudice to its position regarding the governing law, Pinard here examines the alleged breach of contract under the laws of Washington, D.C.

With respect to Pinard, the Gift Agreement in question does not satisfy the elements of an enforceable contract under Washington, D.C. law.  Accordingly, as the Gift Agreement is not enforceable, the breach of contract claim against Pinard should be dismissed.

As an initial matter, the "Gift Agreement" states explicitly that the amount "pledged" is a gift. Am. Compl. Exh. 1, at p. 1. The Gift Agreement repeatedly refers to the gift from Pinard as just that: a gift. *See id*. Gifts are not enforceable contracts as, among things, they lack obligations or duties of the parties, consideration, and potentially other legally necessary elements.

In addition, the Gift Agreement is not an enforceable contract as it does not obligate the Plaintiff to do anything other than to agree to something in the future, subject to approval of a third party. The Gift Agreement states that Pinard "is hereby granted the sole and exclusive naming rights to the space in the lab. . . ." Am. Compl. Exh. 1, at ¶ 4. This, at first, would seem to represent a benefit to Pinard or, perhaps, an obligation of the Plaintiff. But it is neither. The very next sentence states that Pinard and the Plaintiff "agree that the facility will be named in honor of a person to be mutually agreed," and that the United States Institute of Peace has to approve the name. *Id*. So the purported obligation of the Plaintiff is not fixed and is instead subject to a further agreement. And even then this further agreement is subject to the approval of another party. Thus, the Gift Agreement contains illusory and unenforceable promises on both sides: *i.e*., a planned gift is not an enforceable obligation and a statement that the parties will later agree is likewise not an enforceable obligation.

The Gift Agreement is likewise not enforceable because the essential terms have not been agreed. To the extent that the Gift Agreement is a contract, the naming rights by Pinard would be an essential term of the agreement. Yet that term regarding the naming rights is uncertain and unenforceable because it merely states that the parties **will agree on the name at some point in**

**the future**. Thus, further agreement is required with respect to an essential term in the contract, rendering such a contract unenforceable. In *3E Mobile, LLC v. Glob. Cellular, Inc*., 798 F. App'x 651, 652 (D.C. Cir. 2020), the D.C. Circuit (applying Pennsylvania law) held that a term in the contract "was an essential but undefined term of the manufacturing agreement, and the contract was therefore void." *See also Restatement (Second) of Contracts* § 33 cmt. a (1981) ("If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract."). Here, the essential term is uncertain as it requires further agreement and approval by one of the signatories to the Gift Agreement.

  e.  **Breach of Contract Claim (Collaboration Agreement)**

  As it did with the Gift Agreement, the Plaintiff asserted claims against non-parties for alleged breaches of the Collaboration Agreement. In addition to a breach claim against C5 Accelerate, the party to the Collaboration Agreement, the Plaintiff brought breach claims against Mr. Pienaar, C5 Holdings, and C5 Capital.

  As it has done repeatedly, the Plaintiff makes conclusory assertions with respect to alleged liability of Mr. Pienaar, C5 Holdings, and C5 Capital. With respect to Mr. Pienaar, the Plaintiff appears to assert that Mr. Pienaar is bound by the Collaboration Agreement because he signed it and that he owns C5 Accelerate. Am. Compl., at ¶¶ 141-142. It is clear from the Collaboration Agreement that Mr. Pienaar was signing on behalf of C5 Accelerate. Am. Compl. Exh. 2, at p. 6. In addition, as stated previously, the fact of ownership of a corporation, even a closely held corporation, does not establish vicarious liability for any breach of a contract. See, e.g., *Nelson v. Adams USA, Inc*., 529 U.S. 460, 471 (2000).

  Plaintiff's only allegation – it appears – as to why C5 Holdings and C5 Capital should be bound by the Collaboration Agreement is the conclusory assertion that C5 Accelerate was acting as an agent for C5 Holdings and C5 Capital. Such an allegation needs to be pled with the basis

for the assertion. Here, there is nothing to support this assertion. And, to the contrary, the Collaboration Agreement says nothing about any agency or obligations of C5 Holding and C5 Capital. The agency argument appears to be pure fiction.

The claim against C5 Accelerate should likewise be dismissed for failure to state a claim as the Plaintiff has not demonstrated any harm with respect to an alleged breach and, as shown by the Complaint, the Plaintiff has received only benefits.

"It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira*, 107 F.3d at 473 (citing *Brock v. Robbins*, 830 F.2d 640, 647 (7th Cir. 1987)). "[M]ere breach without proof of monetary loss is *injuria absque damno*," *Cagle v. Southern Bell Tel. & Tel. Co*., 143 Ga. App. 603, 604, 239 S.E.2d 182, 183 (Ga. Ct. App. 1977) *i.e.*, "a wrong which results in no loss or damage, and thus cannot sustain an action." *Mira*, 107 F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)). *See also Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (citing the above).

In *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009), the D.C. Court of Appeals held that the breach of a settlement agreement by its disclosure was not a valid claim because the plaintiff did not suffer loss or damage. The D.C. Court of Appeals noted that damage was required to have an actionable breach of contract claim. *See id*.

Here, the Complaint and Collaboration Agreement demonstrate that the Plaintiff suffered no damage or harm. The Collaboration Agreement provides for C5 Accelerate to make an annual contribution of $160,000 "to be applied by PeaceTech to its staff costs in support of the work of [C5 Accelerate]." Complaint Exh. 2, at ¶ 4(c). Thus, the Collaboration Agreement makes clear that these contributions are for work done for C5 Accelerate, rather than money paid to the Plaintiff for its own separate work or mission. The Complaint further admits that C5 Accelerate

22

made a payment of $160,000 in connection with the Collaboration Agreement.  Complaint, at ¶ 23. This payment then would be for work that the Plaintiff would do in support of C5 Accelerate. Yet the Complaint provides no allegation that the Plaintiff incurred any cost at all in supporting C5 Accelerate, or that the Plaintiff did anything to support C5 Accelerate. So, the Plaintiff received $160,000 from C5 Accelerate and incurred no obligation or expense with respect to this payment. So, far from being damaged or harmed, the Plaintiff has been unjustly enriched by C5 Accelerate's payment. Because the Plaintiff did not suffer any damage, the claim should be dismissed.

## IV.  PERSONAL JURISDICTION

This Court lacks personal jurisdiction with respect to several Defendants.

The plaintiff bears the burden "to 'make a prima facie showing of the pertinent jurisdictional facts' to survive a motion to dismiss for lack of personal jurisdiction*." Livnat v. Palestinian Auth*., 851 F.3d 45, 56-57 (D.C. Cir. 2017) (quoting *First Chi. Int'l v. United Exch. Co*., 836 F.2d 1375, 1378 (D.C. Cir. 1988)). "'Conclusory statements' or a 'bare allegation of conspiracy or agency' do not satisfy this burden." *Id*. at 57 (quoting *First Chi. Int'l*, 836 F.2d at 1378-79). Rather, the plaintiff "must allege specific acts connecting [each] defendant with the forum." *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (quoting *First Chi. Int'l*, 836 F.2d at 1378). The Court need not accept inferences unsupported by the facts. *Id*.

The overriding issue with the Plaintiff's personal jurisdiction assertions is that Plaintiff does not state or indicate whether it is believes the Court has general or specific jurisdiction over each of the Defendants. In addition, when relying on D.C.'s Long Arm Statute for specific jurisdiction, which the Plaintiff may be doing here, the plaintiff must identify which prong of the long-arm statute she is relying on as the basis for jurisdiction. *See FC Inv. Grp. LC v. IFX*

23

*Markets, Ltd.*, 529 F.3d 1087, 1095-96 (D.C. Cir. 2008). Here, the Plaintiff did not identify the prong it asserts is the basis for Long Arm Jurisdiction. As such, the case must be dismissed for lack of personal jurisdiction.

The Plaintiff in the Amended Complaint includes some allegations with respect to personal jurisdiction. Those allegations are unproven and are, in large part, incorrect or false. These mere allegations should not suffice to establish jurisdiction with regard to certain of the Defendants, as explained below.

      **a.**    **No Personal Jurisdiction Over C5 Holdings**

This Court does not have personal jurisdiction over C5 Holdings. The Court may exercise personal jurisdiction over a non-resident defendant either by (1) finding general jurisdiction over the defendant, thereby allowing the court to entertain a suit against a defendant "without regard to the claim's relationship vel non to the defendant's forum-linked activity," or (2) finding specific jurisdiction based on "acts of a defendant that touch and concern the forum." *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981); *accord Kopff v. Battaglia*, 425 F.Supp.2d 76, 81 (D.D.C. 2006). "A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (*citing United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)). C5 Holdings is a Luxembourg company located in Luxembourg. Am. Compl., at ¶ 13. It is not a party to any of the agreements in question. Other than conclusory assertions, the Complaint states no facts that could show that this Court has personal jurisdiction over C5 Holdings with respect to general jurisdiction or specific jurisdiction.

The Plaintiff asserts that representatives from C5 Holdings came to DC or wrote emails or made phone calls. C5 Holding rejects this unproven assertion. To the extent that Plaintiff

maintains this assertion, which is false, the Plaintiff is required to submits facts and evidence to support such jurisdiction.

### b.    No Personal Jurisdiction Over GTI

GTI is a Delaware company. Am. Compl., at ¶ 14. Although the Plaintiff's allegations regarding personal jurisdiction with respect to GTI is not clear, a potential investment that never occurred is not sufficient to establish personal jurisdiction in DC over a Delaware corporation. The Plaintiff has alleged no specific facts with regard to personal jurisdiction over GTI; rather, the Plaintiff states vaguely that Mr. Pienaar "contacted PeaceTech in the District of Columbia through emails and phone calls to discuss the investment." Am. Compl., at ¶ 36. General assertions that a defendant made phone calls and sent emails to DC does not suffice to establish jurisdiction.

Even had GTI representatives attended meetings in DC on behalf of GTI, which they did not, this would not be a sufficient basis for personal jurisdiction. But, in any event, such facts would need to be proven, which they have not.

### c.    No Personal Jurisdiction Over C5 Capital

In addition, this Court does not have personal jurisdiction over C5 Capital, which is a U.K. company. The facts alleged in the Amended Complaint are that C5 Capital was **planning** to invest in an entity with the Plaintiff. Am. Complaint, at ¶ 37. But that this investment never happened and never closed. Am. Complaint, at ¶ 37.

The Term Sheet exhibited as Am. Compl. Exh. 3 likewise cannot be a basis for personal jurisdiction. For one, the Term Sheet is clear that it is for "negotiation purposes only," is "non-binding," and "intended solely as a summary of the terms that are currently proposed by the parties . . . ." Am. Compl. Exh. 4, at p. 1. In addition, the Term Sheet is governed by English

law, demonstrating that the parties did not intend this Term Sheet to give rise to jurisdiction over C5 Capital in Washington, D.C. And Plaintiff has not alleged anything to the contrary.

The Plaintiff asserts that C5 Capital attended presentations in D.C., and sent emails and made phone calls to D.C.  But these allegations, even if true, and which would need to be proven, do not rise to the level necessary under the Long Arm Statute for this Court to have jurisdiction. *See, e.g., Houlahan v. Brown*, 979 F. Supp. 2d 86 (D.D.C. 2013).

      **d.**        **No Personal Jurisdiction Over Mr. Pienaar**

In addition, the Amended Complaint lacks facts and proof to support that this Court has personal jurisdiction over Mr. Pienaar, who is a UK national and resident. The Amended Complaint does not demonstrate that Mr. Pienaar was working on his own behalf, rather than for C5 Capital or C5 Accelerate. Thus, there are no facts to show that this Court has personal jurisdiction over Mr. Pienaar personally, rather than the entities in question. This is important because, to the extent the Plaintiff is asserting that the Court has specific jurisdiction over Mr. Pienaar, the facts to prove such jurisdiction would have to show that Mr. Pienaar's alleged contacts with D.C. were in his personal capacity, and not on behalf of an entity.

In addition, with respect to the allegations in the Amended Complaint that involve Mr. Pienaar, the allegations are that he sent emails, made phone calls and attended a presentation for a potential deal that ultimately never closed. Sending emails to an entity in Washington, D.C. from a nonresident defendant cannot be the basis for personal jurisdiction before this Court. *See, e.g., Houlahan v. Brown*, 979 F. Supp. 2d 86 (D.D.C. 2013).

The Plaintiff asserts that Mr. Pienaar has a condo in Washington, D.C. and that he has an office in Washington, D.C. But these facts are not true and remain unproven. Unlike legal claims, the Court need not accept as true allegations regarding personal jurisdiction in the Amended Complaint.

Although the Plaintiff has not alleged sufficient proven facts with respect to jurisdiction, the facts show that the requirements of D.C.'s long-arm statute for personal jurisdiction have not been met here. *See generally* DC CODE § 13-423. None of the allegations in the Amended Complaint show that Mr. Pienaar transacted business in Washington, D.C. (DC CODE § 13-423(a)(1)) or contracted for supply services in Washington, D.C. (DC CODE § 13-423(a)(2)). Without a showing of general jurisdiction, which has not been made, and without allegations to show that the long-arm statute has been met, which it has not, this Court does not have personal jurisdiction over Mr. Pienaar.

### e.      No Personal Jurisdiction Over Pinard

The Amended Complaint must also be dismissed with respect to Pinard as it fails to assert facts demonstrating this Court's personal jurisdiction over Pinard. The Amended Complaint provides no facts to support general jurisdiction over Pinard, a Luxembourg company. With respect to Washington, D.C.'s long-arm statute, none of the bases for jurisdiction apply with respect to Pinard. The Complaint makes no allegation that Pinard is transacting business in Washington, D.C. See DC Code § 13–423(a)(1). The Gift Agreement is with respect to a proposed donation, not a business transaction. Courts in D.C. have declined to extend § 13-423(a)(1) to conduct that is not meaningfully "business-related." *See, e.g., MAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 111 (D.D.C. 2018). And a donation is charitable, not business related.

In any event, no actions were taken by Pinard, according to the Complaint, with respect to the planned gift. Likewise, there is nothing in the Complaint demonstrating that Pinard was contracting to supply services in Washington, D.C. See DC Code § 13–423(a)(2). Thus, no basis exists to invoke Washington, D.C.'s long-arm statute with respect to Pinard.

## V.      CONCLUSION

For the reasons set forth herein, this Court should dismiss Plaintiff's Complaint entirely

pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (6), for lack of personal

jurisdiction, subject matter jurisdiction, and/or the Plaintiff's failure to state a claim upon which

relief can be granted.

Respectfully Submitted,

By: */s/ Steven K. Davidson*

STEPTOE & JOHNSON
1330 Connecticut Avenue NW
Washington, DC 20036
Tel: (202) 429-3000
Fax: (202) 429-3902
sdavidson@steptoe.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 25, 2020, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Steven K. Davidson*
        Steven K. Davidson