**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PEACETECH LAB, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:20-cv-922-JDB |
| | ) | |
| C5 ACCELERATE LLC, PINARD | ) | |
| S.A.R.L., C5 HOLDINGS S.A.R.L., | ) | **JURY TRIAL DEMANDED** |
| GROUNDTRUTH INVESTOR LLC, MR. | ) | |
| ANDRE PIENAAR, | ) | |
| C5 CAPITAL LTD. | ) | |
| | ) | |
| Defendants. | | |

**PEACETECH'S CORRECTED MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**<u>MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTS ALLEGED IN AMENDED COMPLAINT ......................................................... 3

    A.  Defendants Breached Three Agreements........................................................... 3

    B.  Mr. Pienaar Acted through the Other Defendants, His Closely Related Companies. ........ 4

    C.  Defendants' Significant Suit-Related and Other Contacts with This District. .................. 5

    D.  Defendants' Repeated False Statements and Promises to PeaceTech. .............................. 6

LEGAL STANDARD........................................................................................................... 7

ARGUMENT ....................................................................................................................... 7

I.    THIS COURT HAS PERSONAL JURISDICTION OVER EACH DEFENDANT............... 7

    A.  This Court Has Personal Jurisdiction over Andre Pienaar................................. 8

    B.  This Court Has Personal Jurisdiction over Pinard. ......................................... 10

    C.  This Court Has Personal Jurisdiction over C5 Capital. ................................... 11

    D.  This Court Has Personal Jurisdiction over C5 Holdings. .................................. 12

    E.  This Court Has Personal Jurisdiction over GTI. .............................................. 12

II.    THE AMENDED COMPLAINT IS MORE THAN SUFFICIENT TO SURVIVE DEFENDANTS' RULE 12(b)(6) CHALLENGE. ................................................. 13

    A.  PeaceTech Has Stated a Claim for Breach of the Gift Agreement. .................................. 13

    B.  PeaceTech Has Stated a Claim for Breach of the Collaboration Agreement. .................. 16

    C.  PeaceTech Has Stated a Claim for Promissory Estoppel.................................. 16

    D.  Defendants Breached the Implied Covenant of Good Faith and Fair Dealing. ............... 19

    E.  PeaceTech Has Stated a Claim for Fraud. ....................................................... 20

    F.  PeaceTech's Allegations Are Sufficient to Plead Vicarious Liability Under a Veil-Piercing Theory.......................................................................................... 22

CONCLUSION................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affordable Elegance Travel, Inc. v. Worldspan, L.P.,*
    774 A.2d 320 (D.C. 2001) ...................................................................................15

*Allegheny Coll. v. Nat'l Chautauqua Cty. Bank,*
    159 N.E. 173 (N.Y. 1927)....................................................................................14

*Appalachian Bible Coll. v. Foremost Indus.,*
    2018 WL 1811334 (M.D. Pa. Apr. 17, 2018) .....................................................14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................................7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................................7

*Berwyn Fuel, Inc. v. Hogan,*
    399 A.2d 79 (D.C. 1979) ........................................................................................8

*Bldg. Servs. Co. v. Nat'l R.R. Passenger Corp.,*
    305 F. Supp. 2d 85 (D.D.C. 2004)......................................................................17

*Boomer Dev., LLC v. Nat'l Ass'n of Home Builders,*
    325 F.R.D. 6 (D.D.C. 2018)................................................................................22

*Burger King Corp. v. Rudzewicz¸*
    471 U.S. 462 (1985)................................................................................................8

*Cagle v. S. Bell Tel. & Tel. Co.,*
    143 Ga. App. 603 (1977) .....................................................................................16

*Capitol Vial, Inc. v. Int'l Bioprods., Inc.,*
    980 F. Supp. 628 (N.D.N.Y. 1997).....................................................................15

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood,*
    752 A.2d 1175 (Del. Ch. 1999)...........................................................................22

*Chase v. Pan-Pac. B'casting, Inc.,*
    617 F. Supp. 1414 (D.D.C. 1985)........................................................................11

*Chedick v. Nash,*
    151 F.3d 1077 (D.C. Cir. 1998)...........................................................................21

*Davis v. Joseph J. Magnolia, Inc.*,
    640 F. Supp. 2d 38 (D.D.C. 2009) ........................................................................15

*DC2NY, Inc. v. Acad. Bus, LLC*,
    2020 WL 1536219 (D.D.C. Mar. 31, 2020)...........................................................16

*Dickson v. United States*,
    831 F. Supp. 893 (D.D.C. 1993) .............................................................................8

*Edwards v. United States*,
    2020 WL 2800605 (D.D.C. May 29, 2020)..............................................................7

*First Chi. Int'l v. United Exch. Co.*,
    836 F.2d 1375 (D.C. Cir. 1988)...........................................................................7, 8

*Ft. Lincoln Civic Ass'n, Inc. v. Ft. Lincoln New Town Corp.*,
    944 A.2d 1055 (D.C. 2008) ...................................................................................20

*Francis v. Rehman*,
    110 A.3d 615 (D.C. 2015) ......................................................................................14

*Greggs v. Autism Speaks, Inc.*,
    987 F. Supp. 2d 51 (D.D.C. 2014)..........................................................................17

*Helmer v. Doletskaya*,
    393 F.3d 201 (D.C. Cir. 2004)..................................................................................7

*Himmelstein v. Comcast*,
    908 F. Supp. 2d 49 (D.D.C. 2012) .........................................................................19

*Houlahan v. Brown*,
    979 F. Supp. 2d 86 (D.D.C. 2013) .........................................................................12

*Jacobson v. Hofgard*,
    168 F. Supp. 3d 187 (D.D.C. 2016) ..................................................................21, 22

*Klayman v. Judicial Watch Inc.*,
    2007 WL 140978 (D.D.C. Jan. 17, 2007)...............................................................14

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994)................................................................................20

*Lapointe v. Van Note*,
    2004 WL 3609346 (D.D.C. Nov. 9, 2004) ...............................................................8

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017)....................................................................................7

*Lopes v. JetsetDC, LLC,
    994 F. Supp. 2d 135 (D.D.C. 2014) ............................................................................23

Manifold v. Wolf Coach, Inc.,
    231 F. Supp. 2d 58 (D.D.C. 2002) ...........................................................................9, 11

Mass. Eye & Ear Infirmary v. Eugene B. Casey Found.,
    417 F. Supp. 2d 192 (D. Mass. 2006) .....................................................................14, 15

McDaniel v. Armstrong World Indus.,
    603 F. Supp. 1337 (D.D.C. 1985) ..............................................................................10

McWilliams Ballard, Inc. v. Broadway Mgmt. Co.,
    636 F. Supp. 2d 1 (D.D.C. 2009) ...............................................................................22

Mesumbe v. Howard Univ.,
    706 F. Supp. 2d 86 (D.D.C. 2010) .............................................................................13

Mira v. Nucelar Measurements Corp.,
    107 F.3d 466 (7th Cir. 1997) .....................................................................................16

*Molock v. Whole Foods Market, Inc.,
    297 F. Supp. 3d 114 (D.D.C. 2018) ...........................................................................21

Murray v. Wells Fargo Home Mortg.,
    953 A.2d 308 (D.C. 2008) ..........................................................................................19

Nat'l Bank v. Mallery,
    669 F. Supp. 22 (D.D.C. 1987) ..................................................................................11

Paulin v. George Wash. Univ. Sch. of Med. & Health Scis.,
    878 F. Supp. 2d 241 (D.D.C. 2012) ...........................................................................13

Richter v. Analex Corp.,
    940 F. Supp. 353 (D.D.C. 1996) ..................................................................................9

Rosenthal v. Nat'l Produce Co.,
    573 A.2d 365 (D.C. 1990) ..........................................................................................15

Ruffin v. New Destination, LLC,
    773 F. Supp. 2d 34 (D.D.C. 2011) ..............................................................................23

Sec. Nat'l Bank, N.A. v. Tauber,
    347 F. Supp. 511 (D.D.C. 1972) .................................................................................11

Sparrow v. United Air Lines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2000) ....................................................................................7

*TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc.*,
   808 F. Supp. 2d 60 (D.D.C. 2011) ......................................................................22

*Tenn. Div. of United Daughters of Confederacy v. Vanderbilt Univ.*,
   174 S.W.3d 98 (Tenn. Ct. App. 2005) .................................................................14

*Thompson Hine, LLP v. Taieb*,
   734 F.3d 1187 (D.C. Cir. 2013) .............................................................................9

*Tsintolas Realty Co. v. Mendez*,
   984 A.2d 181 (D.C. 2009) ....................................................................................16

*Ulico Cas. Co. v. Fleet Nat'l Bank*,
   257 F. Supp. 2d 142 (D.D.C. 2003) ........................................................................8

*United States ex rel. Williams v. Martin–Baker Aircraft Co.*,
   389 F.3d 1251 (D.C. Cir. 2004) ...........................................................................20

*\*Xenophon Strategies Inc. v. Jernigan Copeland & Anderson, PLLC*,
   2016 WL 1367734 (D.D.C. Apr. 6, 2016) ...............................................8, 9, 10, 11

**Statutes**

28 U.S.C § 1332 ...............................................................................................................24

D.C. Code § 13-423(a)(1) ....................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................................20, 21

*Restatement (Second) of Contracts* § 77 (1981) ........................................................15

## INTRODUCTION

Plaintiff PeaceTech Lab, Inc. ("PeaceTech") submits this memorandum in opposition to the Motion to Dismiss filed by Defendants C5 Accelerate LLC ("C5 Accelerate"), Pinard S.a.r.l. ("Pinard"), C5 Holdings S.a.r.l. ("C5 Holdings"), GroundTruth Investor LLC ("GTI"), C5 Capital Ltd. ("C5 Capital"), and Andre Pienaar.

The Amended Complaint presents a detailed account of contractual breaches and related misconduct by Mr. Pienaar and the other Defendants—all committed in the District of Columbia and causing harm in the District of Columbia. *See generally* ECF No. 20. Mr. Pienaar, a wealthy and prominent investor, came to PeaceTech with promises of large donations and investments. More than that, Mr. Pienaar led PeaceTech to believe that they were entering a close, collaborative relationship that would support PeaceTech's work for years to come. But Mr. Pienaar welched on these promises, refusing to make required payments—or even to compensate PeaceTech for money lost due to Mr. Pienaar's actions. As a result, PeaceTech was left with no choice but to bring this lawsuit to vindicate its rights and seek the recompense to which it is entitled.

Defendants' Motion to Dismiss is just the latest in a series of attempts to avoid making good on clear obligations. The personal jurisdiction challenges, for instance, are not serious in a case involving conduct in this District causing harm in this District. As alleged in the Amended Complaint, Pinard and C5 Accelerate[1] entered into agreements with PeaceTech centering on work in the District of Columbia—and then breached those agreements. C5 Capital, C5 Holdings, and GTI entered into agreements with PeaceTech related to investments that also centered on activities in this District. Mr. Pienaar signed the agreements; participated in meetings and communications

---

[1] C5 Accelerate does not challenge that it is subject to this Court's jurisdiction.

in this District that gave rise to PeaceTech's claims; maintains an office in this District; and resides at least part time here.  Nothing more is required to establish personal jurisdiction.

In challenging the Amended Complaint for failure to state a claim, Defendants offer a grab-bag of incorrect and improper merits-based arguments that are premature at the pleading stage. PeaceTech's breach of contract claims arise from Defendants' failure to make good on clear commitments in binding, written contracts.  In response to this, Defendants argue that PeaceTech's first breach of contract claim should be dismissed because the contract is unenforceable, although courts have consistently found similar agreements to be enforceable contracts.   Similarly, Defendants argue that PeaceTech's second breach of contract claim should be dismissed because PeaceTech "has not demonstrated any harm."  ECF No. 21-1, at 22.  However, PeaceTech has alleged specific harms as a result of the breached agreement (ECF No. 20, ¶ 78), which is all that is required of a plaintiff at this stage.   PeaceTech's reliance/promissory estoppel claim stems from investment agreements and closing documents Defendants signed, and from Defendants' repeated false promises that they would fulfill their agreements.

As described in more detail below, Mr. Pienaar used the other Defendants—his companies—as alter egos to perpetuate fraud against PeaceTech.  In support of PeaceTech's claims for implied covenant and fraud claims, PeaceTech's Amended Complaint describes numerous, specific instances of Defendants' bad faith and dishonesty.  Defendants' attempts to distract from PeaceTech's detailed complaint with inaccurate arguments and over-the-top rhetoric cannot detract from the strength of PeaceTech's pleadings.

The Motion to Dismiss should be denied, and the case should proceed to discovery.

## FACTS ALLEGED IN AMENDED COMPLAINT

This case arises from Defendants' breach of three agreements and false statements to PeaceTech, a 501(c)(3) nonprofit based in the District of Columbia, causing substantial harm in the District of Columbia. *See* ECF No. 20, ¶¶ 51, 65.

### A.      Defendants Breached Three Agreements.

First, in February, 2017, Mr. Pienaar and his family trust, Pinard, pledged $1.5 million to PeaceTech, in exchange for naming rights. *Id.* ¶¶ 32, 66–67. Mr. Pienaar and Pinard welched entirely on this promised payment. *Id.* ¶ 68. As a result of this breach, PeaceTech was forced to take out a $500,000 line of credit and incur interest payments and other costs. *Id.* ¶¶ 70–71.

Second, Mr. Pienaar and his company C5 Accelerate contracted with PeaceTech to collaborate on a start-up accelerator program for the benefit of both parties. *See id.* ¶¶ 73, 75–76. The contract required C5 Accelerate to make several payments to PeaceTech to support the accelerator program, as well as to give PeaceTech securities in entities developed in the program. *Id.* ¶¶ 73, 75. Defendants made the first required payment, but breached their obligation to make further payments. *Id.* ¶ 79. Defendants also failed to provide the required securities or any information about them. *Id.* ¶ 80. In contrast, PeaceTech expended extensive efforts and resources to support the accelerator program. *Id.* ¶ 78.

Third, Mr. Pienaar and his company C5 Capital signed a Term Sheet and closing documents to invest $3 million in a new technology product PeaceTech was developing called groundTruth. *Id.* ¶¶ 63, 81, 84.[2] In July 2018, the signed closing documents were placed in escrow in expectation of an imminent closing. *Id.* ¶¶ 91–92. Instead, over the next three months, Mr.

---

[2] Defendant Mr. Pienaar also signed a separate agreement on behalf of Defendant GTI to invest $3.3 million in groundTruth. *Id.* ¶ 85. And his C5 Holdings company had planned an investment in groundTruth. *Id.* ¶ 63.

Pienaar strung PeaceTech along with new demands and repeated assurances that Defendants would complete the transaction soon.  *Id*. ¶¶ 93–110.  Defendants made two advances to PeaceTech to keep the groundTruth project afloat, but they did not otherwise complete their promised $3 million investment.  *Id*. ¶¶ 94, 97.  While waiting for Defendants' to close the transaction and make their payments, PeaceTech agreed to cover funding for groundTruth to keep the project afloat based on Mr. Pienaar's assurances that Defendants would complete the transaction.  *Id*. ¶¶ 106, 108.  GroundTruth closed its doors and ceased all operations in October 2018, three months after Mr. Pienaar signed the closing documents that would have kept groundTruth open.  *Id*. ¶ 110.

    **B.**    **Mr. Pienaar Acted through the Other Defendants, His Closely Related Companies.**

Defendants are a prominent investor and five of his companies.  *Id*. ¶¶ 2, 51.  Mr. Pienaar is a founder, executive, owner, and/or board member of each of the other Defendants.  *Id.* ¶ 46.  The corporate defendants acted as alter egos of Mr. Pienaar, and he used them as his own, personal entities for his own, personal purposes.  *Id*. ¶¶ 55–57.  Mr. Pienaar repeatedly used personal language regarding the contracts at issue, including by referring to "my pledge" and "my personal funding commitment to PeaceTech" and stating, "I want to support" PeaceTech's work.  *Id*. ¶ 64.

As alleged in the Amended Complaint, Mr. Pienaar signed the agreements on behalf of his companies, and used the corporate Defendants in a personal manner.  *See id*. ¶¶ 61–63.  The $1.5 million donation to PeaceTech was to be made by Pinard, Mr. Pienaar's family trust.  *See id*. ¶ 32.  Mr. Pienaar stated that "[t]he pledge is from me personally."  *Id*. ¶ 55.  In fact, the "Giving" section on Mr. Pienaar's personal website lists PeaceTech as one of the "charitable organisations" he personally supports, though neither Mr. Pienaar nor his family trust have paid any amount of the pledged $1.5 million donation.  *Id*. ¶ 57.  For the investment in groundTruth, Mr. Pienaar wrote,

"[m]y family office would be interested in investing in GroundTruth," before he signed investment documents on behalf of Defendants C5 Capital and GTI.  *Id*. ¶¶ 55, 84–85.

All of the Defendants are closely related, either directly or through Mr. Pienaar.  *Id*. ¶ 44. C5 Holdings, C5 Capital, and C5 Accelerate are part of Mr. Pienaar's C5 enterprise.  *Id*.  Defendant Pinard has an ownership interest in C5 Capital.  *Id*.  And, Defendant GTI is also connected with the other entities and was formed by Mr. Pienaar to further the investment opportunity the other Defendants sought related to groundTruth.  *Id*.

## C.     Defendants' Significant Suit-Related and Other Contacts with This District.

The claims in this case arise from Defendants' significant contacts with the District of Columbia.  Most importantly, all of the agreements Defendants entered into with PeaceTech related to the business of PeaceTech, which is located in this District, and each agreement relates to work to be done and payments to be made in this District.  *See id.* ¶¶ 61–63, 66–72, 73–80, 81– 112.  Negotiations for the pledged $1.5 million donation to PeaceTech were led by Mr. Pienaar through emails, phone calls, and in-person visits to PeaceTech in this District.  *Id*. ¶ 33.  These negotiations culminated in an in-person, celebratory signing in this District.  *Id*. ¶ 34. Representatives from Defendants C5 Capital and C5 Holdings, including Mr. Pienaar, visited PeaceTech on multiple occasions to receive investor presentations and for in-person meetings related to the groundTruth investment.  *Id*. ¶ 36.  During the relevant time period Mr. Pienaar generally visited once a quarter, and at times once a month.  *Id*. ¶ 38.  Mr. Pienaar signed the contracts at issue in this District.  *Id*. ¶¶ 31, 34.  Mr. Pienaar was also on the PeaceTech board of directors, and attended at least two board meetings in the District of Columbia.  *Id*. ¶ 38.  On information and belief, Mr. Pienaar formed GTI to further the investment opportunity in groundTruth in this District.  *See id*. ¶ 58.

The Defendants have significant contacts with this District beyond their agreements with PeaceTech.  Mr. Pienaar, C5 Capital, and C5 Accelerate maintain offices in this District.  *Id*. ¶¶ 12, 13, 15.  C5 Accelerate is based in this District.  *Id*. ¶ 10.  On information and belief, Mr. Pienaar resides at least part time in this District, and he informed PeaceTech that he bought a condominium in this District.  *Id*. ¶ 40.  On his personal website, Mr. Pienaar holds himself out as doing business in this District and includes PeaceTech as an organization he supports.  *Id*. ¶¶ 39, 57.

### D.    Defendants' Repeated False Statements and Promises to PeaceTech.

Defendants' false statements began with the agreements at issue in this case—the Gift Agreement, the Collaboration Agreement, and the investment agreements.  Defendants entered into those agreements fraudulently, with no intention of following through on their obligations to PeaceTech.  *Id*. ¶ 65.  In other words, Defendants signed those agreements falsely and in perpetuation of their fraud against PeaceTech.  *See id*. ¶ 50.

Defendants' misrepresentations continued after they signed the agreements.  On multiple occasions, Mr. Pienaar assured PeaceTech that he and the other Defendants would make the agreed $1.5 million payment to PeaceTech and would pay PeaceTech for the $3 million investment in groundTruth, even though Defendants knew those assurances were false.  *Id*. ¶¶ 115–16, 126.  Shortly after signing the closing documents, Mr. Pienaar insisted on a needless round of additional due diligence for the groundTruth investment, then still refused to close when the due diligence found no issues.  *Id*. ¶¶ 93, 95.  On July 28, 2018, Mr. Pienaar assured PeaceTech that "[b]oth parties," PeaceTech and Defendants, "are eager to complete expeditiously" the groundTruth investment.  *Id*. ¶ 117.  On August 16, 2018, Mr. Pienaar asked to meet with PeaceTech in Washington, DC, where Mr. Pienaar reiterated his commitment to completing the groundTruth transaction, as well as the Gift Agreement pledge for $1.5 million.  *Id*. ¶ 102.  On September 27, 2018, Mr. Pienaar told PeaceTech that "[w]e are now in a position to move forward to complete

the transaction with a group of US investors[.]"  *Id*. ¶ 119.  On October 16, 2018, Mr. Pienaar

insinuated that Defendants were sending PeaceTech funds via wire transfer that day.  *See id.* ¶ 122.

Each of these statements was false.  *Id*. ¶ 126.[3]

## LEGAL STANDARD

The plaintiff bears the burden "to 'make a prima facie showing of the pertinent

jurisdictional facts' to survive a motion to dismiss for lack of personal jurisdiction." *Livnat v.*

*Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017) (quoting *First Chi. Int'l v. United Exch.*

*Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)). "When deciding personal jurisdiction without an

evidentiary hearing . . . the 'court must resolve factual disputes in favor of the plaintiff." *Livnat*,

851 F.3d at 57 (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)).

To withstand a motion for failure to state a claim, the complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), courts must "accept as true all of the

plaintiff's allegations of fact, and must also 'grant plaintiff the benefit of all inferences that can be

derived from the facts alleged.'"  *Edwards v. United States*, 2020 WL 2800605, at *5 (D.D.C. May

29, 2020) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)).

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER EACH DEFENDANT.

Courts "may exercise personal jurisdiction over a person, who acts directly or by an agent,

as to a claim for relief arising from the person's transacting any business in the District of

Columbia."  D.C. Code § 13-423(a)(1).  This provision is "co-extensive with the Constitution's

---

[3] The breaches and misrepresentations at issues in this case are part of a pattern of deceitful,
tortious conduct by Defendants in the District of Columbia.  *See id*. ¶¶ 127–30.

due process limit." *Dickson v. United States*, 831 F. Supp. 893, 897 (D.D.C. 1993) (citing *First Chi. Int'l*, 836 F.2d at 1377. As a result, "courts in this jurisdiction have consistently held that '[t]he only nexus required by . . . [§13-423] (a)(1) . . . between the District of Columbia and the nonresident defendant is some affirmative act by which the defendant brings itself within the jurisdiction and establishes minimum contacts.'" *Lapointe v. Van Note*, 2004 WL 3609346, at *4 (D.D.C. Nov. 9, 2004) (quoting *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. 1979)) (internal quotations omitted). A party satisfies the minimum contacts requirement by reaching out to do business in the District that will "require continuing and wide-reaching contacts with the District of Columbia." *Ulico Cas. Co. v. Fleet Nat'l Bank*, 257 F. Supp. 2d 142, 146 (D.D.C. 2003) (citing *Burger King Corp. v. Rudzewicz¸* 471 U.S. 462, 471 (1985)). Applying these standards here, the Amended Complaint easily establishes this Court's personal jurisdiction over the Defendants.[4]

### A.      This Court Has Personal Jurisdiction over Andre Pienaar.

The Amended Complaint establishes that Mr. Pienaar purposely reached out to do business in the District of Columbia, and signed agreements on behalf of himself and the other Defendants "requiring continuing and wide-reaching contacts with the District of Columbia." *See Ulico Cas. Co.*, 257 F. Supp. 2d at 146) (citing *Burger King Corp.*, 471 U.S. at 480) (finding personal jurisdiction over defendant that entered into contracts requiring activity in the District); *see also Xenophon Strategies Inc. v. Jernigan Copeland & Anderson, PLLC*, 2016 WL 1367734, at *4–5 (D.D.C. Apr. 6, 2016) (same). This is sufficient to establish specific personal jurisdiction under D.C. Code § 13-423(a)(1).

Moreover, the Amended Complaint details specific suit-related visits by Mr. Pienaar to the District: Mr. Pienaar attended the in-person signing of the Collaboration Agreement (ECF No. 20,

---

[4] Note that Defendants do not challenge jurisdiction for Defendant C5 Accelerate. *See* ECF No. 21-1, at 23–27.

¶ 31), an in-person signing of the Gift Agreement (*id.* ¶ 34), and a meeting with PeaceTech in August 2018 (*id.* ¶ 102)—all in the District of Columbia.  Mr. Pienaar frequently made contacts with the District related to business that resulted in Plaintiff's Claims, including for in-person presentations and meetings related to the groundTruth investment (*id.* ¶ 36), negotiations over the groundTruth investment through phone calls, emails, and in-person visits (*id.* ¶ 37), and in-person PeaceTech board meetings (*id.* ¶ 38).  These personal contacts by Mr. Pienaar with the District are more than sufficient to subject him to this Court's jurisdiction.[5]  *See Manifold v. Wolf Coach, Inc.*, 231 F. Supp. 2d 58, 62 (D.D.C. 2002) (finding personal jurisdiction where defendant engaged in negotiations with representatives of plaintiff in the District via faxes, phone calls, and one meeting in the District); *Richter v. Analex Corp.*, 940 F. Supp. 353, 360 (D.D.C. 1996) (one in-person meeting would be sufficient to establish personal jurisdiction over defendants).

As if the above extensive suit-related contacts with the District were not enough, there is more:  the agreements negotiated and signed by Mr. Pienaar outlined an extensive, continuing relationship with PeaceTech in the District, which itself provides a basis for personal jurisdiction over Mr. Pienaar.  First, the Gift Agreement, which was negotiated in the District by Mr. Pienaar, provided Defendant Pinard with naming rights over space located in the District.  *See* ECF No. 20, ¶¶ 32–33.  The Agreement "is subject to the laws of the District of Columbia," a purposeful availment to the laws of the District.  *Id.* ¶ 72; *see Xenophon Strategies¸* 2016 WL 1367734, at *4 (citing *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1192 (D.C. Cir. 2013)).

---

[5] Although Defendants deny PeaceTech's allegation that Mr. Pienaar has an office in Washington, D.C. (ECF No. 21-1, at 26), all facts alleged in the Amended Complaint must be taken as true at this preliminary stage.  Furthermore, according to Mr. Pienaar's own website,  Mr. Pienaar maintains an office here.  *See* André Pienaar - Entrepreneur & Venture Capital Investor, https://www.andrepienaar.info/ (last visited Sept. 8, 2020).

Second, Mr. Pienaar signed the Collaboration Agreement.  This agreement is signed by Mr. Pienaar on behalf of his company C5 Accelerate and requires payments to PeaceTech in the District for up to three years.  ECF No. 20, ¶¶ 73, 77.  The Collaboration Agreement also established the terms of an ongoing relationship between the parties to develop and support the PeaceTech accelerator program.  *Id.*  This program was located in the District, and Mr. Pienaar frequently visited PeaceTech in the District as part of this collaboration.  *Id.* ¶ 38.

Mr. Pienaar purposefully expanded on this business relationship with PeaceTech by engaging with PeaceTech on the groundTruth investment, the basis of Plaintiff's third claim for relief.[6]  The Amended Complaint details the extent of the ongoing contacts with the District related to this investment, which began with early discussions in the spring of 2017.  *See id* ¶ 36.  These contacts included in-person presentations attended by Mr. Pienaar in the District.  *Id.*  Following these discussions, Mr. Pienaar signed investment agreements on behalf of C5 Capital and GTI to provide funding for groundTruth.  *Id.* ¶¶ 84–85.  The Amended Complaint details how this business relationship went on through October 2018, when the groundTruth entity ceased operations due to Defendants' defaults.  *Id.* ¶ 112.  Throughout this period, Mr. Pienaar made regular contacts with PeaceTech in the District of Columbia related to the groundTruth investment.  *See, e.g.*, *id.* ¶¶ 96–97, 102–07.

**B.      This Court Has Personal Jurisdiction over Pinard.**

Pinard is Mr. Pienaar's family trust, and a signatory to the Gift Agreement that is the subject of PeaceTech's first claim for relief.  This Court has specific personal jurisdiction over Pinard under D.C. Code § 13-423(a)(1).  As alleged in the Amended Complaint, Pinard transacted business in the District, business from which this litigation arises.  Through its representative Mr.

---

[6] The "transacting business" prong of the long-arm statute may also apply to torts. *McDaniel v. Armstrong World Indus.*, 603 F. Supp. 1337, 1343 (D.D.C. 1985).

Pienaar, Pinard reached out to the District to do business with PeaceTech by contracting to provide funds to PeaceTech in exchange for naming rights over a space located in the District and other benefits. ECF No. 20, ¶ 33. The Gift Agreement that memorializes this arrangement is explicitly subject to D.C. law. *Id.* ¶ 72; ECF No. 20-1, ¶ 8; *see Xenophon Strategies*, 2016 WL 1367734, at *4 (noting that a D.C. choice-of-law provision is "indicative of purposeful availment"). Furthermore, Mr. Pienaar signed the Gift Agreement as a representative of Pinard in an in-person signing event in Washington, D.C., and the Gift Agreement was negotiated through emails, phone calls, and in-person visits to the District. ECF No. 20, ¶¶ 33–34. These facts amply demonstrate that Pinard is subject to jurisdiction here. *Manifold*, 231 F. Supp. 2d at 62.

### C.     This Court Has Personal Jurisdiction over C5 Capital.

C5 Capital, yet another company created by Mr. Pienaar, was a signatory to a Term Sheet and closing documents for an investment in PeaceTech's groundTruth product. The Amended Complaint establishes specific personal jurisdiction over C5 Capital under D.C. Code § 13-423(a)(1). C5 Capital transacted business with PeaceTech through ongoing negotiations regarding a planned investment in groundTruth, which involved regular contacts with the District over a two-year period from 2017 to 2019. ECF No. 20, ¶¶ 36, 82–84. The Amended Complaint also alleges that these negotiations involved in-person visits to the District, including from Mr. Pienaar, who was a representative of C5 Capital. ECF No. 20, ¶ 36; *see Chase v. Pan-Pac. B'casting, Inc.*, 617 F. Supp. 1414 (D.D.C. 1985) ("Since corporations have no physical existence, courts often look to the activities of corporate agents to determine whether sufficient contacts exist."). Finally, C5 Capital has an office in the District, which "constitutes 'regular doing of business' under the long-arm statute." *Nat'l Bank v. Mallery*, 669 F. Supp. 22, 27–28 (D.D.C. 1987) (citing *Sec. Nat'l Bank, N.A. v. Tauber*, 347 F. Supp. 511 (D.D.C. 1972)).

Defendants rely on *Houlahan v. Brown*, 979 F. Supp. 2d 86 (D.D.C. 2013), which found no personal jurisdiction where "Plaintiff was unable to identify *any facts* to support his conclusory assertion that Defendants had engaged in a persistent course of conduct in the District of Columbia." *Id.* at 89–90 (emphasis added). This case has no application here, where PeaceTech has alleged numerous facts linking C5 Capital to the District. *See, e.g.*, ECF No. 20, ¶¶ 35–36, 84, 86.

> **D.    This Court Has Personal Jurisdiction over C5 Holdings.**

C5 Holdings also considered investing in groundTruth, attended investor presentations and meetings in the District, and provided interim financing to groundTruth while PeaceTech waited (in vain) for the full investment. The Amended Complaint alleges that C5 Holdings transacted business in the District connected to Plaintiff's claims, and that it made significant contacts with the District. Related to the Collaboration Agreement, representatives from C5 Holdings attended a launch event held in Washington, DC on April 27, 2017. ECF No. 20, ¶ 30. Additionally, C5 Holdings was involved in the investment in groundTruth, and representatives from "C5 Holdings, including Mr. Pienaar, visited PeaceTech in the District of Columbia on multiple occasions to receive investor presentations and for in-person meetings." *Id.* ¶ 36. C5 Holdings provided PeaceTech with the interim financing that was offered by Mr. Pienaar to keep groundTruth afloat on August 12, 2018 while Defendants delayed in closing the deal, further demonstrating C5 Holdings' involvement with the groundTruth investment. *Id.* ¶ 97.

> **E.    This Court Has Personal Jurisdiction over GTI.**

GTI signed a separate agreement with PeaceTech to provide funds for groundTruth, and on information and belief  is an entity created by Mr. Pienaar to facilitate such an investment. The Amended Complaint alleges specific facts establishing that GTI transacted business in the District, establishing specific personal jurisdiction under D.C. Code § 13-423(a)(1). PeaceTech asserts that

Mr. Pienaar represented GTI through his many contacts with the District in negotiating the groundTruth investment.  ECF No. 20, ¶ 37.  These negotiations required contacts with the District through emails, phone calls, and in-person visits.  *Id.*  The Amended Complaint further asserts that as part of this business, GTI signed an investment agreement in groundTruth.  *Id. ¶* 85. This transaction was centered in the District, where groundTruth was located, and led to many continued contacts over a two year period.  *Id. ¶¶* 37–38.

## II.   THE AMENDED COMPLAINT IS MORE THAN SUFFICIENT TO SURVIVE DEFENDANTS' RULE 12(b)(6) CHALLENGE.

PeaceTech's detailed Amended Complaint provides more than sufficient factual content for each of its five claims to allow the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged.

### A.   PeaceTech Has Stated a Claim for Breach of the Gift Agreement.

To state a claim for breach of contract, a plaintiff must allege: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; (4) damages caused by the breach."  *Paulin v. George Wash. Univ. Sch. of Med. & Health Scis.*, 878 F. Supp. 2d 241, 246 (D.D.C. 2012) (citing *Mesumbe v. Howard Univ.*, 706 F. Supp. 2d 86, 94 (D.D.C. 2010)).  Here, PeaceTech alleges in its Amended Complaint that Pinard and PeaceTech both signed the "Gift Agreement," which stated that Pinard would make a $1.5 million donation to PeaceTech in exchange for "exclusive naming rights for space where the accelerator program would be operated," and "a plaque [that] would be prominently displayed with 'the Donor's name or party to be honored by the Donor' and that Pinard would be publicly recognized in multiple locations."  ECF No. 20, ¶¶ 66–67.  PeaceTech alleges that Pinard never made the donation, in breach of the contract.  *Id.* ¶ 68.  PeaceTech also alleges damages: the $1.5 million donation to which it is entitled, construction costs it undertook in the expectation of receiving that donation,

outstanding lines of credit, and other charges that PeaceTech would not have incurred but for the failed donation.  *Id.* ¶¶ 69–71.  Nothing more is required to state a breach of contract claim. *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015) ("[T]o state a claim for breach of contract so as to survive a Rule 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach.").

Contracts for donations in exchange for naming rights are enforceable like any other contract.  *See, e.g.*, *Klayman v. Judicial Watch Inc.*, 2007 WL 140978, at *8–9 (D.D.C. Jan. 17, 2007), *vacated in part on other grounds*, 2007 WL 1034936 (D.D.C. Apr. 3, 2007) (denying motion to dismiss breach claim where plaintiff pledged money in exchange for naming rights for building not yet purchased); *Appalachian Bible Coll. v. Foremost Indus.*, 2018 WL 1811334, at *2–3 (M.D. Pa. Apr. 17, 2018) (granting summary judgment on breach claims where defendant failed to make payments under Gift Agreement); *Mass. Eye & Ear Infirmary v. Eugene B. Casey Found.*, 417 F. Supp. 2d 192, 196–97, 199–200 (D. Mass. 2006) (denying motion to dismiss claims of breach of charitable pledge); *Tenn. Div. of United Daughters of Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 102 (Tenn. Ct. App. 2005) (finding a donation agreement in exchange for naming rights enforceable); *Allegheny Coll. v. Nat'l Chautauqua Cty. Bank*, 159 N.E. 173, 176 (N.Y. 1927) (agreement to provide naming rights sufficient to support a bilateral contract).

Notwithstanding the case law finding that donation agreements are enforceable, Defendants argue that they could break their commitment to PeaceTech without any consequences because the precise name for the program space was yet to be agreed upon, and the name was subject to the U.S. Institute of Peace ("USIP")'s approval.  *See* ECF No. 21-1, at 20–21.  To be enforceable, "a contract must be sufficiently definite as to its material terms (which include, e.g., subject matter, price, payment terms, quantity, and duration) that the promises and performance to

be rendered by each party are reasonably certain." *Affordable Elegance Travel, Inc. v. Worldspan, L.P.*, 774 A.2d 320, 327 (D.C. 2001) (quoting *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 370 (D.C. 1990)).  The Gift Agreement fully satisfies these requirements.  It specifies the subject matter of the contract (a donation in exchange for various consideration, including naming rights and other public recognition); the price ($1.5 million); payment terms (three equal installments); and duration (so long as the space is controlled by PeaceTech or USIP).  *See* ECF No. 20-1.

Furthermore, Defendants' argument that PeaceTech's promises were illusory and unenforceable is incorrect;  PeaceTech would not be relieved of its obligation to provide Pinard the benefit of the bargain under any circumstances.  "A promise is illusory when performance of that promise is optional." *Davis v. Joseph J. Magnolia, Inc.*, 640 F. Supp. 2d 38, 45 (D.D.C. 2009) (citing *Restatement (Second) of Contracts* § 77 (1981)).  Here, PeaceTech promised to provide Pinard, in exchange for the $1.5 million, naming rights, a prominently displayed plaque, and other public recognition.  *See* ECF No. 20, ¶ 67.  In addition, PeaceTech agreed that the $1.5 million would be applied for a certain purpose, to develop space for an accelerator program.  *See id.* ¶ 66; ECF No. 20-1, ¶ 3.  This agreement to use the money for an express purpose was another form of consideration provided to Pinard.  *See Mass. Eye & Ear Infirmary*, 417 F. Supp. 2d at 197 (foundation's agreement to use a gift for an express purpose tended "to demonstrate that consideration was given for the gift").  Even if the naming rights was the only consideration to this agreement (which it is not), the provision states that PeaceTech "agrees to use best efforts to obtain such approval.  If the parties do not obtain such approval, they will consult with each other and with USIP on a replacement name." ECF No. 20-1, ¶ 4.  Nothing in the Gift Agreement would relieve PeaceTech of its obligation to provide naming rights to Pinard.  *See Capitol Vial, Inc. v.*

*Int'l Bioprods., Inc.*, 980 F. Supp. 628, 631 (N.D.N.Y. 1997) (promise to use best efforts "would appear to constitute a valuable form of consideration").

### B.    PeaceTech Has Stated a Claim for Breach of the Collaboration Agreement.

PeaceTech and C5 Accelerate entered into an agreement requiring C5 Accelerate to make annual payments to support the PeaceTech accelerator program.  ECF No. 20, ¶ 73.  C5 Accelerate failed to make all but one of the required payments.  *Id.* ¶ 74.  PeaceTech also "expended extensive efforts and resources to support the accelerator program.  PeaceTech used staff and contractors to recruit start-ups for the accelerator, recruit mentors and coaches to support the program participants, and provide support for daily operations."  *Id.* ¶ 78.  All of these activities cost money, and PeaceTech suffered harm when C5 Accelerate failed to compensate PeaceTech for these activities as required under the Collaboration Agreement.  This is all that is needed to state a breach of contract claim.  *See DC2NY, Inc. v. Acad. Bus, LLC*, 2020 WL 1536219, at *12 (D.D.C. Mar. 31, 2020) (denying motion to dismiss where alleged damages were lost profits).

Defendants' cited cases, none of which involve a motion to dismiss, do not hold otherwise.  *See Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (in action to enforce settlement agreement, it "made no legal difference that a party argued that a lack of injury"); *Mira v. Nucelar Measurements Corp.*, 107 F.3d 466 (7th Cir. 1997) (on appeal from summary judgment, no proof offered to show economic loss); *Cagle v. S. Bell Tel. & Tel. Co.*, 143 Ga. App. 603, 604 (1977) (directed verdict where there was not the "slightest evidence" of damages).

### C.    PeaceTech Has Stated a Claim for Promissory Estoppel.

Although Defendants pretend otherwise, promissory estoppel is a viable claim under District of Columbia law.  "To survive a Rule 12(b)(6) motion for failure to state a claim of promissory estoppel, a plaintiff must show (1) a promise; (2) that the promise reasonably induced

16

reliance on it; and (3) that the promisee relied on the promise to his or her detriment." *See Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51, 55 (D.D.C. 2014). PeaceTech has amply done so here.

The Amended Complaint alleges numerous promises by Mr. Pienaar, stemming from the agreements he and his companies entered into with PeaceTech.[7] These include Mr. Pienaar's promise, on September 27, 2018, to PeaceTech that he was "now in a position to move forward to complete the transaction." ECF No. 20, ¶ 104. On October 11, 2018, Mr. Pienaar told PeaceTech "[w]e expect to receive the funds imminently." *Id.* ¶ 120. The next day, Mr. Pienaar promised that "[e]verything else is ready to go. Hope we can get it over the line today." *Id.* ¶ 105. And finally, on October 16, 2018, Mr. Pienaar told PeaceTech in three separate emails that money from the promised investment was coming that very day through a wire transfer. *Id.* ¶ 122; *see also id.* ¶¶ 96, 102. As PeaceTech learned the hard way, all of these promises were false. *See id.* ¶¶ 110–12.

As outlined in the Amended Complaint, these promises reasonably induced PeaceTech's reliance. As early as August 8, 2018, PeaceTech informed Mr. Pienaar that "groundTruth was running out of funding" and that PeaceTech was prepared to start laying off groundTruth staff. *Id.* ¶ 96. PeaceTech also alleges that groundTruth would not continue absent the completion of the promised investments: "Mr. Pienaar was notified that the same issue would arise the following month if the deal did not close," (*id.* ¶ 97); "if we don't receive wire payment today, we will unfortunately need to lay off staff," (*id.* ¶ 107). Mr. Pienaar explicitly invited reliance on his

---

[7] Defendants highlight that the investment agreements are nonbinding, but liability under this claim is not rooted in contractual obligations. *See Bldg. Servs. Co. v. Nat'l R.R. Passenger Corp.*, 305 F. Supp. 2d 85, 95 (D.D.C. 2004) (promissory estoppel claims are only available where there is no express, enforceable contract that would otherwise govern the dispute).

promises, such as when he wrote, "I do not understand why you would not avail yourself of our financing to make sure the business remains viable while the seed round completes."  *Id.*

For the final element of its promissory estoppel claim, PeaceTech alleges that it relied on these promises to its detriment by continuing to fund groundTruth with PeaceTech's own money on the belief that Mr. Pienaar would fulfill his promises to complete the investment.  The Amended Complaint alleges numerous actions taken in reliance on these promises that ended up to PeaceTech's detriment, such as, "PeaceTech agreed to cover a week of [groundTruth] salaries based on Mr. Pienaar's assurances."  *Id.* ¶ 106; *accord id.* ¶ 108 ("PeaceTech agreed to continue to provide funding for [groundTruth] staff salaries on the strength of Mr. Pienaar's assurances."); *id.* ¶¶ 99 ([I]n reliance on Mr. Pienaar's promises, PeaceTech subleased the space to groundTruth . . . ."); *id.* ¶ 111 ("PeaceTech expended $267,082 for staff salaries and overhead costs to maintain operations at groundTruth based entirely on Mr. Pienaar's continued assurances.").

With regard to the proper Defendants for this claim, Defendants assert that C5 Holdings, C5 Capital, and GTI are all included in this claim "based on the mere assertion that Mr. Pienaar is a representative and owner of those entities."  ECF No. 21-1, at 16.  Not so.  PeaceTech instead alleges specific facts connecting each of these entities to this claim.  The Amended Complaint establishes that C5 Holdings was a participant in the investment discussions and attended investor presentations, and provided some of the interim financing while PeaceTech waited for the full investment.  ECF No. 20, ¶¶ 36, 97.  The Amended Complaint further establishes that Mr. Pienaar promised a $3.3 million investment in groundTruth through GTI, an entity which was created to facilitate such an investment.  *Id.* ¶¶ 37, 85.  PeaceTech also establishes that Mr. Pienaar represented C5 Capital in negotiations about the investment and signed investment agreements on

C5 Capital's behalf; Defendants also assert that Mr. Pienaar acted in representation of C5 Capital.[8]
*See id.* ¶ 84; ECF No. 21-1, at 8.

### D.   Defendants Breached the Implied Covenant of Good Faith and Fair Dealing.

Under District of Columbia law, "all contracts contain an implied duty of good faith and
fair dealing." *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 321 (D.C. 2008).  "[A] party to
a contract may be liable for a breach of the duty of good faith and fair dealing if the party evades
the spirit of the contract, willfully renders imperfect performance, or interferes with performance
by the other party."  *Id*.  In this context, bad faith involves "evasion of the spirit of the bargain,
lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power
to specify terms, and interference with or failure to cooperate in the other party's performance."
*Himmelstein v. Comcast*, 908 F. Supp. 2d 49, 54 (D.D.C. 2012).

Pinard and C5 Accelerate signed binding contracts with PeaceTech.  ECF No. 20, ¶¶ 61–
62.  C5 Capital signed a Term Sheet and closing documents.  *Id*. ¶ 63.  GTI and C5 Holdings
planned investments in groundTruth, and GTI signed an agreement to invest.[9]  *Id*. ¶¶ 7, 85.  Mr.
Pienaar signed each of these agreements.  *Id*. ¶¶ 61–63, 85.  The Amended Complaint alleges
numerous, specific facts that show bad faith, including that Defendants strung PeaceTech along
with false promises.  *See supra* section II.C; ECF No. 20, ¶ 65, 102 (detailing Mr. Pienaar's
assertions that the $1.5 million pledge would be completed where he had no intention of doing so);

---

[8] Defendants' assertion that PeaceTech's exhibits do not support the allegations in the Amended
Complaint is incorrect.  Defendants claim that Exhibit 7 to the original Complaint does not support
the statement made by PeaceTech in the original Complaint, regarding subleased space to
groundTruth.  *See* ECF No. 21-2, at 18 (citing ECF No. 1, ¶ 40).  However, the original Complaint
cites to Exhibit 8, which is a copy of the sublease agreement.  ECF No. 1, ¶ 40.

[9] Even though Defendants did not close on the investments in groundTruth, a factfinder could
conclude that a contractual relationship existed and the implied covenant of good faith and fair
dealing applied to those investments.  *See, e.g.*, ECF No. 20, ¶ 7 ("The Term Sheet and closing
documents, along with other facts described in more detail below, obligated Defendants to make
an investment of $3 million [in groundTruth] . . . .").

*id.* ¶¶ 63, 84, 91–93, 95–96, 102–05, 109 (detailing Mr. Pienaar's manuevering to avoid completing the groundTruth investments).

    **E.**    **PeaceTech Has Stated a Claim for Fraud.**

Common law fraud has five elements: "(1) a false representation, (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Ft. Lincoln Civic Ass'n, Inc. v. Ft. Lincoln New Town Corp.*, 944 A.2d 1055, 1073–74 n.22 (D.C. 2008).   "[A] party must state with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(b).   To meet this standard, a plaintiff "must plead with sufficient particularity 'the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud.'"   *United States ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)). Here, PeaceTech has plead each of the elements of fraud with sufficient particularly.

The false representations laid out in the Amended Complaint fall into two categories.  First, Defendants fraudulently induced PeaceTech to enter into agreements.  ECF No. 20, ¶ 65.  In other words, the representations Defendants made in those agreements—e.g., that they would pay PeaceTech—were false from the beginning.  Defendants entered the agreements without the intent of performing.  And induced PeaceTech to enter into the agreements based on the false premise that Defendants would meet their obligations.   The Amended Complaint describes the key elements of the agreements and attaches three of them as exhibits.  *Id.* ¶¶ 66–72, 73–80, 81–112; *see also* ECF No. 20-1 through 20-3.

The second category of false representations were those made to string PeaceTech along after signing agreements they had no intention of honoring.  For example, in July 2018, Defendant Mr. Pienaar told PeaceTech that Defendants were "eager to complete [the investment in

groundTruth] expeditiously."  ECF No. 20, ¶ 117.  In September 2018. Mr. Pienaar told PeaceTech

that he was "now in a position to move forward and complete the transaction."  *Id.* ¶ 104.  These

statements were false.  *Id.* ¶ 125.

All of these false representations are actionable.  In *Molock v. Whole Foods Market, Inc.*,

297 F. Supp. 3d 114 (D.D.C. 2018), this Court denied a motion to dismiss where plaintiffs alleged

they accepted employment offers based on the defendants' misrepresentations.  *Id.* at 136–37.  The

Court wrote, "'[b]ecause of these fraudulent misrepresentations and omissions, Plaintiffs did not

face mere contractual disappointment—they entered into a contract . . . that they would not have

otherwise.'"  *Id.* at 137 (quoting *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 200 (D.D.C. 2016)).

In the same vein, the D.C. Circuit has found that misrepresenting present intent to perform a

contractual obligation is actionable.  *Chedick v. Nash*, 151 F.3d 1077, 1082–83 (D.C. Cir. 1998).

Returning to the elements of PeaceTech's fraud claim, Defendants' false statements were

made in reference to material facts: the core terms of the agreements and Defendants' willingness

to meet their obligations.  *See, e.g.*, ECF No. 20, ¶ 119 (describing Mr. Pienaar's statement that

Defendants were "in a position to move forward to complete the transaction").  Defendants'

representations that they would pay are fundamental to the parties' relationship and the conduct at

issue.

PeaceTech alleged in no uncertain terms that Defendants "knew their representations were

false" and were made "with an intent to deceive PeaceTech."  *Id.* ¶ 126.  Nothing more is required

under Rule 9(b), which makes clear that "intent . . . may be alleged generally."

Finally, PeaceTech relied on Defendants' misrepresentations.  For example, based on the

(false) representation that Defendants would make a $1.5 million donation, PeaceTech entered into

a construction contract, was forced to take out a $500,000 line of credit, and incurred fees and

charges.  *Id.* ¶¶ 69–71.  Similarly, because of Defendant's representations that it would make good on the agreement to fund groundTruth, PeaceTech provided funding for groundTruth salaries while waiting for Defendants.  *Id.* ¶¶ 106, 108.

These facts, and the others alleged in the Amended Complaint, are more than sufficient to state a claim for fraud.  *See, e.g.*, *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders*, 325 F.R.D. 6, 16 (D.D.C. 2018) (fraud claims sufficiently pled where complaint "provided adequate notice of the specifics of its fraud claims to allow [defendant] to prepare its defense"); *see also Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 205 (D.D.C. 2016) (rejecting in relevant part motion to dismiss fraud claim where there was "little risk that Defendants will face difficulty answering the allegations made against them merely because the Complaint fails to specify which Defendant made the alleged fraudulent representations or material omissions").

### F. PeaceTech's Allegations Are Sufficient to Plead Vicarious Liability Under a Veil-Piercing Theory.

In order to proceed under a piercing the corporate veil theory, a complaint must contain sufficient allegations to "support a plausible inference" that there is "(1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify it." *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 8 (D.D.C. 2009).[10]  D.C. courts consider a number of factors under this analysis, however "the

---

[10] The Court should apply Washington, D.C. law to the corporate veil issue.  All of the claims are centered in this District.  *See TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc.*, 808 F. Supp. 2d 60, 65 (D.D.C. 2011) (applying DC law to the corporate veil issue where "[t]he district is the place where the relevant contracts were performed, the jurisdiction that would be most affected by performance, and the place where the contracts were allegedly breached"). However, even if the Court were to apply Delaware law, where two of the entities are incorporated, PeaceTech has pled sufficient facts to demonstrate that Defendants' corporate structure is a sham used as a vehicle for fraud.  *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (under Delaware law, "[p]iercing the corporate veil under the alter ego theory 'requires that the corporate structure cause fraud or similar injustice.'" (quoting *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996))).

inquiry ultimately rests on whether 'the corporation is, in reality, an alter ego or business conduit of the person in control.'" *Lopes v. JetsetDC, LLC*, 994 F. Supp. 2d 135, 147 (D.D.C. 2014) (citing *Ruffin v. New Destination, LLC*, 773 F. Supp. 2d 34,  41 (D.D.C. 2011)) (denying a motion to dismiss, noting "the Court believes it is difficult for the plaintiff, at this stage, to obtain substantive information in support of his contention").

The Amended Complaint alleges specific facts demonstrating that each corporate Defendant served as a vehicle for Mr. Pienaar to advance his own interests and the fraud perpetuated against PeaceTech.  PeaceTech alleges that "Mr. Pienaar is a founder, executive, owner, and/or board member of each of the other Defendants," and that "all of the corporate Defendants . . . are closely held entities" and "acted as alter egos of Mr. Pienaar."  ECF No. 20, ¶¶ 46, 48–49.  This includes allegations that Mr. Pienaar owns Pinard, is the founder and has an ownership interest in C5 Capital, and formed GTI in order to advance the schemes detailed in the Amended Complaint.  *See id.* ¶¶ 52, 53, 58.  PeaceTech also alleges that Mr. Pienaar is a manager of C5 Holdings, and that all of the corporate defendants are closely related.  *Id.* ¶¶ 52, 58.

PeaceTech also alleges specific facts demonstrating that Mr. Pienaar used the various corporate defendants to perpetuate fraud and other wrongdoing against PeaceTech.  Mr. Pienaar used Pinard, his family trust, to make a pledge agreement that he said was "from me personally." *Id.* ¶ 55.  This pledge was never fulfilled, despite promises that it would be.  *Id.* ¶¶ 72, 102, 115. The Amended Complaint also establishes that Mr. Pienaar used the other Defendants to engage with PeaceTech on the proposed groundTruth investment and to defraud PeaceTech.  Mr. Pienaar signed investment agreements, promising that C5 Capital and GTI would each invest in groundTruth.  *Id.* ¶¶ 84–85.  As Mr. Pienaar continued to string PeaceTech along with false promises that the investment would be completed, he used two other Defendants, C5 Accelerate

and C5 Holdings, to private interim financing to keep groundTruth afloat.  *See id.* ¶¶ 94, 97.  Two of Mr. Pienaar's entities and Defendants in this case were also simultaneously removed from the Luxembourg Business Register between the filing of PeaceTech's original Complaint and the Amended Complaint.  *Id.* ¶¶ 52–53.  If these de-listings were related to this lawsuit, it would demonstrate further misuse of the corporate form.  As stated in the Amended Complaint, these overlapping roles of the corporate defendants demonstrate that "Mr. Pienaar is like the hub of a wheel.  The other Defendants are spokes coming off of it, doing his work."  *Id.* ¶ 45.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.[11]


Dated:  September 10, 2020                    COVINGTON & BURLING LLP


                                    By:     */s/ Benjamin J. Razi*
                                            Benjamin J. Razi (No. 475946)
                                            Maura Sokol (*pro hac vice*)
                                            850 Tenth Street, NW
                                            Washington, DC 20001
                                            Telephone: (202) 662-5463
                                            brazi@cov.com
                                            msokol@cov.com

                                            Attorneys for Plaintiff
                                            PeaceTech Lab, Inc.

---

[11] The conclusion to the Defendants' brief argues that PeaceTech's complaint should be dismissed for lack of subject matter jurisdiction without any argument.  *See* ECF No. 21-1, at 28. This is wrong. The Court's subject matter jurisdiction in a diversity case, like this one, cannot be disputed. *See* 28 U.S.C § 1332; ECF No. 20, ¶¶ 16–17.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2020, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By:     <u>*/s/ Benjamin J. Razi*</u>